# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DEEP SOUTH COMMUNICATIONS L.L.C., | ) |
| | ) Case No. _____ |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PETER M. FELLEGY, | ) |
| | ) |
| Defendant. | ) |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Now into Court, through undersigned counsel, comes Plaintiff, Deep South Communications L.L.C. ("Plaintiff" or "Deep South"), and in this Verified Complaint for Injunctive and Other Relief ("Complaint") against Defendant, Peter M. Fellegy ("Defendant" or "Fellegy"), avers as follows:

### PARTIES

1. Plaintiff, Deep South, is a Louisiana limited liability company with its principal place of business located at 20331 Highland Rd., Baton Rouge, Louisiana 70817. Rhett Westermann is a natural person who is the sole member of Plaintiff and he is domiciled in East Baton Rouge Parish, Louisiana, and is a citizen of the State of Louisiana. Deep South is a telecommunications contractor specializing in microwave communications design and construction, fiber optics communications, distributed antenna systems, intelligent transportations systems, communications tower build-outs and maintenance, cellular and microwave maintenance and build-outs.

1

2. Defendant, Fellegy, is a natural person of the full age of majority who, upon information and belief, is domiciled in Indianapolis, Indiana.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332. This matter is a civil action brought by Plaintiff, Deep South, a citizen of the state of Louisiana, against Defendant Fellegy, a citizen of the state of Indiana. The matter in controversy exceeds the sum or value of $75,000, exclusive of attorney fees and costs.

4. A claim for injunctive relief has its own independent value, separate and apart from a claim for damages, attorney fees, and costs. The value of a claim for injunctive relief is "the value of the right to be protected or the extent of the injury to be prevented." *Farkas v. GMAC Mortg., LLC,* 737 F.3d 338, 341 (5th Cir. 2013). Fellegy has breached and continues to breach his Confidentiality and Restrictive Covenant Agreement ("Agreement") with Deep South, which has caused Deep South significant revenue losses. The Agreement is attached hereto as **Exhibit 1**.

5. The Court has personal jurisdiction over Fellegy and venue is proper because Fellegy signed the Agreement in Baton Rouge, reported to and was based out of Baton Rouge during his employment with Deep South, and agreed that Louisiana law exclusively would govern the Agreement. Further, Deep South has suffered and continues to suffer harm in Louisiana and within the district of this Court. *See* 28 U.S.C. § 1391(b).

## FACTS

**A.     Fellegy's Relationship and Agreement with Deep South**

6. Deep South is a wireless technologies services company that was founded and remains headquartered in Baton Rouge, Louisiana ("Westerman").

7. Deep South operates throughout the state of Louisiana and throughout the United States.

8. Deep South hired Fellegy on or about May 17, 2017, as its Vice President of Business Development.

9. In October of 2020, Fellegy was demoted to Manager of Business Development, a role in which Fellegy served until his resignation on February 22, 2022.

10. Although Fellegy was able to perform his duties and work remotely during his employment with Deep South, his position was based out of Deep South's headquarters in Baton Rouge, Louisiana, and he reported directly to the President of Deep South at all times.

11. Fellegy regularly traveled to Louisiana during his employment with Deep South, approximately every one to two months, to attend in-person meetings with the President and others at Deep South's headquarters.

12. In his roles as Vice President and Manager of Business Development, Fellegy was responsible for developing and maintaining relationships and sales for the benefit of Deep South. Fellegy also generated sales and business development leads, provided and compiled feedback regarding clients in addition to helping create overall business development strategies.

13. Fellegy had access to and received from Deep South non-public, confidential information related to its business, including existing and prospective customer names, addresses, phone numbers, and other similar information.

14. Fellegy also had access to and received from Deep South non-public, confidential information related to its wireless technology services business, including its business relationships, financial performance, strategies for conducting business, price lists, sales, promotional, and marketing strategies and information, and other trade secrets.

15. Fellegy held a position of trust with Deep South.

**B.    Fellegy's Agreement with Deep South.**

16. In connection with his employment, Fellegy entered into the Confidentiality and Restrictive Covenant Agreement with Deep South. A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

17. On or about May 18, 2017, Fellegy met with Deep South's Office Manager, Christina Springer, who informed him that as a condition of his employment he was required to execute the Agreement.

18. Fellegy signed the Agreement effective May 18, 2017.

**C.    Fellegy's Obligation to Maintain Confidentiality of Deep South's Business Records**

19. In the Agreement, Fellegy expressly acknowledged that he had access "to existing and new valuable information relating to the business and clients of [Deep South] that is nonpublic, confidential, proprietary, and/or a trade secret and would be particularly valuable to [Deep South's] competitors." Exhibit 1, at ¶ 3.

