**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| DEEP SOUTH | ) | CIVIL ACTION |
| COMMUNICATIONS L.L.C. | ) | |
| | ) | |
| | ) | NO. 22- 00598-JWD-EWD |
| v. | ) | |
| | ) | |
| PETER M. FELLEGY | ) | |

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR A TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTIVE RELIEF**

---

This Memorandum is submitted by Plaintiff, Deep South Communications L.L.C. ("Deep South"), in support of its Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction Relief (the "Motion").

## PRELIMINARY STATEMENT

As fully set forth in Plaintiffs' Verified Complaint for Injunctive and Other Relief (the "Verified Complaint" (Doc. 1)), this dispute arises out of Defendant, Peter M. Fellegy's ("Fellegy"), breach of certain contractual provisions contained in the Confidentiality and Restrictive Covenant Agreement (the "Agreement") he signed in conjunction with his employment with Deep South. More specifically, Fellegy has engaged in *and continues to engage in* conduct that violates the Agreement's non-competition, non-solicitation, and non-disclosure provisions, namely by obtaining employment with one of Deep South's direct competitors following his resignation from Deep South, and performing the same or similar type of work for that competitor, including working with at least one of Deep South's customers, and presumably using the confidential information he received from Deep South during his employment. Fellegy has

1

continued this conduct notwithstanding Deep South's demand for compliance with his contractual obligations. Fellegy's violations and breaches have cause irreparable harm to Deep South and will continue to do so without intervention from this Court.

This case and the evidence presented is equally compelling, if not more so, than that presented in other cases within this Circuit in which courts have awarded equitable relief in the form of a temporary restraining order and/or a preliminary injunction in favor of companies against former employees who breached their agreements and obligations. *See, e.g.*, *Brock Servs., L.L.C. v. Rogillio*, 936 F.3d 290, 293 (5th Cir. 2019) (affirming district court's granting of a preliminary injunction against a former employee who went to work for a direct competitor of his former employer in violation of his non-compete agreement); *Sabre Indus. Inc. v. McLaurin*, No. 5:19-CV-00934, 2019 WL 3933798, at *5 (W.D. La. Aug. 19, 2019) (granting preliminary injunction prohibiting and enjoining former employee from continuing his employment with direct competitor of former employer).

Here, Deep South presents evidence that it has a valid and enforceable Agreement under Louisiana law and that Fellegy breached that Agreement by engaging in business that directly or indirectly competes with the business of Deep South by working for one of Deep South's direct competitors in a similar position to the position he held with Deep South and is likely using confidential information for his own and Deep South's competitor's benefit. Fellegy's breach of his obligations under the Agreement has resulted in Deep South's loss of at least one client's business—a customer with which Fellegy developed a business relationship during his employment with Deep South, which, as a result of Fellegy's interference or other involvement, decided to forego planned business with Deep South in favor of working with Fellegy's new employer.

2

Fellegy has refused to comply with his obligations under the Agreement notwithstanding Deep South's cease and desist demands. Deep South has made reasonable efforts to gain Fellegy's compliance to no avail, and has demonstrated immediate and irreparable injury for which it has no adequate remedy at law. All four elements required for equitable relief are satisfied. Accordingly, Deep South respectfully requests that the Court grant this Motion and enter a temporary restraining order against Fellegy in the proposed form filed contemporaneously herewith and, after due proceedings, a preliminary injunction pending trial on the merits.

## I.    FACTUAL BACKGROUND

Deep South has set forth relevant facts in its Verified Complaint and, for the Court's convenience, summarizes the relevant facts herein.

### A.    Deep South's Business

Deep South is a wireless technologies services company that was founded by Rhett Westerman and is headquartered in Baton Rouge, Louisiana. Deep South operates in Louisiana and throughout the United States. (Verified Compl. ¶ 7.) Deep South specializes in microwave communications design and construction, fiber optics communications, distributed antenna systems, intelligent transportations systems, commun-ications tower build-outs and maintenance, cellular and microwave maintenance and build-outs. (Verified Compl. ¶ 1 and Exh. 1 (Agreement) ¶ 1, Doc. 1-2.)

