**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DEEP SOUTH COMMUNICATIONS L.L.C,** | § § § | |
| | § | **Civil Action No. 3:22-cv-00598-JWD-EWD** |
| *Plaintiff,* | § § | |
| | § | **Judge Judge John W. deGravelles** |
| **v.** | § § | |
| | § | **Magistrate Judge Erin Wilder-Doomes** |
| **PETER M. FELLEGY,** | § § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S RULE 12(B)(2) MOTION TO
DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION
AND RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM**

**NOW INTO COURT**, through undersigned counsel, comes Defendant Peter Fellegy ("Mr. Fellegy" or "Defendant") who submits this Memorandum in Support of his Rule 12(b)(2) Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim.

**I.      BACKGROUND**

On August 26, 2022, Plaintiff Deep South Communications, LLC ("Deep South" or "Plaintiff") filed its Verified Complaint for Injunctive and Other Relief ("Complaint"), seeking injunctive and monetary relief against Mr. Fellegy for the alleged breach of a Confidentiality and Restrictive Covenant Agreement ("the Agreement"). (Complaint, Doc. 1 and 1-2.) Deep South alleged that Mr. Fellegy breached the Agreement by engaging in competitive activities, soliciting Deep South's "clients", and using Deep South's confidential information. (Complaint, Doc. 1, ¶¶ 49-100.)

On September 26, 2022, Deep South filed a Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 8.) On October 4, 2022, this Court held a telephone status conference

with the parties, and ordered Mr. Fellegy to file any motions to dismiss or oppositions to Deep

South's request for temporary restraining order ("TRO") on or before October 11, 2022. (Doc. 15.)

Accordingly, Mr. Fellegy files this Rule 12(b)(2) Motion to Dismiss Plaintiff's Complaint for Lack

of Jurisdiction and Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint for Failure to State a

Claim seeking dismissal of the case in its entirety, or, alternatively, restrict the case to any

surviving claims and limiting the issues to be addressed in any preliminary injunction proceeding

or discovery.

Mr. Fellegy submits this Motion on the grounds that (1) no personal jurisdiction exists over

him in Louisiana courts, (2) the non-solicitation clause in the Agreement is unenforceable against

him under Louisiana law, and (3) Deep South fails to state a claim for breach of the Agreement

because Deep South has failed to allege adequate factual allegations to show the plausibility of

any breach.

## II.    LAW AND ARGUMENT

### A.    Deep South's Complaint Should Be Dismissed For Lack Of Personal Jurisdiction.

#### 1.    Standard of review for motion to dismiss for lack of personal jurisdiction.

Plaintiff bears the burden of proof to show personal jurisdiction exists over the defendant.

*Libersat v. Sundance Energy, Inc.*, 437 F.Supp.3d 557, 565 (W.D. La. 2020). Where the defendant

disputes the factual grounds for personal jurisdiction, the district court may consider the record

before it, including "affidavits, interrogatories, depositions, oral testimony or any combination of

the recognized methods of discovery." *Id.* (quoting *Quick Technologies, Inc. v. Sage Group PLC*,

313 F.3d 338, 344 (5th Cir. 2002). Where the defendant controverts factual allegations in the

complaint with affidavits or other evidence, the plaintiff cannot rest solely on the controverted

allegations in the complaint but must counter the defendant's evidence with affidavits or other evidence. *Id.*

## 2.    Louisiana lacks personal jurisdiction over Mr. Fellegy.

The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgement of its courts.  *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). Thus, a federal court may exercise personal jurisdiction over a non-resident defendant if "the forum state's long-arm statute extends to [such] defendant and the exercise of jurisdiction comports with due process." *Carmona v. Leo Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). To comport with federal due process, a plaintiff in a diversity case must establish that the non-resident defendant "purposely availed himself of the benefits and protections of the form state by establishing minimum contacts with the state" and that "the exercise of jurisdiction [ ] does not offend traditional notions of fair play and substantial justice." *Id.*

Where general jurisdiction is lacking (as is the case here)[1], the plaintiff must establish specific personal jurisdiction over a non-resident defendant. Whether specific jurisdiction can be properly asserted over a non-resident defendant is dependent on "the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283-84. In determining whether due process allows the exercise of specific jurisdiction, federal district courts consider the following factors:

---

[1]    General personal jurisdiction exists only when a party's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum state." *Daimler A.G. v. Bauman*, 571 U.S. 117 (2014). Nothing within Deep South's Complaint establishes any sort of continuous and systematic contacts between Mr. Fellegy and Louisiana that would be sufficient to support the "exceptional case" of general personal jurisdiction here. *Libersat*, 437 F.Supp.3d at 565. Thus, only specific personal jurisdiction is at issue.

