**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DEEP SOUTH COMMUNICATIONS L.L.C,** | § | |
| | § | |
| | § | **Civil Action No. 3:22-cv-00598-JWD-EWD** |
| *Plaintiff,* | § | |
| | § | **Judge Judge John W. deGravelles** |
| **v.** | § | |
| | § | **Magistrate Judge Erin Wilder-Doomes** |
| **PETER M. FELLEGY,** | § | |
| | § | |
| *Defendant.* | § | |

## DEFENDANT'S OPPOSITION TO DEEP SOUTH'S MOTION FOR A TEMPORARY RESTRAINING ORDER

Plaintiff South Deep South Communications, LLC ("Deep South") seeks a temporary restraining order preventing Defendant, Peter Fellegy ("Fellegy"), from earning a living. Deep South seeks to restrain Fellegy (1) without an enforceable non-compete agreement, (2) without presenting any evidence or alleged facts that Fellegy actually violated the allegedly applicable agreement, (3) without presenting any evidence or alleged facts that Fellegy misappropriated any confidential Deep South information or is using such information to compete with Deep South, and (4) without presenting any evidence or alleged facts that would suggest that Deep South has been harmed in any way by Fellegy's actions. This is not a question of Fellegy's "living up to" the Agreement (he is complying despite the restrictive covenant's unenforceability), but it is rather a question of spite.

"Public policy supports free competition in the market to encourage businesses to compete" *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So. 2d 294, 313 (La. 2001). Thus, "[e]very contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void." La. R.S. § 23:921(A)(1). "Louisiana's strong public policy restricting these types of

agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden." *SWAT 24*, 808 So. 2d at 298 (citing *McAlpine v. McAlpine,* 679 So. 2d 85, 91 (La. 1996)).

Here, awarding the requested temporary restraining order would preclude Fellegy from "providing services" to his new employer, and would result in the *de facto* enforcement of an unenforceable non-compete agreement. *See ADR v. Graves*, 374 So. 2d 699, 702 (La. Ct. App. 1979) (refusing to enjoin the defendant/employee from working in a competing business because the non-compete agreement was invalid). In light of the strong public policy against restricting competition, this Court should not issue an order precluding Fellegy from working. Deep South's Motion should be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Fellegy began working for Plaintiff Deep South Communications, LLC ("Deep South") on May 17, 2017 as its Vice President of Business Development. In that role and Fellegy's subsequent role of Manager of Business Development, he did not develop any new business relationships on behalf of Deep South in Louisiana. (Declaration of Peter Fellegy ("Fellegy Decl."), R. Doc. 16-2,[1] ¶ 15.) Deep South's owner, Rhett Westerman, developed all Louisiana business opportunities during Fellegy's tenure with Deep South. (Fellegy Decl., ¶ 16.)

Fellegy developed business for Deep South in only two states on a regular basis – Florida and Texas. (Fellegy Decl., ¶ 17.) The business opportunities in Florida were primarily in the Boca Raton area with clients headquartered in the area and with tower assets in a number of states. (Fellegy Decl., ¶ 18.) The business opportunities in Texas were primarily centered in the

---

[1]  Fellegy filed his Declaration in support of his Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction, filed simultaneously with this opposition. To avoid duplication, Fellegy incorporates his Declaration as if set forth in its entirety for this opposition. All citations to Fellegy's Declaration refer to his Declaration filed in support of his Motion to Dismiss for Lack of Personal Jurisdiction (R. Doc.16-2).

Dallas/Fort Worth metro area with potential clients headquartered in the area. (Fellegy Decl., ¶ 19.)

Fellegy had 1-2 business development opportunities in three other states – Georgia, Oklahoma, and Pennsylvania. (Fellegy Decl., ¶ 20.) But these opportunities did not result in any business for Deep South. *Id*. The contacts in those states were limited to business in a single county – it was not statewide business. (Fellegy Decl., ¶ 21.) Fellegy had no development opportunities with Deep South within the remaining 11 states listed in the Agreement as the "Territory," including Louisiana. (Fellegy Decl., ¶ 22.) He knows of no solicitation efforts by or clients of Deep South in five of the sixteen states listed in Exhibit A of the Agreement – Missouri, North Carolina, South Carolina, Tennessee, and West Virginia. (Fellegy Decl., ¶ 23.)

Fellegy resigned from Deep South, effective February 22, 2022. (Complaint, ¶ 9.) Upon his departure from Deep South, Fellegy fully completed Deep South's employee exit checklist. (Fellegy Decl., ¶ 26.) He also organized all the information and documents related to each client and prospective client into an organized folder structure to aid whomever took over for him. (Fellegy Decl., ¶ 27.) Fellegy did this to ensure that he put Deep South in the best possible position to succeed after he left. (Fellegy Decl., ¶ 28.) He did this because he had no intention of competing with Deep South. (Fellegy Decl., ¶ 29.)

