**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| DEEP SOUTH | ) | CIVIL ACTION |
| COMMUNICATIONS L.L.C. | ) | |
| | ) | |
| | ) | NO. 22- 00598-JWD-EWD |
| v. | ) | |
| | ) | |
| PETER M. FELLEGY | ) | |

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 12(B)(2) MOTION TO
DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION
AND RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM**

---

Plaintiff, Deep South Communications L.L.C. ("Plaintiff" or "Deep South"), opposes the Rule 12(b)(2) Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim (Doc. 16) (the "Motion") filed by Defendant, Peter Fellegy ("Defendant" or "Fellegy"). Fellegy's Motion should be denied.

This Court has personal jurisdiction over Fellegy. He purposefully applied to and was employed by a Louisiana company for five years, during which time he reported directly to the President of the company, who was based out of Louisiana, traveled to Louisiana on multiple occasions to work in Deep South's Louisiana office and meet with customers in Louisiana, and had all of his employment-related needs (payments, benefits, *etc.*) addressed and administered from Louisiana. Moreover, this dispute arises out of Fellegy's employment agreement with a Louisiana company and his breach of the agreement, wherein he agreed to the application of Louisiana law. All of these facts, and others set forth in the Complaint and this Memorandum,

1

demonstrate that Fellegy could have reasonably expected to litigate a dispute arising from the agreement in Louisiana and that exercising personal jurisdiction over Fellegy in this case is warranted, consistent with due process, and will not offend the notions of fair play and substantial justice.

Deep South's Complaint on its face contains more than sufficient factual matter, which must be taken as true, to state plausible claims and raise a reasonable hope or expectation that discovery will reveal relevant evidence of each element of the claims asserted. Fellegy's arguments to the contrary are flawed because they are based on legal errors and inapposite case law, or no authority at all. The Agreement at issue complies with Louisiana's restrictive covenant statute by specifying appropriate parishes and counties, and exceeds the statute's requirements by including a tailored business description. Fellegy's arguments regarding overbreadth are not appropriate at the pleading stage where the statute's requirements are all satisfied on the face of the Agreement and the facts in the Complaint. Fellegy fails to mention the Agreement's severability clause, which would permit blue pencil reformation if any phrase or language were considered overbroad by the Court. And, Fellegy overlooks numerous material allegations stating a plausible claim for breach of confidentiality, which Deep South highlights herein for the Court. In short, Fellegy's Rule 12(b)(6) motion is not warranted based on Deep South's detailed factual Complaint or the law, and should be denied.

## I.    Introduction

This dispute arises out of Fellegy's breach of certain contractual provisions in the Confidentiality and Restrictive Covenant Agreement (the "Agreement") he signed in conjunction with his employment with Deep South. More specifically, Fellegy has engaged in *and continues to engage in* conduct that violates the Agreement's non-competition, non-solicitation, and non-

disclosure provisions, namely by obtaining employment with one of Deep South's direct competitors following his resignation from Deep South, and performing the same or similar type of work for that competitor, including working with at least one of Deep South's customers, aided and furthered by his knowledge of the confidential information he received from Deep South during his employment.

## II.    This Court has personal jurisdiction over Fellegy.

The plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction absent an evidentiary hearing.[1] In evaluating whether the plaintiff has met that burden, "the court must accept as true all uncontroverted allegations in the complaint and must resolve any factual disputes in favor of the plaintiff."[2]

A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant only if two requirements are satisfied: (1) the forum state's long-arm statute confers personal jurisdiction; and (2) the exercise of jurisdiction does not exceed the boundaries of due process.[3] Because Louisiana's long-arm statute extends jurisdiction to the full limits allowed by due process, this Court need only determine whether it can exercise jurisdiction over Fellegy consistent with due process.[4]

Exercising personal jurisdiction over a nonresident defendant is compatible with due process when: (1) the defendant has minimum contacts with the forum state, *i.e.*, he purposely directed his activities toward the forum state or purposefully availed himself of the privileges of

---

[1] *Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215, 220 (5th Cir. 2020) (citing *Sangha v. Navig8 Ship Management Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018)).

[2] *Id.* (quoting *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 496 (5th Cir. 2012)); *see also Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

[3] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006); *Cent. Healthcare Servs. v. Schwing*, No. CV 09-4289, 2009 WL 10679642, at *2 (E.D. La. Oct. 7, 2009).

[4] *See* La. Rev. Stat. § 13:3201(B); *Petroleum Helicopters, Inc. v. Avco Corp.*, 513 So. 2d 1188, 1192 (La. 1987); *Luv N' Care v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

conducting activities there; (2) the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the exercise of personal jurisdiction is fair and reasonable.[5] Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions."[6] Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person."[7]

Determining whether a nonresident defendant has sufficient contacts with the forum state to establish specific jurisdiction is a highly-factual inquiry that is dependent in large part on the specific claims asserted. This case concerns an employment dispute arising from the defendant's initial agreement to and subsequent breach of specific ongoing obligations that were a condition of the employment relationship. Unlike a typical breach of contract claim, claims against former employees for breach of restrictive covenant agreements create continuing obligations, which many courts have held result in sufficient contacts to establish personal jurisdiction.[8] As a result, cases involving claims such as this one are typically filed in the employer's home state, "where continuing obligations are owed[.]"[9]

The cases Fellegy relies upon do not arise in this specific context, and, as a result, do not adequately consider the unique circumstances of such claims. Upon review of the relevant facts

---

[5] *See Luv N' Care*, 438 F.3d at 469.

[6] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2184, 85 L. Ed. 2d 528 (1985) (citing *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)).

