UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEEP SOUTH COMMUNICATIONS L.L.C,** § § § § § § § § § § § | |
| | **Civil Action No. 3:22-cv-00598-JWD-EWD** |
| *Plaintiff,* | |
| | **Judge Judge John W. deGravelles** |
| v. | |
| | **Magistrate Judge Erin Wilder-Doomes** |
| **PETER M. FELLEGY,** | |
| *Defendant.* | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S RULE 12(B)(2) MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM**

Defendant, Peter Fellegy, submits this Reply Memorandum in Support of his Rule 12(B)(2) Motion to Dismiss Plaintiff's Complaint for Lack Of Personal Jurisdiction and Rule 12(B)(6) Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim (Doc. 16) and in response to Plaintiff's Opposition (Doc. 20).

**I.     Plaintiff has failed to show that this Court has personal jurisdiction over Fellegy.**

Deep South ("Deep South") – not Fellegy – bears the burden to establish personal jurisdiction. It has to provide a *prima facie* case for jurisdiction absent evidence only where the defendant has not provided evidence to showing no jurisdiction exists. Once evidence of the lack of jurisdiction exists (as is the case here), Deep South must controvert the evidence that personal jurisdiction is lacking.[1] It has not done so.

Here, only two situations are relevant to the jurisdiction issue, neither of which have any meaningful connection with Louisiana– the signing of the Agreement and Fellegy's employment

---

[1] *Libersat v. Sundance Energy, Inc.*, 437 F.Supp.3d 557, 565 (W.D. La. 2020).

now with End 2 End.[2] Deep South admits that the Agreement was not signed in Louisiana. (Doc. 20-1, ¶ 12). Moreover, the Agreement was not negotiated – it was sent to Fellegy when he was in Florida, he reviewed it in Florida, and he signed it in Indiana. (Doc. 16-2, ¶¶ 6-9). The only contact Fellegy had with Louisiana during the signing of the Agreement was when he emailed it back to Deep South's Office Manager. (Doc. 16-2, ¶ 9). This communication was mandated by Deep South and was not Fellegy's voluntary action. Nor is it sufficient to establish minimum contacts for the purposes of personal jurisdiction because engaging in communications with a resident of the forum state during the course of negotiating a contract is insufficient to subject a nonresident to the court's jurisdiction.[3] Thus, notwithstanding Deep South's recitation of irrelevant facts surrounding Fellegy's negotiation of employment (which is not at issue in this case), the facts related to the Agreement itself show no purposeful or meaningful contact with Louisiana.

Fellegy's alleged competitive conduct also is not directed at Louisiana. Yet, Deep South alleges no contacts with Louisiana after Fellegy's employment, nor can it. Fellegy works from home in Indiana. (Doc. 16-2, ¶ 35). Fellegy is not soliciting any of Deep South's clients. (Doc. 16-2, ¶ 33). Fellegy is not soliciting anyone in Louisiana. (Doc. 16-2, ¶¶ 31-33). He is not using any of Deep South's confidential information because the information is of no use to him given the differences in End 2 End's services and the fact that he is not competing with Deep South for

---

[2] *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 489 (5th Cir. 2018) ("only those acts which relate to the formation of the contract and the subsequent breach are relevant"); *Conveyor Aggregate Products Corp. v. Benitez*, 2019 WL 1921613, at *4 (W.D. Tex. Mar. 4, 2019).

[3] *See McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) ("We have held that communications relating to the performance of a contract themselves are insufficient to establish minimum contacts."), *cert. denied*, 562 U.S. 827 (2010); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) ("An exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law."); *see also XPEL Technologies Corp. v. Md. Performance Works, Ltd.*, No. SA-05-CA-0593-XR, 2006 WL 1851703 at *5 (W.D. Tex. May 19, 2006) (noting that engaging in communications during contract negotiations are insufficient by themselves to establish jurisdiction); *Crandell v. Arthurs*, No. 4:06CV166, 2007 WL 173865, at *4 (E.D. Tex. Jan. 19, 2007) (holding that communications between defendants and plaintiff that led to the contract did not support an exercise of specific jurisdiction over defendants).

clients. (Doc. 16-2, ¶ 49). He simply has not sought the benefits of Louisiana law in his employment with End 2 End. The alleged competing conduct that Deep South argues is the basis for the breach of the contract is not occurring in Louisiana. To the extent Fellegy's actions can be characterized as competition or in some way violating the Agreement (which they are not), those actions are not purposefully directed at Louisiana.