20. In the Agreement, Confidential Information is defined to include:

> [B]usiness plans and strategies; business processes; research and development; training and other operational methods and techniques; manuals, policies, and procedures; business records and files; business proposals; client lists; client information; client source lists; purchasing methods; pricing; sales plans and activities; customer service strategies or activities; marketing and other technical data and studies; employment and other personnel data; financial plans, reports, and strategies; profits and losses; budgets; projections; price lists; sales, promotional, and marketing strategies and information; proprietary computer software and data; and internal correspondence, notes, and memoranda relating to any of the foregoing….

*Id.*

21. Deep South's Confidential Information has independent economic value because it is not generally known to the public or its competitors.

4

22. Deep South takes reasonable steps to protect its Confidential Information. With respect to Fellegy, Deep South required that he enter into the Agreement, and reminded him of the obligations owed to Deep South under the Agreement after his resignation.

23. In the Agreement, Fellegy specifically agreed that "during and after the end of [his] employment relationship with [Deep South], [he] will not communicate, divulge, or make available to any person or entity…any Confidential Information…." See Exhibit 1, at ¶ 4.

24. Fellegy's agreement to safeguard and not misappropriate Confidential Information, as defined in the Agreement, is perpetual.

**D.    Fellegy's Restrictive Covenant Obligations**

25. In the Agreement, Fellegy agreed that, during his employment and for a period of two years thereafter, he would not directly or indirectly "engage in any business that directly or indirectly competes with or is similar to" Deep South's business within the defined territory. Exhibit 1 at ¶ 5(B).

26. In the Agreement, Fellegy also agreed that, during his employment and for a period of two years thereafter, he would not directly or indirectly, within the defined territory, "solicit, request, seek, or obtain" the business of Deep South's clients for his benefit or any entity other than Deep South. *Id.* at ¶ 5(C).

27. In the Agreement, Fellegy further agreed that, during his employment and for a period of two years thereafter, he would not directly or indirectly, within the defined territory, "solicit, request, influence, induce or otherwise encourage" any of Deep South's clients to restrict, cease or limit doing business with Deep South. *Id.* at ¶ 5(D).

28. Fellegy performed business development duties on behalf of Deep South in the state of Louisiana and elsewhere the United States.

29. In the Agreement, Fellegy agreed to abide by the restrictive covenants within the territory defined in the Agreement to include the "parishes, counties, and municipalities" specified in Exhibit A to the Agreement. *Id.* at ¶ 5(A).

**E.  Fellegy's Conduct in Violation of the Agreement**

30. A few months after Fellegy's February 22, 2022, resignation from Deep South, Fellegy obtained employment with End 2 End Technologies ("E2E") in a position directly involved in business development on behalf of E2E.

31. E2E holds itself out as a network infrastructure specialist engaged in the business of consulting, engineering, and executing comprehensive solutions for our clients throughout the United States.

32. E2E competes directly with Deep South throughout the United States.

33. Fellegy, as an employee of E2E, is competing with Deep South throughout the United States in breach of the Agreement.

34. For instance, one of the customers with whom Fellegy developed a business relationship on behalf of Deep South over the course of his employment with Deep South is General Electric Co. ("GE").

35. Prior to Fellegy's exit from Deep South, GE expressed a desire to make Deep South its account holder for its wireless product line for the State of Arkansas account. However, after Fellegy's departure, Deep South discovered that E2E, Fellegy's new employer, would continue to be GE's account holder for its product line in Arkansas.

36. Upon information and belief, Deep South has been deprived of or lost similar business opportunities because of Fellegy's competition with Deep South.

37.     The losses caused by Fellegy's disregard for his non-compete are negatively impacting Deep South's revenues and will continue to do so.

**F.    Fellegy Admits His Conduct Violates the Agreement but Refuses to Cease and Desist**

38.     Deep South's President, Rhett Westerman, contacted Fellegy on or about June 6, 2022, upon learning of Fellegy's employment with E2E.

39.     Westerman reminded Fellegy of his Agreement and obligations to Deep South and informed him he was in violation of the Agreement.

40.     During the June 2022 conversation, Fellegy acknowledged that he was in violation of the Agreement and indicated that he would leave E2E if necessary.

41.     Fellegy remains employed by and working for E2E and, thus, continues to violate the Agreement.

42.     Deep South representatives have subsequently attempted to contact Fellegy to obtain his compliance with the Agreement to no avail.