### B.    Fellegy's Relationship with Deep South

Deep South hired Fellegy on or about May 17, 2017, as its Vice President of Business Development. (Verified Compl. ¶ 8.) In October of 2020, Fellegy was demoted to Manager of Business Development, a role in which he served until his resignation on February 22, 2022. (Verified Compl. ¶ 9.) Although Fellegy was able to perform his duties and work remotely during his employment with Deep South, his position was based out of Deep South's headquarters in

3

Baton Rouge, Louisiana, and he reported directly to the President of Deep South at all times. (Verified Compl. ¶ 10.) Fellegy regularly traveled to Louisiana during his employment with Deep South, approximately every one to two months, to attend in-person meetings with the President and others at Deep South's headquarters. (Verified Compl. ¶ 11.)

In his roles as Vice President and Manager of Business Development, Fellegy was responsible for developing and maintaining relationships and sales for the benefit of Deep South throughout Deep South's footprint. (Verified Compl. ¶ 12.) Fellegy also generated sales and business development leads, provided and compiled feedback regarding clients in addition to helping create overall business development strategies. (Verified Compl. ¶ 12.)

Throughout his employment, Fellegy had access to and received from Deep South non-public, confidential information related to its business, including existing and prospective customer names, addresses, phone numbers, and other similar information. (Verified Compl. ¶ 13.) Fellegy also had access to and received from Deep South non-public, confidential information related to its wireless technology services business, including its business relationships, financial performance, strategies for conducting business, price lists, sales, promotional and marketing strategies and information, and other trade secrets. (Verified Compl. ¶ 14.) Fellegy clearly held a position of trust with Deep South. (Verified Compl. ¶ 15.)

C.     **Fellegy's Contractual Obligations Under the Agreement**

In connection with his employment, Fellegy entered into a Confidentiality and Restrictive Covenant Agreement with Deep South. (Verified Compl. ¶ 16 and Exh. 1 (Agreement).) On or about May 18, 2017, Fellegy met with Deep South's Office Manager, Christina Springer, who informed him that as a condition of his employment he was required to execute the Agreement. (Verified Compl. ¶ 17.) Fellegy signed the Agreement effective May 18, 2017. (Verified Compl. ¶ 18 and Exh. 1 (Agreement) p. 4.)

4

1.  **Fellegy's Confidentiality Obligations**

Section 4 of the Agreement, entitled "Non-Disclosure of Confidential Information," expressly prohibits Fellegy from disclosing Deep South's confidential information, as defined in Section 3 of the Agreement. (Verified Compl. ¶ 23 and Exh. 1 (Agreement) § 4) Section 4 more specifically provides:

> 4.    **<u>Non-Disclosure of Confidential Information</u>**. Employee agrees that, during and after the end of Employee's employment relationship with the Company, Employee will not disseminate, divulge, misappropriate, or use for Employee's own or any third party's benefit any Confidential Information, except as expressly authorized by the Company in the course of Employee's fulfillment of his job responsibilities or as otherwise may be required by law.

As defined in the Agreement, "Confidential Information" includes:

> [B]usiness plans and strategies; business processes; research and development; training and other operational methods and techniques; manuals, policies, and procedures; business records and files; business proposals; client lists; client information; client source lists; purchasing methods; pricing; sales plans and activities; customer service strategies or activities; marketing and other technical data and studies; employment and other personnel data; financial plans, reports, and strategies; profits and losses; budgets; projections; price lists; sales, promotional, and marketing strategies and information; proprietary computer software and data; and internal correspondence, notes, and memoranda relating to any of the foregoing….

(Verified Compl., Exh. 1 (Agreement) § 3.) Fellegy expressly acknowledged that he had access "to existing and new valuable information relating to the business and clients of [Deep South] that is nonpublic, confidential, proprietary, and/or a trade secret and would be particularly valuable to [Deep South's] competitors." (Verified Compl. ¶ 19 and Exh. 1 (Agreement) §3.) Deep South's Confidential Information has independent economic value because it is not generally known to the public or its competitors. (Verified Compl. ¶ 21.) Deep South takes reasonable steps to protect its Confidential Information. (Verified Compl. ¶ 22.) Fellegy's agreement to safeguard and not

misappropriate Confidential Information, as defined in the Agreement, is perpetual. (Verified Compl. ¶ 24.)