(1) Whether the defendant has minimum contacts with the forum state, i.e., whether it purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;

(2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and

(3) whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona*, 924 F.3d at 193. If the plaintiff demonstrates satisfaction of the first two factors with respect to each of its claims, the burden then shifts to the non-resident defendant to show that "exercising jurisdiction would be unfair or unreasonable." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014). The focus of the specific jurisdiction inquiry is on Mr. Fellegy's contacts with Louisiana, not Deep South. *Inmar Rx Solutions, Inc. v. Devos, Ltd.*, 786 Fed.Appx. 445 (5th Cir. 2019).

> a. ***Mr. Fellegy does not have the requisite minimum contacts with Louisiana connected to the underlying basis of Deep South's claims.***

Here, Mr. Fellegy does not have sufficient minimum contacts with Louisiana for the exercise of specific personal jurisdiction. Mr. Fellegy resides, and has resided for all relevant times, in Indiana. (Declaration of Peter Fellegy ("Fellegy Decl."), ¶ 3, attached hereto as Exhibit A.) He primarily negotiated his employment with Deep South from his Indiana home, from which he completed the bulk of his work for Deep South during his five-year employment. (Fellegy Decl., ¶¶ 5, 11, 23.) During his employment at Deep South, he maintained an Indiana phone number and did not have an office at Deep South's Baton Rouge location. (Fellegy Decl., ¶ 13-14.) Mr. Fellegy did not develop relationships for Deep South in the state of Louisiana. (Fellegy Decl., ¶ 15.) Deep South's owner, Rhett Westerman, developed all Louisiana business opportunities during Mr.

Fellegy's tenure. (Fellegy Decl., ¶ 16.) Mr. Fellegy travelled to Deep South only nine times in five years to meet with Mr. Westerman and Deep South management. (Fellegy Decl., ¶ 24.) Any contacts with Louisiana were based on Deep South's needs – not Mr. Fellegy's seeking of the benefits of the laws of Louisiana. Based on these facts, Mr. Fellegy directed no activity towards the state or avail himself of any of the benefits of the state sufficient to haul him into court there. *See Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colo.*, 615 F.3d 364, 369-370 (5th Cir. 2010) (upholding district court's dismissal for lack of personal jurisdiction despite defendant's numerous payments to the Louisiana plaintiff over three years because such payments did not establish purposeful contact where the conduct was directed by another's actions.)

Also, Mr. Fellegy's work for End 2 End Technologies, LLC. ("End 2 End") is not directed at the state of Louisiana. He does not develop business for End 2 End in the state of Louisiana in his role as Account Director-Utilities. (Fellegy Decl., ¶ 30.) He does not travel there for work. (Fellegy Decl., ¶ 31.) He does not and has not solicited any Deep South clients, including those located in Louisiana. (Fellegy Decl., ¶ 32-33.) Nothing related to Mr. Fellegy's employment with End 2 End – which is the basis of Deep South's lawsuit – has any connection with the state of Louisiana. As such, Deep South cannot establish the first two factors necessary to convey personal jurisdiction over Mr. Fellegy in Louisiana courts. *See Inmar Rx Solutions, Inc.,* 786 Fed.Appx. at 449-450 (holding that personal jurisdiction did not exist where the acts giving rise to the breach of contract claims did not occur in the forum state); *Companion Property and Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 561 (5th Cir. 2013) (upholding district court's dismissal for lack of personal jurisdiction where the plaintiff failed to show any contacts with the forum that arose out of the underlying occurrence that gave rise to the lawsuit, notwithstanding the relationship between the parties.); *JMF Medical, LLC v. Team Health, LLC*, 490 F.Supp.3d 947, 968 (M.D. La. 2020)

(dismissing for lack of personal jurisdiction despite the defendant being registered to do business in Louisiana where the contacts established were not relevant to the underlying conduct giving rise to the lawsuit). Deep South's Complaint should be dismissed in its entirety.