After a four month gap in employment, Fellegy began working for End 2 End Technologies, Inc. ("End 2 End") on June 27, 2022 as an Account Director. (Fellegy Decl., ¶ 30.) He does not develop any business for End 2 End in the state of Louisiana. (Fellegy Decl., ¶ 31.) He has not solicited any Deep South clients, including those located in Louisiana. (Fellegy Decl., ¶ 33.) He has no intention of soliciting any Deep South clients during the term of the Agreement. (Fellegy Decl., ¶ 34.)

Fellegy also has no responsibility for End 2 End's business relationship with General Electric ("GE"). (Fellegy Decl., ¶ 37.) He had no role in End 2 End's retention of GE's business in Arkansas. (Fellegy Decl., ¶ 38.) He provided no information to anyone at End 2 End or any third party regarding GE's business in Arkansas. (Fellegy Decl., ¶ 39.) After his departure from Deep South, he has had no conversations with anyone at GE about Deep South. (Fellegy Decl., ¶ 40.)

Deep South and End 2 End are not competitors because they offer different services. (Fellegy Decl., ¶ 41.) Deep South seeks to develop physical buildouts of wireless networks. (Fellegy Decl., ¶ 42.) End 2 End does not do physical buildouts in-house. (Fellegy Decl., ¶ 43.) Deep South also seeks out clients that would need its services of physical buildouts – *i.e.* state departments of transportation, prime road/bridge contractors, the US Army Corp of Engineers, major wireless telecom companies, and tower owner/operators. (Fellegy Decl., ¶ 44.) End 2 End's business focuses primarily on utilities. (Fellegy Decl., ¶ 45.)  No solicitation of any Deep South client has occurred, is occurring, or will occur during the term of the Agreement. (Fellegy Decl., ¶ 48.) Deep South's information is of no use to Fellegy at End 2 End because of the difference in service offerings and the different client-base. (Fellegy Decl., ¶ 49.)

Fellegy's responsibilities differ from his work with Deep South. For End 2 End, Fellegy prospects for small-scale utilities, such as small electric co-ops and natural gas co-ops. (Fellegy Decl., ¶ 46.) He had no such responsibility at Deep South. *Id.* He also has no responsibility, nor does he solicit, any of the larger utilities or accounts for End 2 End. (Fellegy Decl., ¶ 47.)

On June 6, 2022, Fellegy received a call from Mr. Westerman in which he told Fellegy that he was in violation of the Agreement because he had accepted a position with End 2 End. (Fellegy Decl., ¶ 50.) Fellegy told him that he did not believe there was a conflict, but that he would review the Agreement with End 2 End and his attorney. (Fellegy Decl., ¶ 51.) Fellegy told him that **if** there

was a conflict, that he would of course not take the position with End 2 End. (Fellegy Decl., ¶ 52.) At no time did Fellegy ever admit to Mr. Westerman that he was in violation of the Agreement. (Fellegy Decl., ¶ 53.) After reviewing the Agreement, the offerings of both companies, his duties for Deep South, and his duties for End 2 End, Fellegy determined that no conflict existed and that he was not, in fact, competing with Deep South. (Fellegy Decl., ¶ 54.)

Fellegy next spoke to Mr. Westerman on June 21, 2022. (Fellegy Decl., ¶ 55.) During that call, Fellegy told Mr. Westerman that he had analyzed the situation, End 2 End had analyzed the situation, and Fellegy's attorney had analyzed the situation and none of them could see a conflict. *Id.* Fellegy asked Mr. Westerman to provide him with a written statement as to what he believed the conflict to be. (Fellegy Decl., ¶ 56.) Mr. Westerman told Fellegy "I wouldn't know what to write down." (Fellegy Decl., ¶ 57.)

On August 26, 2022, Deep South filed its Verified Complaint for Injunctive and Other Relief ("Complaint"), seeking injunctive and monetary relief against Fellegy for the alleged breach of a Confidentiality and Restrictive Covenant Agreement ("the Agreement"). (Complaint, Doc. 1 and 1-2.) Deep South alleged that Fellegy breached the Agreement by engaging in competitive activities, soliciting Deep South's "clients", and using Deep South's confidential information. (Complaint, Doc. 1, ¶¶ 49-100.)

On September 26, 2022, Deep South filed a Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 8.) On October 4, 2022, this Court held a telephone status conference with the parties, and ordered Fellegy to file any motions to dismiss or oppositions to Deep South's request for injunctive relief on or before October 11, 2022. (Doc. 15.)