[7] *Id.*

[8] *See, e.g. Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 763 (7th Cir. 2008); *W. Capra Consulting Grp., Inc. v. Snyder*, No. 1:19 C 4188, 2019 WL 3935045, at *6 (N.D. Ill. Aug. 20, 2019).

[9] *Zep, Inc. v. First Aid Corp.*, No. 09 CV 1973, 2010 WL 1195094, at *2 (N.D. Ill. Mar. 19, 2010); *see also Kelly Services, Inc. v. Noretto*, 495 F.Supp.2d 645, 653–55 (E.D. Mich. 2007); *FBR Capital Markets & Co. v. Short*, No. 09 CV 1016, 2009 WL 3254458, at *3 (E.D. Va. 2009); *Crossfield Hastech, Inc. v. Harris Corp.*, 672 F.Supp. 580, 585–88 (D.N.H. 1987).

through the appropriate lens, there can be no question that Fellegy's Louisiana contacts are sufficient and inseparable from the claims asserted in this litigation such that this Court may properly exercise personal jurisdiction over him without offending traditional notions of fair play and substantial justice.

### A.    Fellegy has at least the minimum required contacts with Louisiana.

The facts in this case are analogous to those in *Direct Biologics, LLC v. McQueen*.[10] In that case, the Texas-based employer sought a temporary restraining order based on its claims that its nonresident former employee breached his non-competition covenants in the parties' employment agreement and breached his contractual obligations not to use or disclose the employer's confidential information, among other things, thereby causing damage to the employer in Texas.[11] With respect to the employee's contacts with Texas, the employer emphasized that the nonresident employee worked for the employer, a company based in Texas, for four years; that the employee repeatedly traveled to the company's headquarters in Texas; and that he directed his employment activities and communications to the employer's headquarters.[12] The court concluded that these allegations were sufficient for it to exercise specific jurisdiction over the nonresident employee, recognizing that the employee "purposely availed himself of the benefits of" the forum state.[13]

Here, the facts weighing in favor of personal jurisdiction are even stronger than in *Direct Biologics*. Deep South is a Louisiana company headquartered in Baton Rouge.[14] Although Fellegy is a resident of Indiana and worked remotely from Indiana most of the time during his employment with Deep South, he reported directly to the President of Deep South, Rhett Westerman, in Baton

---

[10] No. 1:22-CV-381-SH, 2022 WL 1409984, at *7 (W.D. Tex. May 4, 2022).
[11] *See id.*
[12] *See id.*
[13] *See id.*
[14] Doc. 1, ¶ 7.

Rouge.[15] From the outset, Fellegy recognized that he would be reporting to and based out of Deep

South's Baton Rouge Office, and in his "Application of Employment" he listed "Baton Rouge /

Indianapolis (remote)" as the location to which he was applying.[16] In addition, Fellegy traveled to

Louisiana to interview for his position,[17] and subsequently traveled to Louisiana as part of his

employment with Deep South on multiple occasions,[18] also meeting with companies and customers

in Louisiana for purposes of developing business on Deep South's behalf during some of those

trips.[19] Fellegy further directed his activities to Louisiana by otherwise soliciting business from

companies in Louisiana as part of his business development responsibilities for Deep South.[20]

Additionally, Fellegy frequently communicated with personnel in Louisiana, including Deep

South's President Rhett Westerman.[21] Moreover, Fellegy expressly agreed to submit to Louisiana

---

[15] Doc. 1, ¶ 10.

[16] *See* Declaration of Rhett Westerman ("Westerman Decl."), attached hereto as Exh. A, at ¶ 10 and Exh. 1 thereto. The act of applying for employment with a resident employer is a recognized "contact" for purposes of the jurisdictional analysis. *See, e.g.*, *CrossCountry Mortg., Inc. v. Messina*, No. 1:19CV1021, 2019 WL 5653288, at *11 (N.D. Ohio Oct. 31, 2019) (finding that nonresident defendants purposefully availed themselves of the privilege of acting in Ohio when they "reached out" to Ohio by applying for positions with an Ohio corporation, executed employment agreements that included continuing and ongoing non-competition, non-solicitation, and confidentiality obligations, routinely communicated with and took instruction from employees based in Ohio, traveled on at least one occasion to Ohio, and accessed plaintiff's confidential information (which it ultimately misused) from its Ohio-based computer system).

[17] Courts have recognized traveling to interview for a position as a consideration supporting a finding of sufficient contracts with the forum state. *See Belimed, Inc. v. Bleecker*, No. 2:22-CV-00891-DCN, 2022 WL 939819, at *4 (D.S.C. Mar. 29, 2022); *see, e.g.*, *Snyder*, 2019 WL 3935045, at *5; *Reynolds Foil Inc. v. Pai*, 2010 WL 1225620, at *3 (E.D. Va. Mar. 25, 2010) (citing *Short*, 2009 WL 3254458, at *3).

[18] Doc. 1 ¶ 11; Exh. A, Westerman Decl. ¶¶ 22-23. Fellegy admits that he traveled to Louisiana at least nine times during his employment with Deep South. *See* Doc. 16-2, ¶ 24. Even if Fellegy only traveled to Louisiana a handful of times, this is just one of several considerations that demonstrates Fellegy's contact with the state. Courts have found sufficient contacts with the forum state even where the defendant employees only visited the state on one occasion, weighing heavily other factors such as the frequency with which the employees communicated with personnel in the forum state. *Neopart Transit, LLC v. Mgmt. Consulting, Inc.*, No. CV 16-3103, 2017 WL 714043, at *6 (E.D. Pa. Feb. 23, 2017).

[19] Exh. A, Westerman Decl. ¶ 23 and Exhs. 2-3 thereto.