Deep South attempts to expand the analysis to all contacts between Fellegy and Louisiana, without regard to whether those contacts are relevant to the case at hand and in direct conflict with Fellegy's due process rights. Deep South relies entirely on Fellegy's actions during his employment to seek to establish personal jurisdiction, which courts have deemed insufficient for purposes of personal jurisdiction.[4]

Deep South again argues that the null and void choice-of-law provision provides minimum contacts, stating that Section 921(B) does not apply to Fellegy because he is a non-resident. This interpretation directly contravenes the explicit language of the statute. The statute does not limit its applicability to only Louisiana employees. Rather, it says that it applies to an agreement with "an employee," without restriction on the employee's residency. La. Rev. Stat. § 921(B). The explicit language of Section 921(B) does not support Deep South's interpretation.

Deep South's reliance on *Waguespack v. Medtronic, Inc.* to support such an interpretation is misplaced. In that case, the court dealt with Louisiana employees and provided context in light

---

[4] *See Fastpath, Inc. v. Arbela Technologies Corp.*, 760 F.3d 816, 823 (8th Cir. 2014) (holding that where the defendant solicited the agreement from the plaintiff knowing plaintiff was an Iowa corporation, "that knowledge cannot create minimum contacts with Iowa because the plaintiff cannot be the only link between the defendant and the forum."); *Addison Ins. Marketing, Inc. v. Evans*, 2002 WL 31059806, at *5 (N.D. Tex. Sept. 12, 2002) (finding that regular email notifications, voicemails, receipt of paychecks, and other correspondence with the plaintiff was merely the administrative procedures held by the plaintiff and not any purposeful activity directed towards the forum state); *Advance Aerofoil Technologies, Inc. v. Todaro*, 2011 WL 6009616, at *5 (N.D. Ill. Nov. 30, 2011) (holding that "what could be broadly termed 'human resource' matters" were insufficient to convey personal jurisdiction because (1) the defendant had no choice in the matter and (2) the contacts had no relation to the underlying issues in the case).

3

of their residency.[5] The case turned on the constitutionality of Section 921, not whether it applied only to Louisiana employees.[6] In fact, the case does not specifically exclude non-resident employees from the application of Section 921(B) to agreements with Louisiana employers. Section 921(B) operates to negate the choice-of-law provision in the Agreement and cannot now be used to support the exercise of personal jurisdiction over Fellegy.

Federal courts are courts of limited jurisdiction and the exercise of personal jurisdiction over a non-resident defendant is limited only to that which comports with due process. Here, Fellegy signed an agreement with Deep South related to his future employment after leaving Deep South. That agreement was not negotiated or signed by Fellegy in Louisiana. The future employment contemplated by the Agreement is not occurring in Louisiana or in any way directed at Louisiana. Deep South simply seeks to bully Fellegy into leaving his otherwise permissible employment thousands of miles away by making this lawsuit as inconvenient and expensive for Fellegy as possible. It impermissibly relies on its own contacts with Louisiana to support jurisdiction while ignoring the fact that Fellegy, all the witnesses, and all the evidence that is relevant to Fellegy's employment with End 2 End is not located in Louisiana. Personal jurisdiction over Fellegy in this circumstance does not comport with due process and would be unfair and unreasonable. Deep South's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

**II.     Deep South has failed to show it is entitled to injunctive relief under § 921.**

    *A.     Deep South has failed to allege facts to show that it has customers or does business in every parish or county in the sixteen states listed in the Agreement.*

In its opposition, Deep South misrepresents Fellegy's arguments to this Court. First,

---

[5] *Waguespack v. Medtronic, Inc.*, 185 F.Supp.3d 916, 925-926 (M.D. La. 2016).
[6] *Id.*

Fellegy does not argue the Agreement is overbroad *per se* because it lists every parish in Louisiana. Notably, the Agreement is not limited to every parish in Louisiana, but extends to every parish in Louisiana *and every county in 15 other states*.