43.     Fellegy's conduct in admitting his violation of the Agreement, stating that he will comply and cease working for E2E if necessary, then failing to do so and dodging Deep South's attempts to contact him make it clear that Fellegy has no intention of complying with his obligations under the Agreement.

44.     Fellegy continues to violate the Agreement.

**G.    Deep South's Right to Injunctive Relief and Damages**

45.     The Agreement provides for injunctive relief in the event of Fellegy's violation, stating in pertinent part as follows

> *[Fellegy] acknowleges that a breach or threatened breach of any of [his] obligations would cause immediate and irreparable harm to [Deep South] for which an adequate monetary remedy does not exist. [Fellegy] agrees that, in the event of any such breach or threatened breach, [Deep South] shall be entitled to*

> *temporary, preliminary, and/or permanent injunctive relief restraining [Fellegy] from such breach or threatened breach, and/or compelling or ordering [Fellegy's] compliance with this Agreement, without the necessity of proof of actual damage or the posting of any security or bond, except as required by any non-waivable, applicable law. Nothing herein, however, shall be construed as prohibiting [Deep South] from pursuing any other remedy at law or in equity to which [it] may be entitled in the event of a breach or threatened breach by [Fellegy], including without limitation the recovery of damages, penalties, attorneys' fees, lost profits, costs, and expenses incurred by [Deep South] as a result.*

*See* Exhibit 1 at ¶ 6.

46. Fellegy's conduct, as described above, is in violation of the Agreement.

47. Fellegy's violations have caused and will continue to cause Deep South injury and damages.

48. Fellegy's violations have further caused and will continue to cause irreparable harm to Deep South for which no adequate monetary remedy exists.

## CAUSES OF ACTION AND CLAIMS FOR RELIEF

### COUNT 1
### Breach of Contract

**Defendant Breached Paragraph 5(B) of the Agreement by Engaging in Competitive Activities**

49. Plaintiff reasserts and re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

50. Fellegy entered into the Agreement. *See* Exhibit 1.

51. The Agreement specifically prohibits Fellegy from "engag[ing] in any business that directly or indirectly competes with or is similar to the business of" Deep South for a period of two years following the end of his employment with Deep South. *See id.* at ¶ 5(B).

52. The Louisiana statute governing non-competition agreements unambiguously directs that "every contract or agreement, or provision thereof, which meets the exceptions as provided in this section, *shall be enforceable*." La. R.S. 23:921(A)(1) (emphasis added).

53. Under Louisiana law, a non-competition agreement meets the exception in the statute and "shall be enforced" where the employee agrees "to refrain from carrying on or engaging in a business similar to that of the employer . . . within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment." La. R.S. 23:921(A)(1) and (C).

54. The Agreement contains a valid temporal limitation period of two years after Fellegy's employment terminated.

55. Fellegy resigned his employment effective February 22, 2022, such that the duration of the non-competition obligation runs for two years thereafter, or on and through February 22, 2024.

56. The Agreement contains a valid geographic restriction, which is specifically defined in Exhibit A to the Agreement to identify each applicable parish and county by name.

57. Deep South markets its wireless technology services to, prospects for, services, and/or engages in wireless technology business with customers in every parish and county identified in Exhibit A to the Agreement.

58. The Agreement is enforceable against Fellegy.

59. Fellegy has continued to engage in competitive activity for his and E2E's benefit since his resignation from Deep South.

60. Fellegy violated Paragraph 5(B) of the Agreement pertaining to restriction on competition.

61. Fellegy's actions in violation of Paragraph 5(B) of the Agreement have caused Deep South substantial losses as described herein, which losses are ongoing.

62. Paragraph 5(B) of the Agreement pertaining to non-competition is an obligation not to do.

63. Under the Louisiana statute governing non-competition agreements, proof of irreparable injury is not necessary to obtain injunctive relief, which "shall" be ordered upon proof of the obligor's failure to perform. La. R.S. 23:921(H).

64. Nonetheless, Fellegy's continued breach of Paragraph 5(B) of the Agreement has caused and will continue to cause irreparable injury to Deep South for which there is no adequate remedy at law.

### Defendant Breached Paragraph 5(C) of the Agreement by Soliciting Deep South's Clients

65. Plaintiff reasserts and re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

66. Fellegy entered into the Agreement. *See* Exhibit 1.

67. The Agreement specifically prohibits Fellegy from soliciting, requesting, seeking, or obtaining the business of any person or entity that was Deep South's client during Fellegy's employment with Deep South and/or is Deep South's client during the two years following his employment with Deep South for a period of two years post-employment in specified parishes and counties in the United States. *See id.* at ¶ 5(C)

68. The Agreement also specifically prohibits Fellegy from inducing such customers to leave and diverting such customers from doing business with Deep South, and it prohibits

Fellegy from attempting to induce customers to leave and diverting them from doing business with Deep South during the specified time and geographic territory. *See id.*

69. The Louisiana statute governing non-solicitation of customer agreements unambiguously directs that "every contract or agreement, or provision thereof, which meets the exceptions as provided in this section, *shall be enforceable.*" La. R.S. 23:921(A)(1) (emphasis added).