### 2. Fellegy's Restrictive Covenant Obligations

Section 5 of the Agreement includes restrictive covenants concerning Fellegy's post-employment activities. (Verified Compl., Exh. 1 (Agreement) § 5.) Pursuant thereto, Fellegy agreed to refrain from conducting a number of activities within a limited geographic scope termed the "Territory" which consists of the parishes, counties, and municipalities included in Exhibit A to the Agreement. (Verified Compl., Exh. 1 (Agreement) § 5A and Exh. A thereto.) These restrictive covenants include a two-year non-competition agreement (Section 5B) and a two-year non-solicitation of Deep South's clients (Section 5C). (Verified Compl., Exh. 1 (Agreement) §§ 5B and 5C.)

In Section 5B, the Agreement prohibits Fellegy from engaging in any business that directly or indirectly competes with or is similar to the business of Deep South for a two-year period following his employment with Deep South within the Territory. (Verified Compl., Exh. 1 (Agreement) § 5B.) Section 5B provides:

> B.   **Non-Competition.** While employed by Employer and for a period of two years following the end of such employment relationship, Employee shall not, in the Territory, directly or indirectly, whether as an employee, consultant, independent contractor, agent, officer, director, owner, partner, operator, shareholder of 1% or more of stock, or in any other capacity, engage in any business that directly or indirectly competes with or is similar to the business of Employer.

In Section 5C, the Agreement prohibits Fellegy from soliciting the business of any Deep South client for the benefit of any entity other than Deep South for a two-year period following Fellegy's employment with Deep South within the Territory. (Verified Compl., Exh. 1 (Agreement) § 5C.) Section 5C provides:

6

C.     **<u>Non-Solicitation</u>**. While employed by Employer and for a period of two years following the end of such employment relationship, Employee shall not, in the Territory, (1) directly or indirectly solicit, request, seek, or obtain, for the benefit of Employee or any person or entity other than Employer, the business of any person or entity that is a client of Employer during Employee's employment by Employer or that is a client of Employer during the two-year period following the end of such employment relationship, or (2) directly or indirectly solicit, request, influence, induce, or otherwise encourage any client of Employer as described herein to restrict, limit, or cease doing business with Employer.

**D.     Fellegy's Conduct in Violation of the Agreement**

After Fellegy resigned from his position with Deep South, Deep South became aware that Fellegy had taken employment with End 2 End Technologies ("E2E") (a direct competitor of Deep South) armed with the customer contacts and business information that Deep South provided Fellegy in a position involved in business development on behalf of E2E. (Verified Compl. ¶ 30.) E2E holds itself out as a network infrastructure specialist engaged in the business of consulting, engineering, and executing comprehensive solutions for clients throughout the United States.[1] (Verified Compl. ¶ 31.) E2E competes directly with Deep South throughout the United States. (Verified Compl. ¶ 32.) As an employee of E2E, Fellegy is engaging in business in direct competition with Deep South throughout the United States, and is therefore in breach of the Agreement. (Verified Compl. ¶ 33.) The losses caused by Fellegy's disregard for his non-compete are negatively impacting Deep South's revenues and will continue to do so. (Verified Compl. ¶ 37.)

In addition, Fellegy is in breach of his non-solicitation obligations. For instance, one of the customers with whom Fellegy developed a business relationship on behalf of Deep South over the course of his employment with Deep South is General Electric Co. ("GE"). (Verified Compl. ¶ 34.) Prior to Fellegy's exit from Deep South, GE expressed a desire to make Deep South its account

---

[1] https://www.e2etechinc.com/pages/about-us-new.

holder for its wireless product line for the State of Arkansas account. (Verified Compl. ¶ 35.) However, after Fellegy's departure, E2E decided that it would no longer make the switch to Deep South, and Deep South discovered that Fellegy's new employer, would continue to be GE's account holder for its product line in Arkansas. (Verified Compl. ¶ 35.) Deep South believes it is being deprived of or has lost similar business opportunities as a result of Fellegy's improper conduct. (Verified Compl. ¶ 36.)