### b.  Deep South fails to provide any sufficient contacts to support jurisdiction.

Deep South provides no relevant contacts sufficient to convey specific jurisdiction. Deep South alleges only four contacts between Mr. Fellegy and Louisiana: (1) the signing of the Agreement in Baton Rouge; (2) Mr. Fellegy reporting to and being based out of Baton Rouge; (3) Mr. Fellegy's agreement that Louisiana law would apply; and (4) Mr. Fellegy's trips to Louisiana for meetings with Deep South management. (Complaint, ¶¶ 5, 10-11.) None of these contacts establish specific personal jurisdiction over an action seeking to restrain Mr. Fellegy from competing with Deep South.

First, none of these contacts are related to the occurrence or conduct that is at the heart of Deep South's claims. "[T]he *suit* must arise out of or be related to the defendant's contacts with the *forum*." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F.,* 137 S.Ct. 1773, 1780, 198 L.Ed2d 395 (2017) (emphasis in original). There must be "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* Such activity or occurrence must "create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. Absent this connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.,* 137 S. Ct. at 1781. Consistent with these principles, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* at 1780.

The reason Deep South hauled Mr. Fellegy into court seven months after his departure is Mr. Fellegy's employment with End 2 End – conduct that has nothing to do with the "contacts" Deep South has alleged. Mr. Fellegy's work for End 2 End that is at the core of the dispute is occurring primarily in Indiana. (Fellegy Decl., ¶ 34-35.) The dispute does not hinge on Mr. Fellegy's signing of the Agreement (he admits that he did). The location of Mr. Fellegy's office, who he reported to, and his alleged trips to Louisiana to meet with Westerman and Deep South management for a few days are all irrelevant to Deep South's claims in the lawsuit.

Second, Deep South seeks to establish personal jurisdiction over Mr. Fellegy based on its own affiliation with Louisiana – which it cannot do. The plaintiff "cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285. A defendant's relationship with a plaintiff, standing alone, is an insufficient basis for jurisdiction. *Id.* at 286. Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the forum state, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State. *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Deep South alleges "contacts" for Mr. Fellegy that are wholly ancillary to Deep South's employment of him. It seeks to bootstrap jurisdiction by using its own contacts with Louisiana and its employment of Mr. Fellegy as a means of conveying jurisdiction. This is not sufficient under the law to protect Mr. Fellegy's due process rights. *Walden*, 571 U.S. at 285.

Third, the facts alleged by Deep South are inaccurate. As indicated above, Mr. Fellegy did not sign the Agreement in Baton Rouge. Mr. Fellegy received the Agreement through email on the first day of his employment with Deep South. (Fellegy Decl., ¶ 6-7.) He reviewed and signed the

Agreement a few days later in Orlando, Florida, where he was attending a conference and representing Deep South. (Fellegy Decl., ¶ 8-9.) He then emailed it back to Deep South's Office Manager. (Fellegy Decl., ¶ 9.) Thus, the signing of the Agreement did not occur in Louisiana, despite Deep South's allegation to the contrary.

Deep South also did not designate Baton Rouge as Mr. Fellegy's office. Mr. Fellegy did not have a physical office in Deep South's Baton Rouge location. (Fellegy Decl., ¶ 14.) He did not maintain a Baton Rouge phone number while working for Deep South. (Fellegy Decl., ¶ 14.) In fact, Deep South represented to the public via its website that it had a location in Indianapolis, Indiana. (Website of Deep South Communications, LLC, www.deepsouthcommunications.com/about/locations/, last visited October 10, 2022, screenshot, taken on October 6, 2022, attached hereto as Exhibit B.) Mr. Fellegy was Deep South's only employee in Indianapolis, IN in the five years he worked for Deep South. (Fellegy Decl., ¶ 12.) Thus, not even Deep South appears to have believed that Mr. Fellegy was based in Baton Rouge.

Nor did Mr. Fellegy agree that Louisiana law should apply. Section 921 states that any choice of law clause included in an employee's contract of employment "shall be null and void" except where the choice of law provisions is "expressly, knowingly, and voluntarily agreed to *and ratified by the employee* after the occurrence of the incident which is the subject of the [lawsuit]." LA R.S. 23:921(A)(2). No such ratification has occurred here. Indeed, Mr. Fellegy objects to the application of Louisiana law. (Fellegy Decl., ¶ 10.) Additionally, the existence of a choice-of-law clause is not dispositive of the issue of specific personal jurisdiction; it is not sufficient in itself to establish personal jurisdiction when, as here, the contacts do not otherwise demonstrate that the defendant purposefully availed himself of the privileges of the forum state. *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012). As a result, Deep South

cannot now use a null and void section of the Agreement as the basis to support personal jurisdiction. *See Lobrano v. C.H. Robinson Worldwide, Inc.*, 2011 WL 52602, at *3-4 (W.D. La. Jan. 7, 2011) (holding a choice of law provision against public policy, despite the former employer's agreement to have Minnesota law apply to the non-compete).