## II.  DEEP SOUTH'S MOTION FOR TEMPORARY RESTRAINING ORDER SHOULD BE DENIED

This brief addresses only Deep South's Motion for Temporary Restraining Order in compliance with the Court's instructions at the October 4, 2022 status conference. ( *See* Doc. 15.) In its Motion, Deep South combines its request for a temporary restraining order with its request for preliminary injunction, which Fellegy addresses below.  Although the factors Deep South must prove to obtain a TRO and a preliminary injunction are the same, Fellegy is entitled to adequate notice before the issue of preliminary injunction can be considered by the Court. *See* Fed. R. Civ. P. 65(a)(1).  Additionally, Fellegy requires expedited discovery on the issues raised in Deep South's Complaint to address Deep South's preliminary injunction argument. As a result, Fellegy reserves the right to respond to Deep South's application for a preliminary injunction at a later date, after any necessary expedited discovery and the Court sets a hearing for that portion of Deep South's motion.

Subject to the above, "[a] temporary restraining order may only be granted if the movant establishes the following four factors: (1) A substantial likelihood of success on the merits; (2) A substantial threat that failure to grant the injunction will result in irreparable injury; (3) That the threatened injury outweighs any damage that the injunction may cause the opposing party; and (4) That the injunction will not disserve the public interest." *Lucien v. Jones*, 2016 WL 4942997, at *6–7 (E.D. La. Sept. 16, 2016) (Barbier, J.) (internal citations omitted); *see also Planned Parenthood of Gulf Coast, Inc. v. Gee*, 837 F.3d 477, 488 (5th Cir. 2016) (noting the same factors are required to be established on a motion for preliminary injunction). "Because a temporary restraining order or preliminary injunction is an 'extraordinary remedy,' the moving party carries the heavy burden of proving all four factors." *Smith v. Dep't of Health & Hosps. Louisiana*, 2014

WL 4635540, at *3 (E.D. La. Sept. 15, 2014) (Barbier, J.) (citing *Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 622 (5th Cir. 1985)).

In order to obtain preliminary injunctive relief, a movant is required to show (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of immediate and irreparable injury; (3) the threatened injury outweighs the harm to the party sought to be enjoined; and (4) the granting of the injunction will not disserve the public interest. *See, e.g., Cardoni v. Prosperity Bank*, 805 S.W.3d 573, 579 (5th Cir. 2015) (citing *Bluefield Water Ass'n v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009)); *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986). Moreover, "a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *Bluefield Water*, 577 F.3d at 252-53.

Here, Deep South's Motion fails in several ways: (1) it did not provide a proper verification of the allegations in the Complaint; (2) it cannot establish a substantial likelihood of success; (3) it cannot establish a substantial threat of irreparable injury; (4) it cannot establish that the threat of irreparable injury outweighs the significant harm to Fellegy; and (5) it cannot establish that enjoining Fellegy from becoming employed by his new employer is within the public interest.  As such, Deep South's Motion for a Temporary Restraining Order should be denied.

A.    **Deep South Failed to Meet its Evidentiary Burden.**

To properly support a temporary restraining order pursuant to Rule 65, Deep South is required to submit specific facts demonstrating irreparable injury, loss, or damage through an affidavit or verified complaint. *Lucien*, 2016 WL 4942997, at *7 (citing Fed. R. Civ. P. 65(b)(1)(A)). Although a preliminary injunction may be based on deposition transcripts and affidavits, "courts have shown appropriate reluctance to issue such orders where the moving party substantiates his side of a factual dispute on information and belief." *Mid-Delta Health Sys., Inc.*

*v. Prof'l Trends, Inc.,* 2007 WL 2350265, at *3 (W.D. La. Aug. 13, 2007) (denying motion for preliminary injunction based on "general and unsubstantiated allegations" not supported by an affidavit or other testimony) (citing *Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc.* 446 F.2d 353, 357 (5th Cir. 1971)).

Here, the "Verification" attached to Deep South's Complaint was signed by Rhett Westerman. (Doc. 1-3). However, there is no indication of which allegations Westerman knows, about which allegations he has information, and which allegations he merely believes. Deep South's Complaint contains allegations regarding Deep South's business and Fellegy's employment at Deep South, about which Westerman might have knowledge. But, the allegations regarding Fellegy's alleged diversion of GE's Arkansas business, Fellegy competing against Deep South in the marketplace, and Fellegy's alleged use of confidential information are based merely on Westerman's "belief." (*See* Doc. 1, ¶¶ 36, 89-90, 96-99.) This is wholly insufficient to support Deep South's request for injunctive relief. This Court should ignore the allegations in Deep South's Complaint in this case as not competently verified as required by Rule 65. *See, e.g., Lackey v. SDT Waste & Debris Servs.*, 2013 WL 5772325, at *6 (E.D. La. Oct. 23, 2013) (Milazzo, J.) (holding an unsigned declaration insufficient to verify interrogatory responses under Rule 33, noting "courts have remained skeptical of Verifications which allow for ambiguity as to what, in particular, is sworn to." (internal citations omitted)); *see also Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003) (rejecting summary judgment evidence under Rule 56, explaining that "[b]ecause Dengel's affidavit is expressly based merely on information and belief, it is struck as not based on personal knowledge").