[20] *See* Exh. A, Westerman Decl. ¶ 24 and Exhs. 4-6. In his Declaration, Fellegy alleges that he did not develop relationships for Deep South in the state of Louisiana. Doc. 16-2, ¶ 15. That statement is false. Fellegy targeted Louisiana companies for projects in Louisiana, as reflected in the email correspondence attached to Exh. A at Exhs. 2-6.

[21] Exh. A, Westerman Decl. ¶ 14. Regular communication with personnel in the forum state is a common contact consideration for purposes of establishing personal jurisdiction. *Snyder*, 2019 WL 3935045, at *5 (considering, among other factors, that defendant employee "communicated regularly with Illinois-based personnel", "submitted timesheets and expense reports" to personnel in Illinois, "exchanged more than 80 phone calls and hundreds of emails with … employees Illinois, and occasionally participated in Illinois-led meetings by phone"). While isolated phone and email

law when he signed the agreement at the heart of this dispute containing a choice of law clause.[22] Fellegy had further contact with the state of Louisiana as reflected by the fact that all of the "essential functions" (*e.g.* payroll, benefits, medical coverage and benefits, and retirement plans) that allowed him to earn a living were channeled through Louisiana:[23] he received his paychecks from Louisiana;[24] his medical coverage, medical benefits, and retirement plans were administered from Louisiana;[25] and Deep South paid his salary using its bank account at bank located in Louisiana.[26] Deep South also tasked Fellegy with researching and recommending a 401k plan for the company, which Fellegy did and which plan the company adopted. Collectively, these contacts are sufficient to establish personal jurisdiction over Fellegy.

In the Motion, Fellegy cites several cases, all of which are inapposite.[27] In *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colorado*, the Fifth Circuit rejected plaintiff's

---

communications may not be sufficient to warrant personal jurisdiction, "[s]ustained contact over the course of several months ... is 'not random, fortuitous, or attenuated.'" *Abbott Labs., Inc. v. BioValve Techs., Inc.*, 543 F. Supp. 2d 913, 921 (N.D. Ill. 2008) (quoting *Mid-Am. Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1360 (7th Cir. 1996)); *see also Neopart Transit,* 2017 WL 714043, at *6 (finding sufficient contacts between employees and forum state where employees were employed by and interacted with a Pennsylvania corporation on a near daily basis, despite the fact that the confidentiality agreements were signed in New York and the employees were also interviewed and hired in New York). Fellegy points out in his Memorandum that he signed the Agreement in Florida, not Louisiana. As evidenced by the case law cited herein, the location that the subject agreement is signed is not dispositive.

[22] Doc. 1-2, § 12. The Fifth Circuit has expressly recognized that "[w]hen combined with other factors, a choice-of-law clause may reinforce a conclusion that a defendant 'deliberate[ly] affiliat[ed] with the forum State and [had] reasonable foreseeability of possible litigation there.'" *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012) (quoting *Burger King*, 471 U.S. at 482) (alterations in original).

[23] *Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 355 (E.D. Pa. 2016) (finding jurisdiction proper in suits by employer against nonresident employee when "all of the essential functions that allowed [the nonresident employee] to earn a living were channeled through [the forum state]"). "[W]hen forum contacts are a natural result of a contractual relationship, it indicates purposeful affiliation with the forum through an interstate contractual relationship." *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1359 (10th Cir. 1990); *see also Burger King*, 471 U.S. at 479-81.

[24] Exh. A, Westerman Decl. ¶ 19. *Cf. Prairie Field Servs., LLC v. Welsh*, 497 F. Supp. 3d 381, 393 (D. Minn. 2020) (finding plaintiff's allegations sufficient to conclude that former employee defendants had formed a substantial connection with Minnesota based on fact that plaintiff maintained its corporate headquarters in Minnesota where it managed its finances and accounting and defendants had worked for years, leading the court to reasonably infer that defendants "were in regular contact with the Minnesota office and drew their paychecks from Minnesota").

[25] Exh. A, Westerman Decl. ¶ 17.

[26] Exh. A, Westerman Decl. ¶ 20.

[27] In addition, to the cases discussed *infra*, Fellegy also cites *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 560 (5th Cir. 2013), a legal malpractice suit wherein the court recognized that a lawyer accused of violating his

argument that a Louisiana court had jurisdiction over the defendant insurance company based on the insurance company's payment of limited claims for treatment of its insureds who sought treatment in Louisiana.[28] The court found that the insurance company's contacts with Louisiana were not purposeful given that it made the payments simply because its insureds – independently and without encouragement from the insurance company – presented to a Louisiana hospital for urgent care while visiting Louisiana.[29] Here, in contrast, Fellegy made the mindful decision to apply for a position with a Louisiana company, headquartered in Baton Rouge, with the understanding the "Location [he was] Applying For" was Baton Rouge. Additionally, he made concerted efforts to develop business relationships and opportunities with companies in Louisiana, thereby directing his conduct towards the state.

*Inmar Rx Solutions, Inc. v. Devos, Ltd.*[30] is also distinguishable. In that case, an employee and his new employer/competitor company filed suit against his former employer alleging tortious interference with contract in response to the former employer's letter threatening to file suit if new employer/competitor company did not terminate the former employee whose employment violated his noncompete agreement with the former employer.[31] The employee separately alleged a breach of contract claim based on allegations that his former employer engaged in various fraudulent activity and lied to him in violation of his employment agreement.[32] The Fifth Circuit affirmed the Texas district court's finding that it lacked jurisdiction over the former employer with respect to the employee's breach of contract claim given that none of the conduct relevant to that claim

---

or her professional obligations to a client would be answerable in the state where the alleged breach occurred as well as the state where the professional obligations attached, *i.e.* wherever the client was located. 723 F.3d at 560, n.1.
[28] 615 F.3d 364, 369 (5th Cir. 2010).
[29] *Id.* at 369-70.
[30] 786 F. App'x 445 (5th Cir. 2019)
[31] *Id.* at 447.
[32] *Id.* at 449.

occurred in or was directed towards Texas.[33] The Fifth Circuit emphasized the fact that there was no allegation that the employee "worked in or was in any way affected by" his former employer's breach of contract *in Texas*, further noting that the employment contract was governed by New York law and that the employee performed work for his former employer in Louisiana, Mississippi, Alabama, and Florida.[34] Here, in contrast, there is evidence that Deep South was affected by Fellegy's breach of contract in Louisiana, where it is headquartered;[35] there is evidence that Fellegy's employment agreement was governed by Louisiana law;[36] and there is evidence that Fellegy performed work in Louisiana for Deep South.[37] Thus, *Inmar* actually supports a finding of personal jurisdiction in this case.