Under Section 921(C), there are two independent requirements for the geographical limitation: (a) the parishes where competition is restrained must be "specified" within the agreement itself; and (b) a substantive limit requiring non-competition agreements to be "limited in enforcement to parishes where the first employer actually carries on a like business therein."[7] Contrary to Deep South's argument, under Louisiana's most recent case law plaintiff must have an *actual location or actual customers* in the parish or county in which they seek to enforce a non-competition or non-solicitation agreement under La. R. S. § 23:921.[8]

Deep South's reliance on the 1999 case, *Moore's Pump & Supply, Inc.*,[9] to support its contention that it only needs *to solicit* business in a parish or county to bar Fellegy from working there is misguided. The 2006 *Vartech* decision, and the decisions that followed it, established Louisiana's position that a plaintiff must have an *actual location or actual customers* in the parish or county in which they seek to enforce a non-competition or non-solicitation agreement. This aligns with Louisiana's strong public policy against restrictive covenants and Louisiana's reluctance to enforce them.[10] Therefore, *Moore's* is not controlling.

Deep South fails to allege in its Complaint or Opposition facts to support that it has actual

---

[7] *Id*. at 929.

[8] *Envtl. Safety & Health Consulting Servs., Inc. v. Fowler,* 2019-0813, p. 11 (La.App. 4 Cir. 3/11/20), *writ denied,* 2020-00729 (La. 10/6/20); 302 So.3d 528; *Zanella's Wax Bar, LLC v. Trudy's Wax Bar, LLC,* 291 So.3d 693, 698, (La.App. 1 Cir. 11/7/19); *writ denied,* 291 So.3d 1052- (La. 1/28/20); *Causin, L.L.C. v. Pace Safety Consultants, LLC,* 2018-0706, p. 14 (La.App. 4 Cir. 1/30/19), *writ denied,* 2019-0466 (La. 5/20/19); 271 So.3d 203; *H2O Hair, Inc. v. Marquette*, 960 So.2d 250, 260 (La.App. 5 Cir. 5/15/07); *Vartech Sys., Inc. v. Hayden*, 951 So.2d 247, 258 (La. App. 1 Cir. 12/20/06).

[9] *Moore's Pump & Supply, Inc. v. Laneaux*, 727 So.2d 695, 698 (La. App. 3 Cir.).

[10] *Brock Servs., L.L.C. v. Rogillio*, 936 F.3d 290, 296 (5th Cir. 2019).

locations or customers in the nearly 1500 parishes or counties listed in the Agreement. Deep South merely alleges that it "operates throughout the state of Louisiana and throughout the United States." (Doc. 1, ¶ 7). This conclusory allegation is insufficient to justify enforcing the non-competition agreement against Fellegy.

This is precisely the type of "extreme" case the court warned about in *McLaughlin v. BancorpSouth Ins. Servs., Inc.*[11] Deep South, by listing over 1500 parishes and counties in its grossly overbroad Agreement, has "foist upon the courts the burden of conducting a factual inquiry to determine where the agreement is enforceable."[12] As this Court explained in *L & B Transp., LLC v. Beech*,[13] the majority of the courts in Louisiana decline to save invalid non-competition provisions through reformation.[14] "If courts always reformed invalid non-competition provisions, employers would be free to routinely present employees with grossly overbroad covenants not to compete. Furthermore, the reformation of these non-competition provisions would place courts in the business of either saving or writing a contract that is not generally favored by law."[15] Deep South should not be rewarded for its attempt to circumvent the letter and intent of La. R.S. § 23:921, by having this Court essentially rewrite the contract to conform it to Louisiana law.