70. Under Louisiana law, a non-solicitation agreement meets the exception in the statute and "shall be enforced" where the employee agrees "to refrain from . . . soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment." La. R.S. 23:921(A)(1) and (C).

71. The Agreement contains a valid temporal limitation period of two years after Fellegy's employment ends.

72. Fellegy resigned his employment effective February 22, 2022, such that the duration of the non-solicitation obligation runs for two years thereafter, or on and through February 22, 2024.

73. The Agreement contains a valid geographic restriction, which is specifically defined in Exhibit A to the Agreement to identify each applicable parish or county by name.

74. Deep South markets its wireless technology services to, prospects for, services, and/or engages in wireless technology business with customers in every parish and county identified in Exhibit A to the Agreement.

75. The Agreement is enforceable against Fellegy.

76. Upon information and belief, Fellegy has solicited, induced, and diverted Deep

South customers and their business for his and E2E's benefit since his resignation, including the business of GE.

77. Fellegy violated Paragraph 5(C) of the Agreement pertaining to the non-solicitation of customers.

78. Upon information and belief, Fellegy's actions in violation of Section 5(C) of the Agreement have caused Deep South to lose business, including that of GE.

79. Paragraph 5(C) of the Agreement pertaining to non-solicitation of customers is an obligation not to do.

80. Under the Louisiana statute governing non-solicitation of customer agreements, proof of irreparable injury is not necessary to obtain injunctive relief, which "shall" be ordered upon proof of the obligor's failure to perform.

81. Nonetheless, Fellegy's continued breach of Paragraph 5(C) of the Agreement has caused and will continue to cause irreparable injury to Deep South for which there is no adequate remedy at law.

**Defendant Breached Paragraph 4 of the Agreement by Using Confidential Information to Benefit Himself and E2E, a Deep South Competitor**

82. Plaintiff reasserts and re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

83. Fellegy held a position of trust with Deep South.

84. Fellegy had access to and received from Deep South non-public, confidential information related to its wireless technology services business, including existing and prospective client names, addresses, phone numbers, and other similar information.

85. Fellegy agreed that he would not "communicate, divulge, or make available to any person or entity (other than Employer, its clients, or other persons or entities expressly authorized by Employer to receive such information) any Confidential Information…." *See* Exhibit 1 at ¶ 4.

86. Fellegy acknowledged that Deep South's Confidential Information is its exclusive property that would be particularly valuable to Deep South's competitor's.

87. Fellegy agreed to use Deep South's Confidential Information only for its benefit.

88. Fellegy agreed that he would not at any time, directly or indirectly, use or permit use of Deep South's Confidential Information for his own benefit or for the benefit of a third party.

89. Upon information and belief, Fellegy used Deep South's Confidential Information to solicit Deep South's clients, to induce such clients to reduce their business with Deep South, and to divert such clients and/or their business from Deep South for Fellegy's own benefit.

90. Upon information and belief, Fellegy used Deep South's Confidential Information to solicit Deep South's clients, to induce such clients to reduce their business with Deep South, and to divert such clients and/or their business from Deep South for the benefit of E2E.

91. E2E engages in the wireless technology services business.

92. E2E is a competitor of Deep South.

93. Fellegy is affiliated with E2E as Account Director.

94. Fellegy engages in the wireless technology services business.

95. Fellegy is a competitor of Deep South.

96. Upon information and belief, Fellegy used his knowledge of Deep South customer data, addresses, phone numbers, and other similar information to solicit their business for himself and/or E2E.

97. Upon information and belief, Fellegy used his knowledge of Deep South's established business practices to solicit Deep South's clients' business for himself and/or E2E.

98. Upon information and belief, Fellegy violated Section 4 of his Agreement with Deep South by using its Confidential Information to solicit Deep South's clients and/or their business for himself and/or E2E.

99. Upon information and belief, Fellegy's use of Deep South's Confidential Information has caused or will cause Deep South to lose business.

100. Deep South has suffered and will continue to suffer irreparable harm as a result of Fellegy's violations of Section 4 of the Agreement for which there is no adequate remedy at law.