### E. Fellegy Admits His Conduct Violates the Agreement but Refuses to Cease and Desist

Deep South's President, Rhett Westerman, contacted Fellegy on or about June 6, 2022, upon learning of Fellegy's employment with E2E. (Verified Compl. ¶ 38.) Westerman reminded Fellegy of the Agreement and his obligations to Deep South and informed him he was in violation of the Agreement. (Verified Compl. ¶ 39.) During the June 2022 conversation, Fellegy acknowledged that he was in violation of the Agreement and indicated that he would leave E2E if necessary. (Verified Compl. ¶ 40.) Fellegy remains employed by and working for E2E and, thus, continues to violate the Agreement. (Verified Compl. ¶ 41.)

On August 26, 2022, Deep South representatives sent Fellegy a cease and desist letter. (Verified Compl. ¶ 42.) In response thereto, Fellegy made it clear that he has no intention of ceasing to work for E2E in Deep South's territory. Fellegy's conduct makes it clear that Fellegy has no intention of complying with his obligations under the Agreement. (Verified Compl. ¶ 43.)

### F. Deep South's Right to Injunctive Relief and Damages

The Agreement provides for injunctive relief in the event of Fellegy's violation, stating in pertinent part as follows:

> 6. **Breach and Remedies.** Employee acknowledges that a breach or threatened breach of any of Employee's obligations would cause immediate and irreparable harm to Employer for which an adequate monetary remedy does not exist. Employee agrees that, in the event of any such breach or

threatened breach, **Employer shall be entitled to temporary, preliminary, and/or permanent injunctive relief restraining Employee from such breach or threatened breach, and/or compelling or ordering Employee's compliance with this Agreement, without the necessity of proof of actual damage or the posting of any security or bond**, except as required by any non-waivable, applicable law. Nothing herein, however, shall be construed as prohibiting Employer from pursuing any other remedy at law or in equity to which the Employer may be entitled in the event of a breach or threatened breach by Employee, including without limitation the recovery of damages, penalties, attorneys' fees, lost profits, costs, and expenses incurred by Employer as a result.

(Verified Compl., Exh. 1 (Agreement) § 6, Doc. 1-2 (emphasis added).)

Fellegy is breaching his obligations to Deep South under the Agreement. (Verified Compl. ¶ 46.) He is actively competing against Deep South and has solicited Deep South's customers. Thus, this request for immediate relief is necessary. Furthermore, Fellegy has no intention of complying with his obligations under the Agreement. Accordingly, a temporary restraining order is warranted to enforce Fellegy's compliance with his obligations under the Agreement.

## II.    ARGUMENT AND AUTHORITIES

Rule 65 of the Federal Rules of Civil Procedure provides that a TRO may be granted without notice if it appears that "immediate and irreparable injury, loss, or damage" will result to the party seeking the order before the adverse party can be heard in opposition.  Fed. R. Civ. Proc. 65(b)(1)(A). A moving party is entitled to such equitable relief upon a showing of the four elements traditionally required for a preliminary injunction:

> (A) likelihood of success on the merits;
> (B) likelihood of suffering irreparable harm in the absence of the relief sought;
> (C) the threatened injury to plaintiff outweighs the threatened harm to defendant; and
> (D) the relief will not disserve the public interest.

*Brock Services, L.L.C. v. Rogillio,* 936 F.3d 290, 296 (5th Cir. 2019) (citing *Cardoni v. Prosperity Bank,* 805 F.3d 573, 579 (5th Cir. 2015)); *Republican Party of Louisiana v. Schedler*, 11–796, 2011 WL 6003188, *2, (M.D. La. Nov. 30, 2011) (citing *Winter v. Natural Resources Defense*

*Council, Inc.,* 555 U.S. 7, 20 (2008)); *Snow v. Lambert*, 15-567, 2015 WL 5071981, at *1 (M.D. La. Aug. 27, 2015) (citing *Clark v. Prichard,* 812 F.2d 991, 993 (5th Cir. 1987).