Deep South has failed to carry its burden to show (1) Mr. Fellegy had a minimum level of contacts with the State of Louisiana sufficient to convey jurisdiction, and (2) that Deep South's claims arises out of or results from the minor, irrelevant contacts Mr. Fellegy had with Louisiana as a result of his employment with Deep South. Consequently, seeking to sue Mr. Fellegy in the state of Louisiana violates his due process rights under the Fourteenth Amendment. Deep South's Complaint should be dismissed in its entirety for lack of personal jurisdiction pursuant to Federal Rule 12(b)(2).

**B.    Deep South's Complaint Should Be Dismissed Because It Does Not Sufficiently Allege Any Viable Causes of Action.**

**1.    Standard of review for Rule 12(b)(6) motion to dismiss**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 346 (2005). Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 257 (5th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)) (emphasis in the original). In other words, plaintiff must

allege facts to support the essential elements of each of his claims. *See Carter v. St. Tammany Par. Sch. Bd.,* 21-CV-1303, 2022 WL 558175, at *5 (E.D. La. Feb. 24, 2022), *appeal dismissed,* 22-30145, 2022 WL 4363553 (5th Cir. May 20, 2022).

A motion to dismiss under Rule 12(b)(6) operates to test the sufficiency of the complaint. The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 1949 (*citing Twombly,* 550 U.S. 544 (2007)). A plaintiff is required to plead "enough facts to state a claim for relief that is plausible on its face." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citing *Twombly*, 550 U.S. at 570). Although all well-pleaded facts must be accepted as true, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The tenet that a court must accept the truth of all allegations in a complaint, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678. Indeed, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citations omitted). After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 663 (internal citations omitted). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Iqbal*, 556 U.S. at 679 (citation omitted). "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" is not sufficient. *Iqbal*, 556 U.S. at 678.

A plaintiff may not file a conclusory complaint not well-grounded in fact, conduct a fishing expedition for discovery, and only then amend its complaint in order finally set forth well-pleaded

allegations. *Oreman Sales, Inc. v. Matsushita Elec. Corp. of Am*., 768 F. Supp. 1174, 1180 (E.D. La. 1991).

2. **Deep South failed to state a claim for violation of the Agreement's non-competition or non-solicitation provisions.**

It is well-established that non-competition and non-solicitation agreements are disfavored in Louisiana[2] and must be narrowly and strictly construed against the party seeking enforcement. *Brock Servs., L.L.C. v. Rogillio*, 936 F.3d 290, 296 (5th Cir. 2019); *SWAT 24 Shreveport Bossier, Inc. v. Bond,* 808 So.2d 294, 298 (La. 2001); *Acadian Cypress & Hardwood Inc. v. Stewart*, 121 So. 3d 667, 669 n.1 (La. Ct. App. 2013) (noting Louisiana's "underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden" and "the fundamental right of individuals to seek success in our free-enterprise society"). La. R. S. § 23:921, which governs restrictive covenants, provides that "[e]very contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable." La. R. S. § 23:921(A)(1). La. R.S.  § 23:921(C) contains the exceptions that are pertinent to this matter:

> [a]ny person ... may agree with his employer to refrain from carrying on or engaging *in a business similar to that of the employer* and/or *from soliciting customers of the employer* within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. (emphasis added).

---

[2]    Mr. Fellegy objects to the application of Louisiana law to his Agreement with Deep South. However, even under Louisiana law, Deep South's Complaint fails to state a claim. For the purposes of his Motion, Mr. Fellegy argues Louisiana law since the choice of law issue has not yet been adjudicated. Mr. Fellegy does not waive, and specifically reserves the right, to challenge the application of Louisiana law to the Agreement when the Court seeks to complete a choice of law analysis.