Even if the improperly verified allegations in Deep South's Complaint are considered, they are, as discussed below, nevertheless an insufficient basis on which to award any injunctive relief.

**B.    Fellegy Objects to the Application of Louisiana Law.**

Deep South incorrectly alleges that Louisiana law applies to the interpretation of the Confidentiality and Restrictive Covenant Agreement (the "Agreement"). Section 921 states that any choice of law clause included in an employee's contract of employment "shall be null and void" except where the choice of law provisions is "expressly, knowingly, and voluntarily agreed to *and ratified by the employee* after the occurrence of the incident which is the subject of the [lawsuit]." LA R.S. 23:921(A)(2). No such ratification has occurred here. Fellegy objects to the application of Louisiana law to the Agreement, and a choice-of-law analysis should be completed.

**C.    Deep South Cannot Prove Likelihood of Success on Any of Its Claims.**

**1.    Even under Louisiana law, the non-compete and non-solicitation provisions of the Agreement are unenforceable[2]**

Even if the Court applies Louisiana law to the Agreement, Deep South still cannot show that the Agreement is enforceable. A covenant not to compete is disfavored by Louisiana because it may function to deprive a person of his livelihood. *West Carroll Health System, L.L.C. v Tilmon,* 92 So.3d 1131, 1136 (La. Ct. App. 2012). Noncompetition agreements are presumed to be null and void. LA R.S. 23:921(A)(1). A covenant not to compete in an employment agreement will be enforced only if it meets narrowly drawn criteria. *West Carroll Health System, L.L.C.,* 92 So.3d 1131 at 1136.

*a.    The non-competition and non-solicitation provisions of the Agreement are overbroad in geographical scope.*

Restraints on trade are only enforceable if the employer can show that it actually conducts business within the geographic locations identified within the covenant not to compete. *Id.* at 1140-

---

[2] All of the reasons argued in Fellegy's Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim (Doc. ) also equally warrant against the entering of a temporary restraining order against Fellegy. To avoid duplication of arguments and analysis, Fellegy incorporates its Rule 12(b)(6) Motion here as if set forth in its entirety.

41. "[La. R. S. § 23:921] contemplates that the parishes specified in the agreement must be parishes where the Plaintiff ***actually has a location or customers***." *Vartech Sys., Inc. v. Hayden*, 951 So.2d 247, 258 (La. Ct. App. 2006) (emphasis added). Employers are not permitted to lock former employees out of markets in which the employer does not operate. *Id. (citing Cellular One, Inc. v. Boyd,* 653 So.2d 30, 33 (La. Ct. App. 1995).

In *McLaughlin v. BancorpSouth Ins. Servs., Inc*., CV 17-7604, 2018 WL 1035083, at *5 fn. 6 (E.D. La. Feb. 23, 2018), the Court explained that it did not condone an "employer's unchecked recitation of every parish in the state as a means to circumvent the letter and intent of La. R.S. § 23:921, which allows for a narrowly tailored/least restrictive means employment agreement." "Taken to the extreme, a party could in this manner simply list every parish, county, or municipality in numerous states and then foist upon the courts the burden of conducting a factual inquiry to determine where the agreement is enforceable. Employers would be free routinely to present employees with grossly overbroad covenants not to compete." *Id*. (internal citations omitted). The Court further recognized that "it is the job of the parties, not the Court, to write a legally valid contract" *Id*. (*citing O'Sullivan v. Gupta*, No. 17-609, 2017 WL 3438349, at *6 (E.D. La. Aug. 10, 2017)).