Finally, Fellegy cites *JMF Med., LLC v. Team Health, LLC*, a class action lawsuit brought by emergency room physicians against a staffing company for failure to pay the physicians for services they provided to their patients.[38] In *JMF Medical*, this Court declined to exercise jurisdiction over defendant "THH," a company with whom plaintiffs failed to demonstrate they had a contractual agreement.[39] This Court specifically emphasized that plaintiffs had "not produced evidence indicating that the contracts or agreements were performed in Louisiana, that the contracts or agreements were executed in Louisiana, [or] that at least some of the negotiations of the contracts or agreements occurred in Louisiana and involved THH[,]" and plaintiffs also failed to show that defendant THH had a physical presence in the state or conducted any business in the state.[40] The attempted analogy here is again inappropriate as the defendant here is an

---

[33] *Id.*
[34] *Id.* at 449-50.
[35] Doc. 1, at ¶ 6.
[36] *See* Doc. 1-2, at § 12.
[37] Exh. A, Westerman Decl. at ¶¶ 21-24 and Exhs. 2-6 attached thereto.
[38] 490 F. Supp. 3d 947, 953 (M.D. La. 2020) (deGravelles, J.).
[39] *Id.* at 968.
[40] *Id.* at 968-69.

individual, not a company, and more importantly Fellegy is a former employee. However, the Court's analysis in this distinguishable case actually reflects that the relevant considerations favor exercising personal jurisdiction over Fellegy here, where there is no dispute that the parties entered the agreement that Deep South alleges Fellegy breached, and the evidence demonstrates that Fellegy performed the agreement – at least in part – in Louisiana, that Fellegy was present in Louisiana, and that Fellegy conducted business in Louisiana.

In another effort to avoid the jurisdiction of this Court, Fellegy attempts to use Louisiana law to argue that his prior choice of Louisiana law was ineffective and, thus, that it should not weigh in favor of finding personal jurisdiction. More specifically, Fellegy argues that the Agreement's choice of law clause is invalid under Louisiana Revised Statute § 23:921(A)(2), which, in certain circumstances, prohibits choice of law clauses unless later ratified by the employee. In addition to advancing the irreconcilable arguments that he can simultaneously avoid and benefit from the application of Louisiana law, Fellegy's argument about Louisiana law is wrong.

As this Court has already recognized, Section 921(A)(2) applies only to "***Louisiana citizens and employees***," which Fellegy denies having been at any relevant time.[41] The Court further explained that "[t]he statute only involves how post-employment activities of ***Louisiana-based employees*** can be governed."[42] In fact, the Louisiana Supreme Court has explained that Section 23:921 "serves a legitimate ***local*** interest" in allowing Louisiana courts to adjudicate certain claims.[43] Thus, it is clear that this statutory provision was designed to serve a legitimate

---

[41] *Waguespack v. Medtronic, Inc.*, 185 F.Supp.3d 916, 927 (M.D. La. 2016) (the provision "applies to all employers ***who employ Louisiana citizens and employees***" and "will apply to govern disputes with ***Louisiana employees***") (emphasis added).

[42] *Id.* at 928 (emphasis added).

[43] *Id.* at 927 (emphasis added) (citing *Sawicki v. K/S Stavanger Prince*, 802 So.2d 598, 606 (La. 2001)).

"local" interest affecting Louisiana citizens and employees, not for nonresidents to use to repudiate their choice of Louisiana law agreements entered into with Louisiana citizens such as Deep South. It would be contrary to the purpose of the statute and the way this Court has interpreted its scope to allow a nonresident to avoid the choice of law agreement he made with his Louisiana employer. Fellegy has failed to present any legal authority or logical argument to support the application of Section 23:921(A)(2) in this manner.

Fellegy sought out a Louisiana company for employment and entered into the Agreement expressly choosing Louisiana law to apply to any disputes between the parties, which Louisiana law does not allow him, as a nonresident, to disregard. A choice of law clause combined with other factors may reinforce a conclusion that a defendant "deliberate[ly] affiliate[ed] with the forum State and [had reasonable foreseeability of possible litigation there."[44] Here, Deep South has presented many other factors showing that Fellegy should have reasonably anticipated having to litigate disputes arising from the Agreement in Louisiana, including his initiating of contact with a Louisiana company about prospective employment; flying to Louisiana to meet with the company's President to interview for the position; accepting employment with a Louisiana-based company in which he reported to the President and the headquarters in Baton Rouge; signing the Agreement containing, among other things, a choice of Louisiana law provision; frequently communicating (telephonically and electronically) with personnel in Louisiana; receiving paychecks and other benefits from Louisiana; and traveling to Louisiana for conferences and meetings, including meetings with companies in Louisiana for purposes of developing business on Deep South's behalf in Louisiana. Thus, Fellegy has more than the minimum contacts required to be subject to personal jurisdiction in Louisiana.