### B.     Deep South's definition of its business is overbroad and thus is null and void.

While the law does not require a specific definition of the employer's business in a non-competition agreement, an employer is only entitled to keep ex-employees from competing with

---

[11] *McLaughlin v. BancorpSouth Ins. Servs., Inc.*, 17- CV-7604, 2018 WL 1035083, at *5 fn. 6 (E.D. La. Feb. 23, 2018).
[12] *Id*.
[13] *L & B Transp., LLC v. Beech*, 568 F.Supp.2d 689, 697 (M.D. La.2008).
[14] *Id*. at 693-694.
[15] *Id*.

6

the employer's actual business.[16] When an employer includes an overly broad definition of its business in its noncompetition agreements, the agreement is null and avoid because it violates La. R.S. 23:921(C).[17]

> Deep South alleges that its business is "narrowly" described as:
>
> a telecommunications contractor specializing in microwave communications design and construction, fiber optics communications, distributed antenna systems (DAS), intelligent transportations systems (ITS), communications tower build-outs and maintenance, cellular and microwave maintenance and build-outs. (Doc. 20, p. 17.)

Notably, Deep South in its Opposition omits the rest of, and arguably the most problematic, part of the business definition:

> ***Employer's business also includes*** the development and maintenance of business relationships and accounts with various persons and/or entities with whom Employer conducts business, including customers, consumers, borrowers, vendors, suppliers, contractors, or otherwise, are hereinafter collectively referred to as Employer's "clients." (Doc. 1-2, Section 1) (emphasis added).

Therefore, in addition to trying to prevent Fellegy from "directly or indirectly" engaging with any "telecommunications contractor specializing in microwave communications design and construction, fiber optics communications, distributed antenna systems (DAS), intelligent transportations systems (ITS), communications tower build-outs and maintenance, cellular and microwave maintenance and build-outs," Deep South also seeks to prevent Fellegy from "directly or indirectly" engaging in *any* business—not just telecommunications as described above—where Fellegy could potentially encounter Deep South's "customers, consumers, borrowers, vendors, suppliers, contractors, or otherwise."[18] "Or otherwise" is not defined in the Agreement and is not self-defining.

---

[16] *Savard Labor & Marine, Inc. v. Glo Res., LLC*, 315 So.3d 897, 902 (La. App. 1 Cir. 11/6/20).
[17] *Paradigm Health System, L.L. C. v. Faust*, 218 So. 2d 1068, 1073 (La. Ct. App. 2017).
[18] *Id.*

This case is similar to the very recent decision in *Advanced Medical Rehab, L.L.C. v. Manton*.[19] In *Manton*, the defendant served as the public relation's director for plaintiff, a marketing company that represents ten healthcare clinics providing medical and chiropractic care.[20] Defendant signed a non-competition agreement in which she agreed to "not knowingly, directly or indirectly, own, manage, operate, jointly control, lend money to, endorse the obligations of, or participate in or be connected as an officer, employee, stockholder, partner, member, counselor, advisor, or otherwise, with any business (other than the [plaintiff], or an affiliate) engaged to any extent in the business of Advanced, which includes, but is not limited to, the marketing of medical services for chiropractic clinics and physicians."[21]

Defendant subsequently left her employment with plaintiff and took a job with a healthcare provider network that provides medical treatment to its patients through its licensed physicians at various locations throughout Louisiana. Plaintiff sought to enforce the noncompetition agreement. The court found that:

> Upon review of the non-competition provision, it requires Ms. Manton to refrain from being an "...employee...with *any* business (other than Advanced, or an affiliate) engaged to *any* extent in the business of Advanced, which includes, but is ***not limited to***, the marketing of medical services for chiropractic clinics and physicians...." (emphasis added). This provision expressly and explicitly prevents Ms. Manton from engaging in *any* business to *any extent* including marketing of medical services for chiropractic clinics and physicians, without limitations. The non-competition provision prohibits Ms. Manton from marketing any type of services or products for any other business or marketing company, not merely marketing medical services. Although AMR's business can be narrowly defined as "marketing the medical services of physicians and chiropractic clinics," which is a fairly limited definition, the non-competition provision "drives a freight train