## Count III: Injunctive Relief

101. Plaintiff reasserts and re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

102. Fellegy breached his Agreement with Deep South by engaging in competition with Deep South.

103. Fellegy breached his Agreement with Deep South by soliciting, inducing, diverting, or otherwise encouraging Deep South's clients to transfer their business to E2E, a competitor.

104. Fellegy breached his Agreement with Deep South by using Deep South's Confidential Information regarding customers and its business for his own benefit and for the benefit of E2E, a competitor.

105. Fellegy's actions in breach of his Agreement have caused and are continuing to cause irreparable harm to Deep South for which there is no adequate remedy at law.

106. Deep South is substantially likely to succeed on the merits of its claims against Fellegy.

107. The irreparable injury that Deep South has suffered and will continue to suffer if injunctive relief is not granted outweighs any potential harm to Fellegy.

108. Granting injunctive relief to Deep South will not disserve the public interest.

## PRAYER FOR RELIEF

Plaintiff, Deep South Communications L.L.C., prays that after all due proceedings the Court find in favor of Plaintiff and against Defendant, Peter Fellegy, on all counts and grant the following temporary, preliminary, and permanent injunctive relief, and award all monetary damages and other legal and equitable relief appropriate under the law and circumstances, including an award of attorney fees and costs, against Defendant, Fellegy, more specifically as follows:

1. The entry of a temporary restraining order, preliminary injunction, and permanent injunction stating as follows:

    a. That Peter Fellegy and all persons or entities acting in concert with him are restrained, enjoined, and prohibited from violating his Confidentiality and Restrictive Covenant Agreement dated May 18, 2017, attached as Exhibit 1 (the "Agreement");

    b. That Peter Fellegy and all persons or entities acting in concert with him are restrained, enjoined, and prohibited from, directly or indirectly, acting alone or with others, soliciting or attempting to solicit, inducing to leave or diverting or attempting to induce to leave or divert from doing business with Deep South Communications, L.L.C., or any of its subsidiaries or affiliated companies ("Deep South"), any customer with whom Peter Fellegy had professional contact, for whom he had responsibility or with respect to whom he was privy to any information during his employment with Deep

15

        South, which prohibition shall remain in effect through February 22, 2024, in the parishes and counties named on Exhibit A to the Agreement;

    c.    That Peter Fellegy and all persons or entities acting in concert with him are restrained, enjoined, and prohibited from servicing any customer of Deep South for whom he had responsibility or with respect to whom he was privy to any information during his employment with Deep South, which prohibition shall remain in effect through February 22, 2024, in the parishes and counties named on Exhibit A to the Agreement;

    d.    That Peter Fellegy and all persons or entities acting in concert with him are restrained, enjoined, and prohibited from divulging, revealing, discussing, publishing, disseminating, or communicating Deep South's confidential customer data, customer and prospect names and contact information, , established business relationships, and other Confidential Information as defined in the Agreement;

    e.    That Peter Fellegy and all persons or entities acting in concert with him are restrained, enjoined, and prohibited from using or permitting use of, for his/their benefit or the benefit of third parties, Deep South's confidential customer data, customer and prospect names and contact information, established business relationships, and other Confidential Information as defined in the Agreement;

2.    Damages, including lost profits;

3. Attorney fees and costs;

4. Any other legal or equitable relief that this Court deems fair and just after all due proceedings in this matter.

Wherefore, Deep South Communications L.L.C. respectfully requests that its Verified Complaint for Injunctive and Other Relief be deemed good and sufficient, and that this Court enter judgment in favor of Deep South Communications L.L.C. and against Peter Fellegy, finding that Peter Fellegy violated his Confidentiality and Restrictive Covenant Agreement, specifically the non-competition and non-solicitation provisions, that he violated his fiduciary duties of fidelity and loyalty owed to Deep South Communications L.L.C., and further restraining, enjoining, and prohibiting him from engaging in further activities in breach of his Agreement and obligations, as specifically prayed for above, and awarding such other relief and damages to Deep South Communications L.L.C. as warranted in law and equity under the circumstances.

BY ATTORNEYS:

BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, PC

*s/Jennifer L. Anderson*
Jennifer L. Anderson (La. Bar No. 23620)
450 Laurel Street, 21st Floor
Baton Rouge, Louisiana 70801
Telephone: (225) 381-7020
Facsimile: (225) 343-3612
Email: jlanderson@bakerdonelson.com

AND

Emily Olivier Kesler (La. Bar No. 37747)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5927
Facsimile: (504) 585-6925
Email: ekesler@bakerdonelson.com

**Counsel for Deep South Communications L.L.C.**