Injunctive relief "is customarily granted on the basis of procedures that are less formal and on evidence that is less complete than a trial on the merits. A party thus is not required to prove his case in full at a preliminary injunction hearing." *University of Texas v. Comenisch,* 451 U.S. 390, 395 (1981). This is true for more than one reason. First, interim injunctive relief is not subject to a jury trial. Second, an "additional reason for some leniency in the preliminary injunction stage is that it is used when quick action is necessary to prevent irreparable harm." *J.P. Morgan Sec. LLC v. Manne*, 16-818, 2016 WL 7223358, at *2 (M.D. La. Dec. 12, 2016). As a leading commentator has explained, "the grant of a preliminary injunction is discretionary," such that "the trial court should be allowed to give even inadmissible evidence some weight when it is thought advisable to do so in order to serve the primary purpose of preventing irreparable harm before a trial can be held. . . ." *See id.* (citing 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2949 at 471).

All four elements are satisfied in this case and are supported by compelling and competent evidence, including a valid and enforceable Agreement and a Verified Complaint detailing specific factual instances of Fellegy's breaches of the Agreement, including the loss of business and at least one customer. Deep South tried to secure Fellegy's compliance with his Agreement on multiple occasions to no avail. The restrictions sought to be enforced in Fellegy's Agreement are not only compliant with Louisiana law, they are also reasonable.[2] Fellegy's ongoing violations have made

---

[2] Application of Louisiana law is appropriate where, as here, Fellegy signed the Agreement in Baton Rouge, reported to and was based out of Baton Rouge during his employment with Deep South, and agreed that Louisiana law exclusively would govern the Agreement. *See* Verified Compl., Doc. 1, ¶ 5 and Exh. 1 (Agreement) § 12, Doc. 1-2.

it clear that immediate and irreparable injury will continue absent a temporary restraining order and preliminary injunction from this Court.

### A. Deep South Is Likely to Succeed on the Merits of Its Claim.

The elements of a breach of contract claim under Louisiana law are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee. *Denham Homes, L.L.C. v. Teche Fed. Bank*, 2014-1576 (La. App. 1 Cir. 9/18/15); 182 So. 3d 108, 119. Deep South has presented evidence of the valid Agreement between Fellegy and Deep South reflecting Fellegy's undertaking of certain obligations to Deep South as well as evidence demonstrating that Fellegy is in breach of the Agreement.

#### 1. Fellegy Is Competing with Deep South and Soliciting Deep South's Clients in Violation of the Agreement.

The Louisiana statute governing non-competition and non-solicitation agreements unambiguously directs that "every contract or agreement, or provision thereof, which meets the exceptions as provided in this section, *shall be enforceable*." La. R.S. 23:921(A)(1) (emphasis added); *Brock Servs., L.L.C. v. Rogillio*, 936 F.3d 290, 296 (5th Cir. 2019). Under Louisiana law, a non-competition or non-solicitation agreement meets the exception in the statute and "shall be enforce[d]" where the employee agrees "to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment." La. R.S. §§ 23:921(A)(1) and (C).

In this case, Fellegy and Deep South entered into an agreement containing both non-competition and non-solicitation provisions. Deep South is not seeking to prevent Fellegy

from engaging in a competing business generally, nor does the Agreement prevent him from doing so. Rather, the Agreement restricts Fellegy from engaging in discrete activities (engaging in the same business as Deep South and soliciting Deep South's customers) within a brief time frame (two years after his employment with Deep South ends) and limited geographic area (counties and parishes set forth in Exhibit A to the Agreement). Deep South markets its wireless technology services to, prospects for, services, and/or engages in wireless technology business with customers in every parish and county identified in Exhibit A to the Agreement. (Verified Compl. ¶ 57.) Thus, the Agreement complies with the statute and is valid and enforceable.