Significantly, Louisiana law requires "mechanical adherence" to the statutory requirements of section 921, especially with respect to the geographical and time limitations. *L & B Transp., LLC v. Beech*, 568 F. Supp. 2d 689, 693 (M.D. La. 2008) (*quoting Sentilles Optical Services v. Phillips*, 651 So.2d 395, 399 (La. Ct. App. 1995)). According to the Louisiana Supreme Court, the purpose of the state's strong policy of severely restricting non-competition agreements is "to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden." *SWAT 24* ., 808 at 298. The likelihood of an individual becoming a public burden is heightened when his restrictive covenant is overly broad in terms of duration and geographical scope. *See Southeastrans, Inc. v. Landry*, 20-CV-00086, 2021 WL 972098, at *4 (W.D. La. Mar. 15, 2021); *Traffic Jam Events, LLC v. William Lilley, Lilley Consulting, Inc., and Ty Prestwood*, 2:21-CV-122, 2021 WL 1226409, at *3 (E.D. La. Apr. 1, 2021); *L & B Transp., LLC*, 568 F. Supp.2d at 693App. . In light of this public policy, "mechanical adherence" principally concerns the compliance of non-competition and non-solicitation agreements with section 921(C)'s substantive requirements – particularly, the time and geographical limitations. *Volt Power, LLC v. Deville,* 1:21-CV-00395, 2021 WL 1554435, at *4 (W.D. La. Apr. 20, 2021). Here the Agreement's geographical term is overbroad.

### a.   *The non-competition and non-solicitation provisions of the Agreement are overbroad in geographical scope.*

Under Louisiana law, a non-compete agreement's geographic scope must identify with reasonable certainty those areas in which the employer lawfully may prohibit competition. La. R.S. 23:921. Under section 921(C), there are two independent requirements for the geographical limitation: (a) the parishes where competition is restrained must be "specified" within the agreement itself; and (b) a substantive limit requiring non-competition agreements to be "limited in enforcement to parishes where the first employer actually carries on a like business

therein." *Waguespack v. Medtronic, Inc.,* 185 F.Supp.3d 916, 929 (M.D. La. 2016) (internal quotations and citations omitted). "[La. R. S. § 23:921] contemplates that the parishes specified in the agreement must be parishes where the Plaintiff ***actually has a location or customers***." *Vartech Sys., Inc. v. Hayden*, 951 So.2d 247, 258 (La. Ct. App. 2006) (emphasis added). Employers are not permitted to lock former employees out of markets in which the employer does not operate. *Id.* (citing *Cellular One, Inc. v. Boyd,* 653 So.2d 30, 33 (La. Ct. 1995).

In this case, Sections 5(B) and 5(C) of the Agreement prohibit Mr. Fellegy, for a period of two (2) years, from directly or indirectly engaging in any business that directly or indirectly competes with or is similar to the Deep South's business (as defined within the Agreement) or from soliciting Deep South's "clients" (also defined in the Agreement) in ***every parish or every county*** in sixteen (16) states including Louisiana, Alabama, Arkansas, Florida, Georgia, Kentucky, Mississippi, Missouri, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, and West Virginia.

In its Complaint, Deep South alleges it "markets its wireless technology services to, prospects for, services, and/or engages in wireless technology business with customers in every parish and county identified in Exhibit A to the Agreement." (Complaint, Doc. 1, ¶¶ 57, 74.) However, "market[ing]" or "prospect[ing]" in a particular parish or county is not sufficient to meet the requirements of La. R. S. § 23:921 because Plaintiff must have an ***actual location or actual customers*** in the parish or county in which they seek to enforce a non-competition or non-solicitation agreement under La. R. S. § 23:921. *See Vartech Sys., Inc.*, 951 So.2d at 258. Therefore, Deep South. *v. Hayden*, 951 So.2d 247, 258 (La.App. 1 Cir. 12/20/06) (emphasis added). Plaintiff has plead no facts about its locations and customers in Louisiana's 64 Parishes

and the 1,463 counties of 15 states. Therefore, Plaintiff failed to plead that the geographical restriction of the Agreement meets the requirements of La. R.S. § 23:921.