Here, Deep South seeks to restrain competition in every parish and county of sixteen states, without any evidence to support the fact that it actually operates in all of those parishes and counties. Exhibit A of the Agreement lists every parish in Louisiana and every county of 15 other states as the "Territory." There is no evidence that Deep South conducts business in all of these locations. To the contrary, Fellegy only developed relationships in two of the states on a regular basis (Florida and Texas). (Fellegy Decl., ¶ 17.) The business opportunities in Florida were limited to the Boca Raton area and the opportunities in Texas were primarily centered in the Dallas/Fort

Worth metro area. (Fellegy Decl., ¶¶ 18-19.) He also had 1-2 development opportunities in three other states (Georgia, Oklahoma, and Pennsylvania) that did not result in any business. (Fellegy Decl., ¶ 20.) These contacts were limited to business in a single county within those states – not statewide business. (Fellegy Decl., ¶21 .) Fellegy had no development opportunities within 11 of the states within the Territory, including Louisiana. (Fellegy Decl., ¶ 22.) All Deep South accounts in Louisiana were serviced directly by Westerman. (Fellegy Decl., ¶ 16.) Fellegy knows of no solicitation efforts by Deep South in five of the sixteen states listed as the Territory (Alabama, Missouri, North Carolina, Ohio, South Carolina, Tennessee, and West Virginia). (Fellegy Decl., ¶ 23.) The Complaint alleges no facts about current customers in the 16 states sought to be restricted by the Agreement. Deep South's pursuit of restraint of Fellegy over a sixteen-state territory is overbroad and unenforceable given the lack of any protectable business interest in over half of the listed territory. *West Carroll Health System, L.L.C.,* 92 So.3d 1131 at 1137. As such, Deep South's request for a temporary restraining order should be denied. *Id.*

### b. The non-competition and non-solicitation provisions of the Agreement are overbroad in scope of restricted activities.

When an agreement covered by La. R.S. § 23:921 contains a definition of the employer's business, it cannot be overly broad, such that it prevents former employees from engaging in more activities than were performed for the former employer. *Baton Rouge Computer Sales, Inc. v. Miller–Conrad,* 767 So.2d 763, 764 (La. Ct. App. 2000). "Noncompetition clauses that contain overly broad definitions of the employer's business violate La. R.S. 23:921(C) and are null and void." *Paradigm Health System, L.L. C. v. Faust*, 218 So. 2d 1068, 1073 (La. Ct. App. 2017). The exception under La R.S. 23:631(C) mandates an "employer is only entitled to keep ex-employees from competing with the employer's **actual business**, not some overblown contractual definition of business designed to cover the proverbial waterfront and keep ex-employees from being able to

make a living in any segment of the ex-employer's industry." *Paradigm Health System, L.L.C.*, 218 So.3d at 1073 (emphasis added) (citing *Vartech Sys., Inc.*, 951 So. 2d at 259).

In this case, the Agreement, as written, prohibits Mr. Fellegy from "directly or indirectly, whether as an employee, consultant, independent contractor, agent, officer, director, owner, partner, operator, shareholder of 1% or more of stock, or in any other capacity, engage in any business that directly or indirectly competes with or is similar to…" Deep South's "development and maintenance of business relationships and accounts with various persons and/or entities with whom Employer conducts business, including customers, consumers, borrowers, vendors, suppliers, contractors, or otherwise." (Complaint, Doc. 1-2, Sections 1 and 5). In other words, the Agreement limits Mr. Fellegy from engaging in any position that in any way develops or maintains relationships with any of Deep South's customers, borrowers, vendors, suppliers, or contractors whether or not the business actually competes with Deep South's business. Such a prohibition is overbroad and unenforceable. *See Daiquiri's III on Bourbon, Ltd. v. Wandfluh*, 608 So. 2d 222, 225 (La. Ct. App. 1992); *Paradigm Health System, L.L.C.*, 218 So. 3d at 1075-76; *Yorsch v. Morel*, 223 So. 3d 1274 (La. Ct. App. 2017).

Consequently, Deep South's Motion for Temporary Restraining Order should be denied.

## 2. Fellegy is not competing with Deep South

Regardless of what law applies, Deep South fails to allege any actual competition – nor can it. Deep South must prove actual competition to prevail on a breach of the covenant not to compete. *Favrot v. Favrot*,[3] 2010-0986 (La. App. 4 Cir. 2/9/11), 68 So. 3d 1099, 1108–09 (To

---

[3] Mr. Fellegy objects to the application of Louisiana law to his Agreement with Deep South. However, for the purposes of his Motion, Mr. Fellegy argues Louisiana law, alternatively, since the choice of law issue has not yet been adjudicated. Mr. Fellegy does not waive, and specifically reserves the right, to challenge the application of Louisiana law to the Agreement when the Court seeks to complete a choice of law analysis.

succeed on a breach of contract claim, Deep South carries the burden of proving[4] "[t]he essential elements of a breach of contract claim [which] are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee.") Deep South fails at this showing because it has not alleged any competition on the part of Fellegy.