---

[44] *Pervasive Software,* 688 F.2d at 223 (quoting *Burger King*, 471 U.S. at 481-82, 105 S.Ct. 2174).

###### B.    This controversy arises out of Fellegy's contacts with Louisiana.

This prong is satisfied if the "activity in the forum state is the genesis of [the] dispute," or "if substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim."[45] Fellegy argues that because his work for E2E is not currently directed at Louisiana, Deep South's claims against him do not arise out of his contacts with Louisiana.[46] Fellegy's position is too narrow. Deep South's claim is more properly categorized as a dispute over the terms of his employment with a Louisiana-based company, and therefore it arises out of Fellegy's connections with Louisiana.[47] When a claim is "based on a contract which had substantial connection with that State" then the plaintiff's claims can be said to arise out of connections with that forum.[48]

Where, as here, an employee purposefully avails himself to a suit in the forum state by obtaining employment with a company based in the forum state, courts have consistently held that claims concerning that employee's employment with the resident employer arise out of the employee's connections with the forum state.[49] Fellegy's competitive activity via E2E cannot be isolated from his former employment relationship with Louisiana-based Deep South. Without this relationship and the Agreement put in place to facilitate the creation of that relationship, there would be no dispute.[50]

---

[45] *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd*., 682 F.3d 292, 303 (4th Cir. 2012) (alteration in original and citations omitted).

[46] Doc. 16-1, at 5.

[47] *See Bleecker*, 2022 WL 939819, at *5; *Short*, 2009 WL 3254458, at *3.

[48] *McGee v. Int'l Life Ins. Co*., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

[49] *See, e.g.*, *Bleecker*, 2022 WL 939819, at *4; *see also Snyder*, 2019 WL 3935045, at *6 "[A]s [defendant's] contacts with Illinois arise out of the employment agreement that lies at the heart of [plaintiff's] claim, [plaintiff] has established that its injury 'arise[s] out of' or 'relate[s] to' [defendant's] contacts"); *Short*, 2009 WL 3254458, at *3.

[50] *See Pedowitz Grp., LLC v. Ogden*, No. 1:13-CV-00839-RLV, 2013 WL 11319834, at *3 (N.D. Ga. Nov. 29, 2013) (rejecting defendant employee's theory that his alleged "competition" from the employment agreement such conduct violated).

**C.     This Court's exercise of jurisdiction over Fellegy is fair and reasonable.**

"An otherwise valid exercise of personal jurisdiction is presumed to be reasonable."[51] Thus, once the court finds that the first two prongs are satisfied, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would be unreasonable.[52] Most often, "the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."[53] Though Fellegy has acknowledged that he bears the burden of proof on this issue,[54] he has not even facially attempted to satisfy his burden.

In any event, exercise of the court's jurisdiction is reasonable in this case. Factors considered in this analysis include: "(1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies."[55] Here, only the first factor—the burden on the defendant—weighs against exercising jurisdiction over Fellegy. On the other hand, the remaining factors either favor Deep South, are neutral, or are inapplicable. Louisiana, like all states, has an interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors.[56] Moreover, the fact that the parties agreed that Louisiana law would govern this dispute further implicates Louisiana's interest because the dispute requires a general application of its laws.  Deep

---

[51] *Geauxdavri, LLC v. Slepcevic*, No. CV 06-11274, 2007 WL 9811208, at *5 (E.D. La. June 7, 2007) (citing *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) ("It is rare to say the assertion is unfair after minimum contacts have been shown.").

[52] *Wien Air Alaska*, 195 F.3d at 215 (citing *Burger King Corp*., 471 U.S. at 477); *see also Seiferth*, 472 F.3d at 276 (citations omitted).

[53] *In re Chinese Manufactured Drywall Prods. Liab. Litig*., 742 F.3d 576, 592 (5th Cir. 2014) (citations and quotations omitted).

[54] Doc. 16-1, at 4 (citing *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014)).

[55] *Id*. (citations omitted).

[56] *See Geauxdavri*, 2007 WL 9811208, *5.

South has an obvious interest in receiving relief in Louisiana because it is headquartered in Louisiana and chose to litigate in this forum, and many of the witnesses and documents relevant to this matter are located in Louisiana.[57] The fourth factor is neutral, and the fifth factor does not apply. Thus, this Court's exercise of jurisdiction over Fellegy is reasonable and would not offend traditional notions of fair play and substantial justice.

## III.    Deep South has sufficiently stated its claims against Fellegy.

Deep South's Complaint on its face contains more than sufficient factual matter, which must be taken as true, to raise a reasonable hope or expectation that discovery will reveal relevant evidence of each element of the claims asserted. At the pleading stage, plausibility does not equate to probability. Rather, the plaintiff must plead enough facts to raise a reasonable expectation of discoverable evidence that the elements of the claims exist. Deep South has exceeded the pleading standard and Fellegy has provided no factual or legal basis for concluding otherwise.

### A.    The geographical scope of the Agreement is appropriately limited and complies with La. R.S. § 23:921.

Fellegy first argues that the geographic scope of the Agreement is overbroad.[58] Fellegy does not dispute that the geographic scope of the Agreement complies with the statute's requirement that the parishes in which it applies be specified therein. Rather, he appears to take issue with the total number of parishes and counties listed and contends that Deep South "must have an actual location or actual customers" in each parish and county listed.[59] As for the former issue, the statute does not impose any numerical limitation on the parishes and counties that may be specified in a restrictive covenant. The legislature did not impose any such arbitrary restriction, which is logical because businesses vary in their geographic scope. Fellegy emphasizes that the

---

[57] *See Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008).
[58] Doc. 16-1, at 12-14.
[59] *Id.* at 13 (emphasis omitted).