---

[19] *Advanced Medical Rehab, L.L.C. v. Manton,* 21-315 (La.App. 5 Cir. 2/23/22), *writ denied, Advanced Med. Rehab, L.L.C. v. Manton*, 2022-00606 (La. 6/1/22); 338 So.3d 494.
[20] *Id.*
[21] *Id.*

through this limitation" by further precluding Ms. Manton from engaging in other business that is not similar to that of AMR in violation of La. R.S. 23:921(C).[22] In affirming the trial court's finding that the definition was overbroad, the Louisiana Court explained that provision restricted defendant from working in marketing in any fashion.[23]

Like the grossly overbroad provision in *Manton*, the Agreement here seeks to prohibit Fellegy from, among other things, "directly or indirectly, whether as an employee, consultant, independent contractor, agent, officer, director, owner, partner, operator, shareholder of 1% or more of stock, or in any other capacity, engage in any business that directly or indirectly competes with or is similar to the business of Employer." (Doc. 1-2, Section 5(B)).

Because Deep South includes the development of its relationships with "customers, consumers, borrowers, vendors, suppliers, contractors, or otherwise" Fellegy is prevented from working for any business that may have also have relationships with any of Deep South's "customers, consumers, borrowers, vendors, suppliers, contractors, or otherwise" whether or not they are truly engaged in the same business as Deep South as required by La. R.S. § 23:921.

### C.    Deep South's Complaint lacks adequate factual allegations to show the plausibility of any breach of the confidentiality provisions.

In its Opposition, Deep South fails to provide anything but conclusory allegations regarding Fellegy's alleged breach of the confidentiality agreement. The factual allegations simply state that Fellegy was employed by Deep South, signed the Agreement, left Deep South, and began working for End 2 End. (Doc. 1, ¶¶ 8-9, 16-18). Deep South asserts no facts to support a claim for breach of confidentiality. To support its confidentiality claim, Deep South alleges that General Electric Co. ("GE") with whom Fellegy interacted decided to remain with its current service

---

[22] *Id*. at p. 9 (emphasis in original).
[23] *Id*.

provider who happens to be Fellegy's new employer, E2E. (Doc. 20, p. 22). Deep South provides no facts leading to the inference that Fellegy used Deep South's confidential information to entice GE to remain with E2E or divert business from Deep South.

Deep South has alleged no facts to support the idea that Fellegy has done anything inappropriate with any supposedly confidential information to Deep South's detriment. Deep South does not allege the type of confidential information Fellegy allegedly took or inappropriately used, nor has Deep South satisfactorily alleged in what ways Fellegy removed, used, or shared the information in violation of the Agreement. Deep South essentially argues that the complaint read in its entirety supports the idea the Defendant used the confidential information inappropriately to help his new employer retain one customer. (Doc. 20, p. 22). However, Deep South does not support its claims with any of the necessary factual allegations to move its claim "across the line from conceivable to plausible."[24] Fellegy once having access to confidential information and then working for a new employer, does not create a presumption that he is in breach. Accordingly, because Deep South does not plausibly state a claim for which relief can be granted, its claim for breach of a confidentiality obligation should be dismissed.

### III.  Conclusion

For the all reasons set forth herein Plaintiff's Complaint should be dismissed with prejudice.

/s/ Andrew P. Burnside
Andrew P. Burnside, T.A., La. Bar No. 14116
Claire R. Pitre, La. Bar No. 36257
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
701 Poydras Street, Suite 3500
New Orleans, Louisiana 70139
Telephone: 504.648.3840
Facsimile: 504.648.3859

---

[24] *Iqbal*, 556 U.S. at 680.

Email:  drew.burnside@ogletreedeakins.com
claire.pitre@ogletreedeakins.com

—and—

Michelle Renee Maslowski, In. Bar No. 27238-49
Admitted *Pro Hac Vice*
Maslowski Law
5602 Elmwood Avenue, Suite 104
Indianapolis, Indiana 46203
Telephone: 317.854.3811
Email: michelle.maslowski@maslowskilaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed via the Court's Electronic Filing System, which provides for service on all parties.

This 17th day of October, 2022.

*/s/ Andrew P. Burnside*
Andrew P. Burnside