Deep South has demonstrated that Fellegy is in breach of the non-competition and non-solicitation obligations in the Agreement. As set forth more fully in the Verified Complaint, following his resignation from Deep South, Fellegy became employed by E2E, one of Deep South's direct competitors, and is now performing the same or similar type of business development work for E2E that he was previously performing on behalf of Deep South. To that end, Fellegy has diverted Deep South business to E2E for his and Deep South's competitor's benefit. Thus, Deep South has shown a substantial likelihood of success on the merits on its claim that Fellegy breached these provisions of the Agreement.

### 2.   *The Evidence Indicates Fellegy Is Likely Using Confidential Information for His and/or E2E's Benefit.*

Under the Agreement, Fellegy agreed, that during his employment and indefinitely thereafter, he would not "communicate, divulge or make available to any person or entity" Deep South's confidential information. (Exh. 1 (Agreement) § 4, Doc. 1-2.) Section 3 of the Agreement defines "Confidential Information," which among other things includes "business plans and strategies; business processes; research and development; training and other operational methods and techniques; manuals, policies, and procedures; business records and files; business proposals;

12

client lists; client information; client source lists; purchasing methods; pricing; sales plans and activities; customer service strategies or activities; marketing and other technical data and studies; employment and other personnel data; financial plans, reports, and strategies; profits and losses; budgets; projections; price lists; sales, promotional, and marketing strategies and information….." (Exh. 1 (Agreement) § 3, Doc. 1-2.) Fellegy acknowledged that he "has had and/or will continue to have access to existing and new valuable information relating to the business and clients of [Deep South] that is nonpublic, confidential, proprietary, and/or trade secret and would be particularly valuable to [Deep South's] competitors….." (Exh. 1 (Agreement) § 3, Doc. 1-2.)

However, it appears that Fellegy was using Confidential Information, including but not limited to his knowledge of customer's names, contact information, and other business information, to target, solicit, induce, and divert the business of specific Deep South customers to E2E for his own and E2E's benefit, given that at least one of the customers with whom Fellegy had developed a business relationship on Deep South's behalf decided not to go forward with its plan to make Deep South its account holder for its wireless product line for the State of Arkansas account in favor of working with Fellegy's current employer, E2E. Fellegy's diversion of this work away from Deep South to E2E suggests that he was using Deep South's Confidential Information. The Agreement prohibits Fellegy from utilizing Deep South's Confidential Information in this way. Deep South has clearly shown a substantial likelihood of success on the merits on its claim that Fellegy breached the confidentiality provisions of the Agreement.

**B.**      **Deep South Will Suffer Irreparable Harm in the Absence of Injunctive Relief.**

*1.*      ***Deep South Need Not Demonstrate Irreparable Injury.***

While irreparable injury will most certainly result in the absence of injunctive relief, Deep South is not required to make this showing. "[I]n the event an employee enters into an agreement with his employer not to compete, pursuant to La. R.S. 23:921, and fails to perform his obligation

13

under such an agreement, the court shall order injunctive relief even ***without a showing of irreparable harm***, upon proof by the employer of the employee's breach of the noncompete agreement." *West Carroll Health System, L.L.C. v. Tilmon*, 47,152, p. 8 (La. App. 2 Cir. 5/16/12), 92 So. 3d 1131, 1136 (citing *Vartech Systems, Inc. v. Hayden*, 05–2499 (La. App. 1 Cir. 12/20/06), 951 So. 2d 247; *Clear Channel Broadcasting, Inc. v. Brown*, 04–133 (La. App. 4 Cir. 3/30/05), 901 So. 2d 553, 557; La. R.S. 23:921(H)) (emphasis added). Thus, the Court could issue a TRO and preliminary injunction even if Deep South has not made a showing of irreparable harm.