Indeed, in *McLaughlin v. BancorpSouth Ins. Servs., Inc*., 17- CV-7604, 2018 WL 1035083, at *5 fn. 6 (E.D. La. Feb. 23, 2018), the Court explained that it did not condone an "employer's unchecked recitation of every parish in the state as a means to circumvent the letter and intent of La. R.S. § 23:921, which allows for a narrowly tailored/least restrictive means employment agreement." "Taken to the extreme, a party could in this manner simply list every parish, county, or municipality in numerous states and then foist upon the courts the burden of conducting a factual inquiry to determine where the agreement is enforceable. Employers would be free routinely to present employees with grossly overbroad covenants not to compete." *Id*. (internal citations omitted). The Court further recognized that "it is the job of the parties, not the Court, to write a legally valid contract" *Id*. (*citing O'Sullivan v. Gupta*, No. 17-609, 2017 WL 3438349, at *6 (E.D. La. Aug. 10, 2017)).

By listing every parish and county in sixteen (16) different states, Deep South has done precisely what the Courts have warned against, and the Agreement should not be reformed as it is not this Court's responsibility to write a legally valid contract.

### b. The non-competition and non-solicitation provisions of the Agreement are overbroad in scope of restricted activities.

While La. R.S. § 23:921(C) permits employees to enter into an agreement "to refrain from carrying on or engaging in a business similar to that of the employer," the Agreement at issue prohibits employees from, among other things, "directly or indirectly, whether as an employee, consultant, independent contractor, agent, officer, director, owner, partner, operator, shareholder of 1% or more of stock, or in any other capacity, engage in ***any*** business that directly or indirectly

competes with or is similar to the business of Employer." (*See* Complaint, Doc. 1-2, Section 5(B) of the Agreement.) The Agreement defines Deep South's business as:

> a telecommunications contractor specializing in microwave communications design and construction, fiber optics communications, distributed antenna systems (DAS), intelligent transportations systems (ITS), communications tower build-outs and maintenance, cellular and microwave maintenance and build-outs. Employer's business also includes the development and maintenance of business relationships and accounts with various persons and/or entities with whom Employer conducts business, including customers, consumers, borrowers, vendors, suppliers, contractors, or otherwise, are hereinafter collectively referred to as Employer's "clients."

(*See* Complaint, Doc. 1-2, Section 1 of the Agreement.)

When read together, Sections 1 and 5(B) bar Mr. Fellegy from engaging in a myriad of other occupations that are not "similar to that of the employer," in violation of La. R.S. § 23:921(C). When an agreement covered by La. R.S. § 23:921 contains a definition of the employer's business, it cannot be overly broad, such that it prevents former employees from engaging in more activities than were performed for the former employer. *Baton Rouge Computer Sales, Inc. v. Miller–Conrad,* 767 So.2d 763, 764 (La. Ct. App. 2000). "Noncompetition clauses that contain overly broad definitions of the employer's business violate La. R.S. 23:921(C) and are null and void." *Paradigm Health System, L.L. C. v. Faust*, 218 So. 2d 1068, 1073 (La. Ct. App. 2017).

Further, to be valid under La. R.S. 23:921(C), a non-competition agreement may limit competition only in a business similar to that of the employer, *in a specified geographic area wherein the employer carries on a like business*, for up to two years from termination of employment." *Paradigm Health System.*, 218 So.3d at 1072. Further, the exception under La R.S. 23:921(C) mandates an "employer is only entitled to keep ex-employees from competing with the employer's *actual business*, not some overblown contractual definition of business designed to cover the proverbial waterfront and keep ex-employees from being able to make a living in any

15

segment of the ex-employer's industry." *Paradigm Health System,* 218 So.3d at 1073 (emphasis added) (citing *Vartech Sys., Inc.*, 951 So. 2d at 259).

In *Hose Specialty & Supply Mgmt. Co. v. Guccione*, the appellate court vacated the trial court's injunction because "as in the *SWAT 24* case, the language of the Employment Agreement goes beyond the limited exception to the statutory ban on noncompetition agreements by prohibiting [defendant]'s employment in any capacity with any other business 'similar to the type of business' conducted by Hose Specialty. Therefore, the contractual language is overbroad and thus is null and void." *Hose Specialty & Supply Mgmt. CoGuccione*, 865 So. 2d 183, 194 (La. Ct. App. 2003).