End 2 End and Deep South are not competitors. The Complaint alleges End 2 End is a competitor based on this terse statement: "E2E holds itself out as a network infrastructure specialist engaged in the business of consulting, engineering, and executing comprehensive solutions for our clients throughout the United States." (Complaint, ¶ 31.) However, in fact, the two businesses pursue a different client base in different states for different types of services. (Fellegy Decl., ¶ 41.) While Deep South seeks to develop physical build-outs of wireless networks, End 2 End does not do that work in-house. (Fellegy Decl., ¶¶ 42-43.) Instead, End 2 End focuses its business on the design and software needed to run the wireless networks. *Id.* Moreover, Deep South seeks out clients that would need its services of physical build-outs – *i.e.* state departments of transportation, prime road/bridge contractors, the US Army Corp of Engineers, major wireless telecom companies, and tower owner/operators. (Fellegy Decl., ¶ 44.) End 2 End's business focuses primarily on utilities. (Fellegy Decl., ¶ 45.)

Deep South fails to allege any facts as to how Fellegy's work for End 2 End will impact its client-base in any of the territories. First, it fails to allege where it believes Fellegy is competing. Nor does Deep South allege prospective business in the remaining states that would allow the

---

[4] *See Nat'l Roofers Union,* 2015 U.S. Dist. LEXIS 83912, at *19 (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) ("If the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.")).

Court to conclude that Fellegy's work would interfere with Deep South's efforts. Absent facts to support a conclusion of actual competition, injunctive relief should be denied. *West Carroll Health System, L.L.C.,* 92 So.3d 1131 at 1141.

### 3. Fellegy is not soliciting any Deep South clients

Deep South's application for a temporary restraining order to prevent Fellegy from soliciting its client is also moot because there is evidence or facts alleged that Fellegy is actually soliciting Deep South's clients. Fellegy is not soliciting any of Deep South's clients because End 2 End's client-base is wholly separate from Deep South's client base. (Fellegy Decl., ¶ 48.) Fellegy focuses on small-scale utilities, such as small electric co-ops and natural gas co-ops. (Fellegy Decl., ¶ 46.) He has no responsibility, nor does he solicit, any of the larger utilities or accounts. (Fellegy Decl., ¶ 47.) He has no responsibility, nor does he solicit, General Electric on behalf of End 2 End. (Fellegy Decl., ¶ 37.) No solicitation of any Deep South client has occurred, is occurring, or will occur within the two-year limitation period. (Fellegy Decl., ¶ 48.) Thus, regardless of what law is applied, no violation of the non-solicitation provision has been alleged and a temporary restraining order is inappropriate and unnecessary to maintain the status quo.

### 4. Fellegy did not retain nor is using any of Deep South's alleged confidential information

The extent of Deep South's over-reach in seeking enforcement of this unenforceable Agreement is seen in its complete failure to allege any facts that would (1) establish that Fellegy retained any confidential information or (2) is using any of Deep South's confidential information in his employment with End 2 End. All of the complaint allegations relating to the retention and use of confidential information is premised on "upon information and belief." (Complaint, ¶¶ 89-90, 96-99.) There is no basis for such speculation. During the two-week transition period between his resignation and his last day with Deep South, Fellegy went above and beyond what a typical

14

departing employee would do. He not only fully completed Deep South's employee exit checklist, but he also organized and condensed down all the information and documents related to each client and prospective client into an organized folder structure to aid whomever took over for him. (Fellegy Decl., ¶¶ 26-27.) Fellegy provided Deep South and his replacement with as much information as possible to be successful – the exact opposite of what Deep South is now accusing him of doing without any factual basis. Fellegy's behavior is the very opposite of what one would expect from a former employee intent on competing with Deep South.

Even if Fellegy had not set his successor up for success, he still would not have retained any of Deep South's confidential information. Fellegy had and has no intention of competing with Deep South. (Fellegy Decl., ¶ 29.) Indeed, in his employment with End 2 End, Fellegy has no use of any of Deep South's confidential information given the distinct and separate business models and client-base. (Fellegy Decl., ¶ 49.) Thus, not only can Deep South not show (or even allege) that Fellegy retained or has used Deep South's confidential information in the past, but it also cannot show he will do so in the future. A temporary restraining order in such circumstances is inappropriate, and Deep South's Motion should be denied.

### D.   Deep South Cannot Show Irreparable Injury.

Even though Section 921 mandates the court to issue injunctive relief upon proof of the obligor's failure to perform, without the necessity of proving irreparable injury, the employer must still establish that it is entitled to relief. *West Carroll Health System, L.L.C.,* 92 So. 3d at 1136. Where the actions sought to be enjoined pursuant to a noncompetition agreement do not fall under the statutory exception, or where the noncompete agreement is found to be unenforceable, the employer is unable to establish that it is entitled to the relief sought. *Green Clinic, L.L.C. v. Finley,* 30 So.3d 1094 (La. Ct. App. 2010); *Vartech Systems, Inc. v. Hayden*, 951 So.2d 247 (La. Ct. App.