Agreement lists "every parish" and all "64 Parishes" in Louisiana,[60] and quotes *dicta* from *McLaughlin v. BancorpSouth Ins. Servs., Inc.*[61] in which the court commented on the potential for employers in "extreme" situations to draft overbroad agreements by listing many parishes and counties. Fellegy then simply labels Deep South's Agreement as such an extreme situation and urges this Court *at the pleading stage* to dismiss the claim for breach of the restrictive covenants.

Fellegy's presentation of Louisiana law on this point is inaccurate also. The U.S. Fifth Circuit Court of Appeal has expressly rejected the argument that a restrictive covenant is overbroad *per se* merely because it lists every parish in Louisiana.[62] In that case, the court held that the district court erred in so holding "without first considering evidence regarding the nature and extent of [the plaintiff employer's] business."[63] In fact, the Fifth Circuit stated:

> **It is certainly possible for a company to conduct a like business in all of Louisiana's parishes; and, if that were the case, the plain language of § 23:921(C) provides for the protection of that company's interests. Louisiana's case law supports this conclusion**. . . . [I]n *Vartech Systems, Inc.,* 951 So.2d at 258, non-competition agreements naming all of Louisiana's parishes were examined. The court stated: 'The listing of all 64 parishes does not automatically render the specification overly broad.' *Id.*[64]

Louisiana law is, thus, clear that merely listing every parish in Louisiana does not render a restrictive covenant overbroad and that if the employer conducts a like business in all such parishes the statute provides protection.

Deep South's factual allegations set forth in the Complaint are more than sufficient under Rule 8(a) to maintain a claim for breach of the restrictive covenant based on the geographic scope specified therein and include the following. Deep South, which was "founded and remains

---

[60] *Id.*

[61] 2018 WL 1035083, at *5 fn. 6 (E.D. La. Feb. 23, 2018).

[62] *Arthur J. Gallagher & Co. v. Babcock,* 339 F. App'x 384, 387-388 (5th Cir. 2009), *cert. denied,* 558 U.S. 115 (2010).

[63] *Id.*

[64] *Id.* at 388 (emphasis added).

headquartered in Baton Rouge, Louisiana," is a "telecommunications contractor specializing in microwave communications design and construction, fiber optics communications, distributed antenna systems, intelligent transportations systems, communications tower build-outs and maintenance, [and] cellular and microwave maintenance and build-outs."[65] Deep South "operates throughout the state of Louisiana and throughout the United States."[66] The Complaint includes detailed factual allegations regarding Fellegy's breach of the Agreement with respect to the loss of a business opportunity in Arkansas to End 2 End Technologies ("E2E"), Fellegy's current employer and a Deep South competitor.[67] These factual allegations regarding the geographic scope and location of Deep South's business are sufficient to withstand a Rule 12(b)(6) motion.

Fellegy also incorrectly contends that Deep South "must have an *actual location or actual customers* in the parish or county" in which it seeks to enforce a restrictive covenant.[68] In *Moores Pump & Supply, Inc. v. Laneaux,* the court held a non-competition agreement covering 43 of Louisiana's 64 parishes was not overbroad because the employer solicited business in each of the named parishes.[69] The court stated that the employer "established a prima facie case that it solicits business in all the parishes listed" and "the fact that they do not have specific projects ongoing in all forty-three parishes requires no such finding [that they were not doing business in them]."[70]

---

[65] Doc. 1, ¶ 1.

[66] Doc. 1, ¶ 7.

[67] Doc. 1, ¶¶ 30-35.

[68] Fellegy cites *Vartech,* at p. 258, for this proposition. The court in *Vartech* commented without citing any authority whatsoever that "the statute contemplates that the parishes specified in the agreement must be parishes where the ex-employer actually has a location or customers." *Id.* However, the statute does not define the phrase "carrying on or engaging in a business similar" to that of the ex-employer, nor does the statute refer to or mandate having a physical location or customers to be considered to be carrying on or engaging in a similar business. Nothing in the statute or case law requires what Fellegy suggests (see *Moores, infra*), and in any event Deep South has alleged that it engages in business in the areas specified in the Agreement. Doc. 1, ¶¶ 7, 57, 74 (Deep South **operates throughout the state of Louisiana** and throughout the United States" and "markets its wireless technology services to, prospects for, **services,** and/or **engages** in wireless technology business with customers in every parish and county identified in Exhibit A to the Agreement") (emphasis added).

[69] 727 So.2d 695, 698 (La. App. 3 Cir. 1999); *see also Gallagher*, 703 F.3d at 388.

[70] *Id.*

Likewise, the court concluded that "[t]he fact that they did not in fact have a project in a particular parish during [employee's] tenure does not require a finding that they were not doing business."[71] Thus, Deep South has alleged sufficient facts pertaining to its activities within the geographic area specified in the Agreement for the purposes of its breach of contract claims.

### B. The business description and scope of activities set forth in the Agreement are appropriately limited and comply with La. R.S. § 23:921.