### 2.    *Plaintiff Will Suffer Irreparable Injury as a Result of Fellegy's Violations and Breaches of His Obligations.*

Even though Deep South need not show irreparable injury to obtain injunctive relief, a finding of irreparable harm is nevertheless warranted by the fact that Fellegy's activities in contravention of his Agreement and in violation of the law will result in irreparable harm to Deep South. Irreparable harm exists "even where economic rights are involved, when the nature of those rights makes establishment of the dollar value of the loss . . . especially difficult or speculative." *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 810 (5th Cir. 1989). For example, a loss of a customers and damage to goodwill are widely recognized as injuries incapable of ascertainment in monetary terms and may thus be irreparable. *See id*. (affirming district court's holding that damage to goodwill was irreparable because it might be "incapable of calculation").

Deep South will suffer irreparable harm here because allowing Fellegy to continue to violate his obligations and the law puts Deep South at a competitive disadvantage in the marketplace and undercuts its goodwill and relationships with its existing customers. *Id; see also Corrosion Specialties and Supply, Inc.* v. *Dicharry,* 631 So.2d 1389, 1392 (La. App. 5 Cir. 1994) ("[H]arm to a competitive position…constitutes irreparable harm for which injunctive relief may be had."); *see also Charles Schwab & Co. v. Newton*, 16-00236, 2016 WL 1752767, at *1 (M.D.

La. May 2, 2016) (noting that the firm would "suffer irreparable harm and loss if Defendant [were] permitted to: (a) convert Plaintiff's confidential information and other property to Defendant's own personal use and benefit, and (b) solicit and contact [its] clients to do business with Defendant"). For the same reasons, Deep South will suffer irreparable harm in the absence of a TRO and preliminary injunctive relief.

> **C.    The Threatened Harm to Plaintiff Outweighs Any Possible Harm an Injunction May Cause Fellegy.**

In this case, the potential harm to Deep South, which comes in addition to harm already suffered, greatly outweighs any possible harm to Fellegy. *See Newsouth Communications Corp. v. Universal Telephone Co.*, 02-2722, 2002 WL 31246558, *23 (E.D. La. Oct. 4, 2002) (finding that defendants had breached non-solicitation and non-compete agreements, and holding that that "the threatened injury to plaintiff's business if injunctive relief is denied heavily outweighs the threatened injury to defendants if injunctive relief is granted"). The potential harm to Fellegy is mitigated by the limited scope, time, and/or geographic area applicable to the obligations at issue. In fact, Deep South is simply asking this Court to require Fellegy to honor promises he already made, and in exchange for which he received substantial compensation, confidential information, and customer relations opportunities in the industry. Thus, the potential for harm to Fellegy is truly non-existent, as the only activities to be prevented by the TRO sought are those that Fellegy is already barred from performing as a result of contractual and statutory obligations. The entry of the Proposed TRO would simply maintain the status quo between the parties until such time as Deep South can obtain a ruling on the merits.

> **D.    Injunctive Relief Will Not Disserve the Public Interest.**

Deep South seeks to ensure that the promises it has relied upon, and the contracts it has entered into are fulfilled and that its interests are protected. It simply wishes to have Fellegy live

up to the guarantees he made to Deep South, namely that he will not engage in competition with Deep South, solicit Deep South's customers, or use Deep South's Confidential Information for his own benefit or to benefit a third party. A business should be able to rely upon the agreements it makes, and it is the duty of the court system to ensure parties are protected from injury caused by a breach. *Asbury MS Gray-Daniels, L.L.C. v. Daniels*, 812 F. Supp. 2d 771, 783 (S.D. Miss. 2011) (The "public has an interest in ensuring that parties uphold valid contractual agreements entered into voluntarily and knowingly.").

An injunction to enforce the correct application of the law, in and of itself, serves the public interest. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) (finding that the public is served when the law is followed). The Agreement is valid and enforceable, and "employers have a substantial interest in ensuring these contracts are enforced." *See J.P. Morgan Sec. LLC v. Manne*, 16-818, 2016 WL 7223358, at *6 (M.D. La. Dec. 12, 2016). Thus, granting a TRO and a preliminary injunction "will not disserve the public interest." *Id.* Injunctive relief is certainly appropriate here.