In *Daiquiri's III on Bourbon, Ltd. v. Wandfluh*, 608 So. 2d 222 (La. App. 5th Cir. 1992), the non-compete agreement at issue contained an overly broad definition of the employer's business, which prevented the employee from selling "frozen drinks for consumption by the general public." *Id.* at 225 (La. Ct. App. 1992). The court affirmed the trial court's determination that the agreement was null and void as a matter of law because "terminology in the contract could prevent [employee] from entering into any business that sells any type of frozen drinks which could include [:] yogurt, ice cream, malts or any number of products not sold by [employer]." *Id.*

In *Paradigm Health System,* the Louisiana court of appeals was tasked with determining whether a trial court had correctly held a non-compete agreement to be overly broad and thus unenforceable. 218 So. 3d 1068, 1075 Dr. Faust was employed by Paradigm in the fields of anesthesia and interventional pain management. *Id.* at 1070. However, the agreement between the parties sought to prohibit Dr. Faust from engaging "in the practice of medicine" or rendering "any medical services to any business similar to those service provided by [Paradigm]." *Id.* Affirming the lower court's judgment, the Louisiana Court of Appeals stated "the employment agreement in

16

this case restricts Dr. Faust from engaging in many more types of employment than he actually

held with Paradigm." *Id.* at 1074.

Finally, in *Yorsch v. Morel*, the Louisiana Court of Appeals affirmed the lower court's

finding that a non-competition clause regarding a limited liability company was unenforceable on

its face. *Yorsch v. Morel*, 223 So. 3d 1274 (La. Ct. App. 2017). The Court stated:

> The plain language of this statute clearly leads to the conclusion that this non-
> competition clause is impermissibly broad. While La. R.S. 23:921(L) permits
> members to enter into an Agreement to "refrain from carrying on or engaging in a
> business similar to that of the limited liability company," the Agreement prohibits
> the members from, among other things, "directly or indirectly…work[ing]
> for,…be[ing] employed by or associated with, or render [ing] services or advice or
> other aid to, or guarantee[ing] any obligation of, any person or entity engaged in
> any business whose activities compete in any way with the Business or the
> Opportunity."

*Yorsch*, 223 So. 3d at 1286.When the non-compete clause was considered in conjunction

with definitions of "Business" and "Opportunity" found elsewhere in the agreement, the scope of

the activities the members were prohibited from performing was broadened and far-reaching. *Id.*

The Louisiana Court of Appeals stated:

> Although the Agreement defines the "Business" and the "Opportunity" in a fairly
> limited way, the non-competition clause drives a freight train through this
> limitation, barring a member from engaging in myriad other occupations that are
> not "similar to that of the limited liability company," in derogation of La. R.S.
> 23:921(L).

*Yorsch*, 223 So. 3d at 1287. The Court further determined that the clause failed to adequately

specify the geographic scope of the restraint. *Id.* With the way that "Business" was defined in the

agreement, it meant that defendant, or any person or entity he worked for, could be competing with

the business *wherever* he worked. *Id.*

In this case, the Agreement, as written, prohibits Mr. Fellegy from "directly or indirectly,

whether as an employee, consultant, independent contractor, agent, officer, director, owner,

partner, operator, shareholder of 1% or more of stock, or in any other capacity, engage in any

17

business that directly or indirectly competes with or is similar to…" Deep South's "development and maintenance of business relationships and accounts with various persons and/or entities with whom Employer conducts business, including customers, consumers, borrowers, vendors, suppliers, contractors, or otherwise." (Complaint, Doc. 1-2, Sections 1 and 5). In other words, the Agreement limits Mr. Fellegy from engaging in any position that in any way develops or maintains relationships with any of Deep South's customers, borrowers, vendors, suppliers, or contractors whether or not the business actually competes with Deep South's business.

Because the non-competition provisions in conjunction with the definition of Deep South's business is overbroad in scope, Deep South's claim should be dismissed.

### 3. Deep South fails to state a claim for breach of the confidentiality provision of the Agreement because its Complaint lacks adequate factual allegations to show the plausibility of any breach.

In its Complaint, Deep South pleads no facts that would lead to the conclusion that Mr. Fellegy has done anything wrong with Deep South's confidential information. The factual allegations simply state that Mr. Fellegy was employed by Deep South, signed the Agreement, left Deep South, and began working for End 2 End. (Complaint, Doc. 1, ¶¶ 8-9, 16-18, 30.) None of these facts support a claim for breach of contract. Deep South simply concludes that a breach has occurred without alleging any conduct on Mr. Fellegy's part that actually breaches the contract, which is insufficient under *Iqbal*.