2006); *Action Revenue Recovery L.L.C. v. eBusiness Group L.L.C.*, 17 So.3d 999 (La. Ct. App. 2009).

### 1.   Any harm alleged by Deep South is purely speculative, at best.

Assuming Deep South can prove the likelihood of success, which is disputed, Deep South cannot show that it will suffer from irreparable harm. As set forth above, there are no alleged facts supporting any conclusion that Deep South has been harmed by the actions of Fellegy. At this very moment, Deep South has suffered no harm by Fellegy.

Deep South boldly infers in the Application, without actually pleading or introducing any evidence in support, that Fellegy was somehow responsible for Deep South's failure to obtain business in Arkansas from General Electric ("GE"). (Complaint, ¶ 36.)  Deep South further suggests—also without any pleading or evidence to support its claim—that the GE business went to End 2 End. (Complaint, ¶ 35.) These allegations are purely speculative.

These suggestions are not only wholly speculative, but they are false. First, as Deep South acknowledges, the alleged GE business began to develop prior to Fellegy's departure. (Complaint, ¶ 34.) Fellegy's employment with End 2 End did not begin until June 27, 2022 – four months later. (Fellegy Decl., ¶ 30.)  During those four months, Fellegy had no conversations with GE regarding Deep South. (Fellegy Decl., ¶ 40.) And after his employment at End 2 End began, Fellegy has had no responsibility for any of the GE business that resides with End 2 End. (Fellegy Decl., ¶ 37.) He had no role in End 2 End's retention of GE's business in Arkansas. (Fellegy Decl., ¶ 38.) He provided no information to anyone at End 2 End or any third-party regarding GE's business in Arkansas. (Fellegy Decl., ¶ 39.) Thus, Deep South's failure to obtain business from GE in Arkansas is due to its own failings, not any conduct on the part of Fellegy. Deep South provides no evidence or factual representations to the contrary.

Second, contrary to Deep South's allegation, End 2 End did not acquire the GE business that Deep South alleges it lost. GE was an existing client of End 2 End that pre-dated Fellegy's hire (a fact that Deep South admits). (Complaint, ¶ 35.) Thus, the "loss" of GE business by Deep South was the result of GE's decision not to switch providers in Arkansas based on what Deep South offered – not on any conduct by Fellegy or End 2 End.

At least one court has denied an application for an injunctive relief based precisely on this type of wholly speculative and imaginary evidence. *EHO360,* 2021 WL 3054867, at *5. As here, the plaintiff in that case had "no evidence that it has actually lost customers to [defendant's new employer]. Nor did Plaintiff present any other evidence indicating that Defendants are currently using—or even currently in possession of—Plaintiff's confidential information…. But even if the Court were to draw the inference that [one of the defendants] possesses Plaintiff's confidential information, Plaintiff still has not presented any evidence he is using that information. Rather, Plaintiff premises its irreparable-harm allegation on the notion that [defendant's new employer] could use Plaintiff's confidential information. This suspicion does not give rise to a substantial threat of imminent, irreparable harm. *See, e.g., Snelling & Snelling, Inc., v. Ryvis, Inc*., [No. 3:99-CV-2028-D,] 1999 WL 1032799, at *2 (N.D. Tex. Nov. 10, 1999) (rejecting plaintiff's assertion that it would suffer irreparable harm where defendants had 'obtained confidential information from' plaintiff because plaintiff could not 'establish that it is currently losing customers' or 'that defendants are using confidential information to [plaintiff's] detriment')."

### 2. The delay in Deep South's action indicates it does not believe it will suffer any irreparable harm.

Deep South delayed seeking injunctive relief for months after it was first notified of Fellegy's *employment* at End 2 End. Such "[d]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction. Absent a good explanation, ... a substantial period

of delay ... militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *Wireless Agents, LLC v. T-Mobile USA, Inc.*, No. 3:05-cv-94-D, 2006 WL 1540587, at *3 (N.D. Tex. June 6, 2006) (citing *High Tech Med. Instrumentation, Inc., v. New Image Industries, Inc*., 49 F.3d 1551, 1557 (5th Cir. 1995)). "[W]ait[ing] over a month" to file for injunctive relief "undermines plaintiff's assertion that it has suffered and will continue to suffer irreparable harm." *SMH Enterprises, L.L.C. v. Krispy Krunchy Foods, L.L.C.*, 2022 WL 137051, at *7 (E.D. La. Jan. 14, 2022). Deep South's blatant lack of diligence is wholly inconsistent with its current contention that it has been suffering immediate and irreparable harm because of Fellegy's employment with End 2 End.