Fellegy next argues that the scope of the restrictive covenants on the face of the Complaint is overbroad. This argument, too, lacks merit. The statute permits an employer and employee to agree that the employee will refrain from "engaging in or carrying on a business similar to that of the employer" subject to certain geographic and temporal restrictions. La. R.S. § 23:921(C). The statute does not define or further elaborate upon what is meant by engaging in or carrying on a similar business. It also does not require that a restrictive covenant contain a description of the employer's business.[72] Although not required, Deep South's Agreement with Fellegy contains a narrowly-tailored description of Deep South's business as follows:

> A telecommunications contractor specializing in microwave communications design and construction, fiber optics communications, distributed antenna systems (DAS), intelligent transportations systems (ITS), communications tower build-outs and maintenance, cellular and microwave maintenance and build-outs.[73]

The Agreement provides that Fellegy shall not "engage in any business that directly or indirectly competes with or is similar to the business" of Deep South as specifically set forth therein.[74]

Fellegy alleges in conclusory fashion that the Agreement bars him from engaging in "a myriad of other occupations that are not 'similar' to that of the employer" in violation of the statute. However, Fellegy fails to offer any examples of the alleged dissimilar businesses in which

---

[71] Id.
[72] Baton Rouge Computer Sales, Inc. v. Miller-Conrad, 767 So.2d 763, 764 (La. App. 1 Cir. 2000).
[73] Doc. 1-2, § 1.
[74] Doc. 1-2, § 5(B).

he contends he would not be able to engage. Notably, this dispute has arisen because of Fellegy's employment by a direct competitor of Deep South within the territory, not because of his efforts to engage in some activity that does not involve Deep South's business. He then cites a series of cases standing for the general proposition that a business description cannot be overbroad without any explanation of what way the business description at issue is allegedly overbroad or, more important, how the allegations in the Complaint purportedly fail to state a claim under Louisiana law.

The three cases Fellegy actually discusses address materially different contracts, business descriptions, and other facts that are not analogous and make them inapposite to the case at hand. *Daiquiri's III on Bourbon, Ltd. v. Wandfluh* is a case in which an employer selling alcoholic and non-alcoholic frozen daiquiris described the prohibited conduct as selling "frozen drinks," which without question was overbroad for including all manner of *non-alcoholic* frozen drinks that did not compete with the daiquiris sold by the plaintiff.[75] As the court explained, the agreement failed to describe the business with sufficient specificity as it could have barred the former employee from entering into a business that sold any type of frozen drinks, including "yogurt, ice cream, malts or any number of products not sold by" plaintiff.[76] In *Paradigm Health System, L.L.C. v. Faust,* an employer attempted to prohibit a former physician from engaging "in the practice of medicine" or rendering "any medical services to any business similar to those" of the employer, which were undefined.[77] Such all-encompassing and non-specific descriptions ("practice of medicine") are in no way analogous to the detailed specification of Deep South's business in the Agreement at issue. Likewise, in *Yorsch v. Morel,* the court concluded the agreement at issue

---

[75] 608 So.2d 222, 224 (La. App. 5 Cir. 1992).
[76] *Id.*
[77] 218 So.3d 1068, 1075 (La. App. 1 Cir. 2017).

prohibited the limited liability company member from "engaging in a myriad of other occupations that are not 'similar to that of the limited liability company'" where the agreement precluded the member from being "associated with" or "render[ing] services" or "aid" to "any person or entity engaged in any business whose activities compete in any way with" the business at issue.[78] As the court in *Yorsch* noted, the member "could not get a job babysitting for an employee of a company that competes in any way with" or "cater the company crawfish boil of a firm that competes in any way with the 'Business' or 'Opportunity'" as defined in the agreement.[79] The broad contractual language in *Yorsch* appears nowhere in Fellegy's Agreement with Deep South and, thus, the case is irrelevant here.

The agreements and facts in the cases discussed in Fellegy's motion stand in such stark contrast to the agreement and facts here that actually underscore the propriety of the business and scope of activities described in the Agreement between Deep South and Fellegy. The case of *Environmental Safety & Health Consulting Services, Inc. v. Fowler*, on the other hand, is more informative on the issue presented here.[80] In that case, the plaintiff and former employer was a company that performed oil and hazardous materials spill containment.[81] The agreements defined the plaintiff's business as "any sort of oil and hazardous materials spill containment and cleanup services, industrial cleaning services, waste transportation and disposal, NORM remediation, turnaround services, environmental consulting and training, or environmental product sales."[82] The former employees argued that the business description would prevent them from working as garbage collectors, focusing on the language "waste transportation and disposal."[83] The court

---

[78] 223 So.3d 1274, 1285 (La. App. 5 Cir. 2017).
[79] *Id.* at 1286.
[80] 2020 WL 1173587 (La. App. 4 Cir. Mar. 11, 2020).
[81] *Id.* at *1.
[82] *Id.*
[83] *Id.* at *7.

19

rejected that argument, noting that when the business description was read in totality, and this particular clause read together with the other clauses in the definition, "it is clear that this does not include any and all waste transportation disposal."[84] The court reversed the trial court's denial of a preliminary injunction, finding that, among other things, the business description was not overbroad and was valid under Louisiana law.[85]

More important, as a Vice President of Business Development for Deep South, Fellegy was well aware of the nature of Deep South's business such that he could not reasonably claim or interpret the business description to include a "myriad" of other activities that are dissimilar. The court in *Fowler* noted the relevance of this fact, stating that both of the former employees had been employed by the plaintiff for a number of years and had knowledge of the work of the plaintiff, such that "the definition of the business contained in the Agreements was not so broad and vague as to render the defendant employees from being able to discern what kind of business the Agreements considered competitive."[86] So, too, is the Agreement in this case and Fellegy's knowledge of Deep South's business. Fellegy has failed to offer any authority upon which this Court could find that the business description in the Agreement is overbroad. Deep South has presented not only sufficient factual allegations but analogous and persuasive legal authority demonstrating that it has stated a claim with regard to this aspect of its case.