### E.    Deep South Should Not be Required to Post Bond or Give Security.

Rule 65(c) of the Federal Rules of Civil Procedure states a "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. Proc. 65(c). Although Rule 65(c) appears to require security, "[t]he amount of security required is a matter for the discretion of the trial court; it may elect to require no security at all." *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 303 (5th Cir. 1978). Given that the Court has only enjoined Fellegy from engaging in otherwise unlawful activities, *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628, n.20 (5th Cir. 1996), and to maintain the status quo, *FUNimation Entm't v. SC Films Int'l, Inc.*, 2013 WL 5770383, at

16

*2 (E.D. Tex. Oct. 24, 2013), no costs or damages should be sustained by Fellegy as a result of the Proposed TRO. Thus, under Rule 65, the Court has the discretion to require no security at all.

### F.    No Further Efforts to Give Notice Should be Required

In fact, Deep South made previous attempts to obtain Fellegy's compliance with his obligations under the Agreement, to no avail. Further, pursuant to Rule 65(b), in filing this Motion, undersigned counsel certifies that prior to filing this Motion, Deep South contacted Fellegy to make him aware of Deep South's request for a temporary restraining order. (Rule 65 Certification, attached hereto as Exh. 1.) Specifically, on September 26, 2022, undersigned counsel informed Fellegy in writing via email of Deep South's intention to seek injunctive relief and provided courtesy copies of the Verified Complaint, the Motion, Memorandum in Support, and the Proposed TRO. Given these efforts, no further efforts to give notice to Fellegy should be required.

### III.    CONCLUSION

As shown herein and in the supporting exhibits, without the Court's intervention, Deep South has and will continue to suffer irreparable injury as it has no adequate remedy at law and all of the factors weigh in favor of granting the Proposed TRO.  Accordingly, Deep South respectfully requests that the Court grant the Motion and enter a TRO against Fellegy in the form of the Proposed TRO filed contemporaneously herewith.

Considering the foregoing, the evidence and law warrant the Court's exercise of its discretion to enter a TRO enjoining Fellegy from engaging in conduct in further violation of his Agreement and obligations to Deep South. Additionally, because Fellegy is diverting customers and business to a competitor, E2E, the TRO should prohibit Fellegy and anyone acting in concert or participation with him from engaging in prohibited activities. Courts have held that individuals cannot avoid contractual obligations by doing through another the exact thing the individual is restricted from doing. *See, e.g.*, *CDI Corp. v. Hough*, 2008-0218 (La. App. 1 Cir. 3/27/09); 9 So.

3d 282, 294 ("[A]n injunction that would allow [the company] to do the exact same thing that [the individual] is prohibited from doing individually would be worthless."); *Trost v. O'Connor*, 2006–1281 (La. App. 3 Cir. 4/4/07), 955 So.2d 246 (finding that an individual could not sidestep contractual obligations by selling and forming business entities and instructing others to perform activities he was restricted from performing); *see also* FED. R. CIV. PROC. 65 (d)(2); *J.P. Morgan Sec. LLC*, 2016 WL 7223358, at *2 (restraining those in active concert or participation with the defendant). This Court should grant Deep South's Motion and enter a TRO to restrain Fellegy as well as those persons in active concert or participation with her from engaging in the activities specified in the Proposed TRO filed contemporaneously herewith.

BY ATTORNEYS:

**BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, PC**

*s/Jennifer L. Anderson*
Jennifer L. Anderson (La. Bar No. 23620)
450 Laurel Street, 21st Floor
Baton Rouge, Louisiana 70801
Telephone: (225) 381-7020
Facsimile: (225) 343-3612
Email: jlanderson@bakerdonelson.com

AND

Emily Olivier Kesler (La. Bar No. 37747)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5927
Facsimile: (504) 585-6925
Email: ekesler@bakerdonelson.com

***Counsel for Deep South Communications L.L.C.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that service of a copy of the foregoing pleading or paper on the Defendant shall be made in the manner and time as may be required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

*/s/Jennifer L. Anderson*
Jennifer L. Anderson