Deep South also makes conclusory allegations that Mr. Fellegy is using "Deep South's Confidential Information to solicit Deep South's clients, to induce such clients to reduce their business with Deep South, and to divert such clients and/or their business from Deep South for Fellegy's own benefit… [and] for the benefit of E2E" (Complaint, Doc. 1, ¶¶ 89, 90, 96.) These broad conclusory allegations made "upon information and belief" and without any factual support are inadequate to state a claim for breach of the confidentiality provisions. *See Iqbal*, 556 U.S. at

18

678. Deep South does not set forth any actions it took to maintain the confidentiality of the information at issue. *See Bureau Veritas Commodities & Trade, Inc. v. Nanoo*, 20-cv-3374, 2021 WL 2142466, at *4 (E.D. La. May 26, 2021).

Nor does Deep South allege whether the information is readily available. Further, Deep South does not allege—and cannot allege—any facts showing that Mr. Fellegy actually took any of its confidential information, much less used its confidential information.

This deficiency is even more acute under Louisiana law, where a former employee is allowed to rely on his memory or general knowledge and skill gained in his former employment to compete with his former employer, without violating a non-disclosure agreement. *NCH Corp. v. Broyles,* 749 F.2d 247, 254 (5th Cir.1985); *Ashland Chemical, Inc. v. Lombardino*, 1993 WL 390147, *4 (E.D. La. 1993); *L&B Transport, LLC v. Busby*, 2008 WL 4845103, *5 (M.D. La. 2008). "Louisiana courts have consistently declined to issue an injunction against a former employee's solicitation of customers when the former employee relied on his memory and did not have a list." *Pure Air Daigle, LLC v. Stagg*, No. 6:16-cv-1322, 2017 WL 11534244, at *11 (W.D. La. Jan. 11, 2017); *L&B Transport, LLC*, 2008 WL 4845103 at *5 (quoting *Weighing & Control Services, Inc. v. Bert Williams,* 1989 WL 6011 at *2 (ED. La. 1989)); *Ferrellgas, LP v. McConathy*, 2010 WL 1010831, *8-9 (W.D. La. 2010). Moreover, confidential information must be in fact confidential.

Plaintiff has failed to allege sufficient factual allegations to support a claim for breach of the non-complete and confidentiality provisions. Plaintiff has alleged no facts to support the idea that Fellegy has done anything inappropriate with any supposedly confidential information to Deep South's detriment. Deep South relies on a generalized fear that Fellegy might do something inappropriate with the information—but factually unsupported fear is insufficient to warrant the

extraordinary remedy of injunctive relief. "[S]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." SMH Enterprises, L.L.C., v. Krispy Krunchy Foods, L.L.C., 2022 WL 137051 *6 (E.D. La. Jan. 14, 2022) (citing *United States v. Emerson, 270 F.3d 203, 262 (5th Cir. 2001)*. As the Supreme Court explained in *Iqbal*, a complaint is insufficient if it merely "tenders '**naked assertion[s]' devoid of 'further factual enhancement**.'" *Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted and emphasis added) (quoting *Twombly*, 550 U.S. at 557). Deep South's allegations of violation of the non-compete and confidentially provisions are truly "naked assertions" and therefore should be dismissed.

### III.    CONCLUSION

For all the reasons explained herein, Deep South's claims against Mr. Fellegy must be dismissed, as Louisiana lacks personal jurisdiction over Mr. Fellegy and Deep South is seeking to prohibit competition by him in contravention of Louisiana law evidencing Louisiana's strong public policy disfavoring non-competition agreements.

Respectfully Submitted,

*/s/ Andrew P. Burnside*
Andrew P. Burnside, T.A., La. Bar No. 14116
Claire R. Pitre, La. Bar No. 36257
**Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
701 Poydras Street, Suite 3500
New Orleans, Louisiana 70139
Telephone: 504.648.3840
Facsimile: 504.648.3859
Email:  drew.burnside@ogletreedeakins.com
        claire.pitre@ogletreedeakins.com

—and—

Michelle Renee Maslowski, In. Bar No. 27238-49
*Admitted Pro Hac Vice*
Maslowski Law
5602 Elmwood Avenue, Suite 104
Indianapolis, Indiana 46203
Telephone: 317.854.3811
Email: michelle.maslowski@maslowskilaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed via the Court's Electronic Filing System, which provides for service on all parties.

This 11th day of October, 2022.

/s/ Andrew P. Burnside
Andrew P. Burnside