### E.    Fellegy's Actual Loss of Income Outweighs Deep South's Speculative Harm.

Deep South must next show that the threat of harm to Deep South outweighs the actual harm to be caused to Fellegy if the court were to grant an injunction. As discussed above, Deep South's allegations that Fellegy intends to compete, solicit Deep South's clients, and use Deep South's confidential information is entirely speculative. On the back of the speculation, Deep South asks the Court to prevent Fellegy from earning a living. The harm to be caused to Fellegy is not threatened or speculative – an order from this Court precluding him from working for End 2 End removes his livelihood. Deep South's fears do not outweigh this actual harm to Fellegy, especially when there is no enforceable non-compete agreement and no violation of the Confidentiality Agreement. Any loss of income will constitute a serious injury to Fellegy that is not outweighed by Deep South's speculative potential harm. The reality of the circumstance is that Fellegy has not harmed Deep South and will not harm Deep South. Deep South lacks any evidence to the contrary.

Furthermore, injunctive relief cannot be warranted over the real harm to Fellegy where the allegations related to use of Deep South's confidential information are the barest of speculation.

Deep South's entire claim for use of confidential information is based on "information and belief," rather than any actual facts. (Complaint, ¶¶ 89-90, 96-99.) To the contrary, Fellegy has not used, and does not intend to use, any of Deep South's confidential information. (Fellegy Decl., ¶¶ 26-29, 49.) Thus, Deep South's conjecture that Fellegy has breached his obligations under the Agreement is not sufficient to warrant injunctive relief. *See SMH Enterprises, L.L.C.*, 2022 WL 137051, at *7 (denying a temporary restraining order where the plaintiff failed to establish that (1) confidential information was actually disclosed to the defendant and (2) the defendant would disclose any confidential information to any additional parties). Accordingly, Deep South "has only pointed to speculative injuries that are insufficient to show a likelihood that [it] will suffer irreparable harm absent a TRO." *Id.* Deep South's Motion for Temporary Restraining Order should be denied.

### F.    Granting of Deep South's Motion is Not in the Public Interest

Deep South argues that the requested restraining order will not disserve the public interest. This statement is completely without merit.  Preventing Fellegy from working in a competing business directly contravenes Louisiana's strong public policy in favor of free competition. *West Carroll Health System, L.L.C.,* 92 So.3d at 1136. The relief requested is particularly injurious to the public interest since there is no evidence or alleged facts to support the argument that Fellegy has done anything wrong.  The public's interest lies with individuals being able to earn a living and the relief requested by Deep South directly infringes on that interest.  As such, the Motion for Temporary Restraining Order should be denied.

### G.    Rule 65 Requires Deep South to Post Security

Deep South requests that the Court issue a temporary restraining order while not requiring Deep South to post bond. The Federal Rules are explicit that security must be posted.  "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives

security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65. The law requires the posting of security. Deep South has not articulated any reason it should be allowed to obtain a temporary restraining order and injunction without bond. Given the unenforceable nature of the Agreement as written, the likelihood of harm to Fellegy of any order restraining him to work is high. Given its financial resources and pursuit of an unenforceable agreement, Deep South should be responsible for indemnifying Fellegy for that harm – as contemplated by Rule 65's mandate to post security.  As such, Deep South's request for the Court to waive the security requirement should not be entertained.  In the event the Court is inclined to issue a Temporary Restraining Order, it should require Deep South to post security as set forth in Rule 65.

### III.    CONCLUSION

As described above, there is absolutely no evidence that Fellegy violated the Agreement he signed with Deep South.  Nor is there evidence or alleged facts to support that Fellegy retained or has used any Deep South confidential information. Fellegy should not be prevented from earning a living under these circumstances.

Deep South has not met its burden here.  Because Deep South failed to carry its burden to establish it is entitled to a Temporary Restraining Order, its Motion should be denied.

Respectfully Submitted,

*/s/ Andrew P. Burnside*
Andrew P. Burnside, T.A., La. Bar No. 14116
Claire R. Pitre, La. Bar No. 36257
**Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
701 Poydras Street, Suite 3500
New Orleans, Louisiana 70139
Telephone: 504.648.3840
Facsimile: 504.648.3859
Email:  drew.burnside@ogletreedeakins.com
        claire.pitre@ogletreedeakins.com

20

—and—

Michelle Renee Maslowski, In. Bar No. 27238-49
*Admitted Pro Hac Vice*
Maslowski Law
5602 Elmwood Avenue, Suite 104,
Indianapolis, Indiana 46203,
Telephone: 317.854.3811
Email: michelle.maslowski@maslowskilaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed via the Court's Electronic Filing System, which provides for service on all parties.

This 11th day of October, 2022.

*/s/ Andrew P. Burnside*
Andrew P. Burnside