C.    **The Agreement's severability clause further negates Fellegy's arguments about the alleged overbreadth of certain of its provisions.**

Fellegy's arguments neglect to account for the fact that Louisiana law authorizes courts to blue pencil any provisions of a restrictive covenant that they might deem to be overbroad by

---

[84] *Id.*
[85] *Id.*
[86] *Id.*

excising the overbroad terms and enforcing the remainder of the agreement to the extent possible.[87]

Section 7 of the Agreement provides:

> If any term or provision of this Agreement is held to be invalid or unenforceable in any respect, the parties agree that they intend for any court or tribunal so construing this Agreement to reform, modify, expand, or limit such term or provision temporally, geographically, or otherwise so as to render it valid and enforceable to the fullest extent allowed by law. Any such term or provision that is not susceptible of such reformation shall be disregarded or severed so as not to affect any other term or provision hereof, and the remainder of this Agreement shall not be affected thereby and each such remaining term and provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.[88]

While Deep South disagrees with Fellegy's assertion that the Agreement is in any way overbroad, the fact remains that the severability/reformation clause would allow the excision of any parish or county or any portion of the business description that might be deemed overbroad. Thus, Fellegy's arguments regarding overbreadth of certain contractual provisions are, at a minimum, premature at the pleading stage in light of the severability/reformation clause and Louisiana law. Deep South has clearly stated a valid breach of contract claim under the specific terms of this Agreement and the provision that authorizes blue pencil treatment of its terms as may be necessary.

### D.    Deep South has alleged sufficient facts to state a claim against Fellegy for breach of the confidentiality provision of the Agreement.

According to Fellegy, Deep South has alleged, with respect to a breach of confidentiality, only that it employed Fellegy, he signed the Agreement, he left Deep South, and he began working for E2E.[89] This characterization of the Complaint overlooks several material factual allegations that raise a reasonable hope or expectation that discovery will reveal relevant evidence on this claim. In addition to the factual allegations Fellegy acknowledges, Deep South has alleged that:

---

[87] *Gallagher,* 703 F.3d at 292; *SWAT 24 Shreveport Bossier, Inc. v. Bond,* 808 So.2d 294, 308-309 (La. 2001); *Causin v. Pace Safety Consultants, LLC,* 2019 WL 385206, at *8 (La. App. 4 Cir. 2019).
[88] Doc. 1-2, § 7.
[89] Doc. 16-1, p. 18.

Fellegy had access to and received Deep South's confidential information, including existing and prospective customer information, strategies for conducting business, and other trade secrets;[90] Deep South takes reasonable steps to protect its confidential information;[91] Fellegy developed a business relationship with General Electric Co. ("GE") on behalf of Deep South;[92] GE expressed a desire to award certain Arkansas business to Deep South before Fellegy left the company;[93] after Fellegy's departure to work for E2E, a competitor, GE decided not to award the business to Deep South and to keep the business with E2E.[94] Deep South also alleged that Westerman informed him that he was in violation of the Agreement after learning he was working for E2E,[95] that Fellegy acknowledged that he was in violation and that he would leave E2E if necessary, which he never did,[96] and that Fellegy then ceased communicating with Deep South.[97] The Complaint further alleges that Fellegy held a position of trust with Deep South, in which he received confidential business information, and that he has used Deep South's information and his knowledge of Deep South's business to solicit Deep South's clients for himself and/or E2E and to cause Deep South to lose business.[98]

With these factual allegations, Deep South has plead "enough facts to state a claim for relief [for breach of a confidentiality agreement] that is plausible on its face."[99] The Complaint alleges that Fellegy had knowledge of Deep South's business development efforts while employed, that he developed business with GE, that Deep South was exploring additional work for GE in

---

[90] Doc. 1, ¶¶ 13-14.
[91] Doc. 1, ¶ 22.
[92] Doc. 1, ¶ 34.
[93] Doc. 1, ¶ 35.
[94] Doc. 1, ¶ 35.
[95] Doc. 1, ¶ 39.
[96] Doc. 1, ¶¶ 40-41.
[97] Doc. 1, ¶¶ 42-43.
[98] Doc. 1, ¶¶ 83, 97-98.
[99] *Guidry v. Am. Pub. Life Ins. Co.,* 512 F.3d 177, 180 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

Arkansas, that Fellegy left Deep South for E2E, and that Deep South lost the business opportunity that E2E then retained after Fellegy moved from Deep South to E2E. These factual allegations raise a plausible claim and a reasonable hope or expectation that discovery will reveal relevant evidence of each element of the claim for breach of the confidentiality provision of the contract.[100] Stating plausible grounds does not equate to a probability requirement at the pleading stage[101] and Deep South has more than satisfied the plausibility standard under the circumstances.

## IV.    Conclusion

Given Fellegy's significant contacts with Louisiana over the course of his employment with Deep South, including the continuing obligations created by the agreement he entered as a condition of his employment, which Deep South contends he has breached, this Court has personal jurisdiction over Fellegy. Therefore, this Court should deny Fellegy's motion to dismiss Deep South's Complaint pursuant to Rule 12(b)(2). In addition, Deep South has alleged sufficient facts to state its claims for breach of the agreement, which, as explained more fully above, is consistent with the requirements of Louisiana law. Therefore, this Court should also deny Fellegy's motion to dismiss Deep South's Complaint pursuant to Rule 12(b)(6).

---

[100] *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Twombly,* 550 U.S. at 556).
[101] *Id.*

BY ATTORNEYS:

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

*s/Jennifer L. Anderson*
Jennifer L. Anderson (La. Bar No. 23620)
450 Laurel Street, 21st Floor
Baton Rouge, Louisiana 70801
Telephone: (225) 381-7020
Facsimile: (225) 343-3612
Email: jlanderson@bakerdonelson.com

AND

Emily Olivier Kesler (La. Bar No. 37747)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5927
Facsimile: (504) 585-6925
Email: ekesler@bakerdonelson.com

***Counsel for Deep South Communications L.L.C.***

## CERTIFICATE OF SERVICE

I hereby certify that service of a copy of the foregoing pleading or paper on the Defendant shall be made in the manner and time as may be required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

*/s/Jennifer L. Anderson*
Jennifer L. Anderson