IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DEEP SOUTH COMMUNICATIONS L.L.C. | )<br>)<br>) CIVIL ACTION<br>)<br>) NO. 22-00598-JWD-EWD |
| v. | )<br>) |
| PETER M. FELLEGY | ) |

**PLAINTIFF'S MEMORANDUM IN REPLY TO
DEFENDANT'S OPPOSITION TO MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF**

Plaintiff, Deep South Communications L.L.C. ("Deep South"), submits this memorandum in reply to Defendant's, Peter Fellegy ("Fellegy) opposition (Doc. 17) to Deep South's Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 8). Fellegy's opposition misconstrues the Agreement, relies on inapposite case law, and fails to accurately or completely present the facts to the Court. The relief Deep South seeks would not prevent Fellegy from earning a living, as he argues, because he would still be free to engage in a non-competitive business anywhere and to engage in a competitive business in any of 35 states across the country. More than ten years ago the Louisiana legislature codified an employer's right to relief when an employee breaches a restrictive covenant that complies with the statute, stating that "**every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, *shall be enforceable***."[1] The Agreement here complies with the statute in all respects, and also contains a severability clause to permit reformation under Louisiana's well-established blue

---

[1] La. R.S. 23:921A(1) (emphasis added).

1

pencil rule.[2] While Fellegy continues to deny that his current employer and Deep South are competitors, his contemporaneous emails from Deep South directly contradict his statements to the Court.

**A. Fellegy's employer is engaged in the same or similar business as Deep South.**

Fellegy states that "End 2 End's `business focuses primarily on utilities" and that he "prospect[s] for small-scale utilities, such as small electric co-ops and natural gas co-ops."[3] He did the same thing for Deep South, promoting Deep South's utility experience by stating that "[p]ower utility co-ops and utility contracting primes have been our focus to date" and "[y]our utility friends' clients will find us to be: smart/agile, experienced, and safe!"[4] Deep South prospects for and services small electric co-ops and natural gas co-ops, including for example DEMCO in Louisiana as Fellegy's emails from Deep South show.[5]

Deep South and Fellegy's employer also compete for the same customers.[6] Both are authorized resellers of GE-manufactured microwave radios and compete for the same customers for these sales.[7] For example, Fellegy's LinkedIn page notes that E2E has a partnership with GE and that E2E is a primary distributor of certain GE network-related products.[8] Previously, Fellegy developed and was responsible for a business relationship with GE on Deep South's behalf.[9] GE expressed a desire to award certain Arkansas business to Deep South before Fellegy resigned,[10] but the business thereafter remained with E2E.[11]

---

[2] *Brock Services, LLC v. Rogillio,* 936 F.3d 290, 296-297 (5th Cir. 2019) (noting that "the court may rely on a severability provision to reform the overbroad provision and 'excise the offending language'" if overbroad.
[3] Doc. 16-2, ¶¶ 45-46, Declaration of Peter Fellegy (10/11/2022).
[4] Exhibit 1, Declaration of Rhett Westerman (10/18/22) ("Westerman Suppl. Decl."), ¶ 9, Exhibit A thereto.
[5] *Id.,* at ¶ 9, Exhibit G thereto.
[6] *Id.,* at ¶ 3.
[7] *Id.,* at ¶ 5.
[8] Exhibit 2, Peter Fellegy's LinkedIn page.
[9] Doc. 1, ¶ 34.
[10] Doc. 1, ¶ 35.
[11] Doc. 1, ¶ 35; *see also* Exh. 1, Westerman Suppl. Decl. at ¶ 9 and Exh. B thereto.

2

Fellegy attempts to distinguish what E2E and Deep South do by alleging that Deep South builds the wireless networks it sells and whereas E2E focuses on the design and software needed to run the networks it sells.[12] This is not a material distinction because both Deep South and E2E sell the same thing and compete for the same customers, regardless of who builds or designs what is sold. In *Baton Rouge Computer Sales, Inc. v. Miller-Conrad*, the court concluded that "while the types of computer systems sold may be diverse, the business of selling them is not an activity subject to various descriptions or definitions."[13] In *Ticheli v. John H. Carter Co., Inc.*, concluded that companies that sold various types of industrial valves and instrumentation from different manufacturers engaged in a business that was at least "similar," finding that the trial court committed manifest error by concluding otherwise.[14] Louisiana courts have found the activity of sales of products or services to be "similar" within the meaning of the statute even when the products or services are not entirely the same, which is what "similar" means.

**B. La. R.S. § 23:921(A)(2) applies only to Louisiana citizens and employees.**

Section 23:921(A)(2) does not apply to a nonresident such as Fellegy. This Court recognized in *Waguespack v. Medtronic, Inc.,* that Section 921(A)(2) applies only to "*Louisiana citizens and employees*," **which Fellegy denies having been at any relevant time.**[15] The Court elaborated further that "[t]he statute only involves how post-employment activities of *Louisiana-based employees* can be governed."[16] The Louisiana Supreme Court in addressing the statute also has explained that Section 23:921 "serves a legitimate *local* interest" in allowing Louisiana courts to adjudicate certain claims.[17] This statutory provision was designed to serve a legitimate "local"

---

[12] Doc. 16-2, ¶¶ 42-43.
[13] 767 So.2d 763, 765 (La. App. 1 Cir. 05/23/00).
[14] 996 So.2d 437, 440-441 (La. App. 2 Cir. 9/17/08).
[15] 185 F.Supp.3d 916, 927 (M.D. La. 2016) (noting that the statute "will apply to govern disputes with *Louisiana employees*" (emphasis added)).
[16] *Id.* at 928 (emphasis added).
[17] *Sawicki v. K/S Stavanger Prince*, 802 So.2d 598, 606 (La. 2001).

interest affecting Louisiana citizens and employees, not for nonresidents to use to repudiate their choice of Louisiana law agreements entered into with Louisiana citizens such as Deep South. Fellegy has failed to present any legal authority or logical argument to support the application of Section 23:921(A)(2) in this manner.[18]

### C. The Agreement's geographical scope complies with La. R.S. § 23:921.

Fellegy incorrectly argues that Deep South "must have an *actual location or actual customers* in the parish or county" in which it seeks to enforce a restrictive covenant.[19] The statute contains no such requirement and Louisiana courts both ***before and after*** the *Vartech* case on which Fellegy heavily relies have held to the contrary. In *Moores Pump & Supply, Inc. v. Laneaux,* the court held a non-competition agreement covering 43 of Louisiana's 64 parishes was not overbroad because the employer solicited business in each of the named parishes.[20] The court stated that the employer "established a prima facie case that it solicits business in all the parishes listed" and "the fact that they do not have specific projects ongoing in all forty-three parishes requires no such finding [that they were not doing business in them]."[21]

Another court held that "advertisement and solicitation of customers in [a neighboring] Parish constituted 'carrying on a like business'" for purposes of the statute in *H2O Hair, Inc. v. Marquette*, which Fellegy inexplicably cites for the opposite conclusion[22] and which was decided

---

[18] Deep South addressed this issue in its Opposition to Defendant's Rule 12(b)(2) Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim, which is incorporated herein by reference. Doc. 20, pp. 10-11.
[19] Fellegy relies primarily on *Vartech Sys., Inc. v. Hayden*, 951 So.2d 247, 258 (La. Ct. App. 2006), for this proposition. The court in *Vartech* commented without citing any authority whatsoever that "the statute contemplates that the parishes specified in the agreement must be parishes where the ex-employer actually has a location or customers." *Id.* However, the statute does not define the phrase "carrying on or engaging in a business similar" to that of the ex-employer, nor does the statute refer to or mandate having a physical location or customers to be considered to be carrying on or engaging in a similar business.
[20] 727 So.2d 695, 698 (La. App. 3 Cir. 1999); *see also Gallagher*, 703 F.3d at 388.
[21] *Id.*
[22] Doc. 21, p. 5, fn. 8.

4

in 2007, after *Vartech*.[23] The other cases cited by Fellegy simply quote the "location or customer" language from *Vartech*, citing to the decision without analysis or discussion, and none of them denied injunctive relief based on this supposed requirement that appears nowhere in the statute.[24]

The statute also does not impose any numerical limitation on the parishes and counties that may be specified in a restrictive covenant.[25] Listing all parishes or all counties in a state or states does not *per se* render a restrictive covenant overbroad. As the Fifth Circuit recognized:

> **It is certainly possible for a company to conduct a like business in all of Louisiana's parishes; and, if that were the case, the plain language of § 23:921(C) provides for the protection of that company's interests. Louisiana's case law supports this conclusion**. . . . [I]n *Vartech Systems, Inc.,* 951 So.2d at 258, non-competition agreements naming all of Louisiana's parishes were examined. The court stated: 'The listing of all 64 parishes does not automatically render the specification overly broad.' *Id.*[26]

The court found that the trial court erred in so holding "without first considering evidence regarding the nature and extent of [the plaintiff employer's] business."[27]

In any event, Deep South has presented evidence that it engages in business in the areas specified in the Agreement.[28] Further, Fellegy's contemporaneous emails while working for Deep South reflect that he pursued business throughout the U.S. on Deep South's behalf. In an email

---

[23] 960 So. 2d 250, 258-60 (La. App. 5 Cir. 5/15/07).
[24] *Environmental Safety & Health Consulting Services, Inc. v. Fowler*, 2020 WL 1173587 (La. App. 4 Cir. Mar. 11, 2020); *Zanella's Wax Bar, LLC v. Trudy's Wax Bar, LLC*, 291 So.3d 693, 698, (La.App. 1 Cir. 11/7/19); writ denied, 291 So.3d 1052- (La. 1/28/20); *Causin, L.L.C. v. Pace Safety Consultants, LLC*, 2018-0706, p. 14 (La.App. 4 Cir. 1/30/19), writ denied, 2019-0466 (La. 5/20/19). On the other hand, *Moores* and *H2O Hair* determined that the plaintiffs in those cases were engaging in or carrying on business in the relevant parishes based upon activities such as solicitation and/or advertising.
[25] *Environmental Safety & Health Consulting Services, Inc. v. Fowler*, 2020 WL 1173587, at *11 (La. App. 4 Cir. Mar. 11, 2020) (stating "[t]he relevant question for statutory enforceability is not the number of parishes listed").
[26] *Arthur J. Gallagher & Co. v. Babcock,* 339 F. App'x 384, 387-388 (5th Cir. 2009), *cert. denied,* 558 U.S. 115 (2010) (emphasis added).
[27] *Id.* Fellegy's reliance on *dicta* from the decision of *McLaughlin v. BancorpSouth Ins. Servs., Inc.,* 2018 WL 1035083, at *5 fn. 6 (E.D. La. Feb. 23, 2018) is immaterial and does not take precedence over the Fifth Circuit's pronouncement in *Gallagher* (*see also Fowler,* 2020 WL 1173587, at *6, stating that "the number of parishes listed" is not the relevant question for enforceability).
[28] Doc. 1, ¶¶ 7, 57, 74 (Deep South "**operates throughout the state of Louisiana** and throughout the United States" and "markets its wireless technology services to, prospects for, **services**, and/or **engages** in wireless technology business with customers in every parish and county identified in Exhibit A to the Agreement") (emphasis added).

dated January 15, 2021, Fellegy touted Deep South's "focus to date" on power utility co-ops and utility contracting primes and stated "[w]e are actively operating in the Gulf Coast and Southeast regions (and Puerto Rico) of the US and also throughout NA [North America] for the right engagement[.]"[29] Fellegy himself promoted Deep South's business across the country.

### D. The Agreement's business description and scope comply with La. R.S. § 23:921.

The statute permits an employer and employee to agree that the employee will refrain from "engaging in or carrying on a business similar to that of the employer" subject to restrictions. It does not define what engaging in or carrying on a similar business means or even require that a restrictive covenant contain a description of the employer's business.[30] Although not required, the Agreement contains a narrowly-tailored description of Deep South's business as follows:

> A telecommunications contractor specializing in microwave communications design and construction, fiber optics communications, distributed antenna systems (DAS), intelligent transportations systems (ITS), communications tower build-outs and maintenance, cellular and microwave maintenance and build-outs.[31]

Fellegy argues in conclusory fashion that the scope of activity the Agreement prohibits is overbroad and unenforceable. He then cites a series of cases standing for the general proposition that a business description cannot be overbroad, but each involves materially different contracts, business descriptions, and other facts that make them inapposite here.[32] Such all-encompassing

---

[29] Exh. 1, Westerman Decl. at ¶ 9 and Exh. A thereto. Fellegy devotes significant time to claiming he only developed business for Deep South in some of the parishes and counties listed in his Agreement, but this is an irrelevant posture. The statute permits restrictive covenants to the extent that the employer carries on a like business, not only where the employee worked for the employer.

[30] *Baton Rouge Computer Sales, Inc. v. Miller-Conrad,* 767 So.2d 763, 764 (La. App. 1 Cir. 2000).

[31] Doc. 1-2, § 1. Included within the description of employer's business is the "development and maintenance of business relationships and accounts with various persons and/or entities with whom Employer conducts business, including customers, consumers, borrowers, vendors suppliers, contractors, or otherwise, are hereinafter collectively referred to as Employer's 'clients.'" Fellegy insists that this somehow broadens the scope of Deep South's business, but such arguments are hyperbole as it is axiomatic that any business of selling products and services necessarily includes developing and maintaining relationships with customers, vendors, and such other third parties who are essential to that business. Regardless, the severability provision of the Agreement authorizes blue pencil reformation if ever deemed necessary.

[32] *Daiquiri's III on Bourbon, Ltd. v. Wandfluh,* 608 So.2d 222, 224 (La. App. 5 Cir. 1992) (an employer selling alcoholic and non-alcoholic frozen daiquiris described the prohibited conduct as selling "frozen drinks," which would

6

and non-specific descriptions ("frozen drinks," "practice of medicine," and "associated with" or "rendering services . . . [or] aid") are in no way analogous to the detailed specification of Deep South's business in the Agreement at issue.

The case of *Environmental Safety & Health Consulting Services, Inc. v. Fowler*, on the other hand, is more informative in this case.[33] The plaintiff performed oil and hazardous materials spill containment, defining its business in the agreements at issue as "any sort of oil and hazardous materials spill containment and cleanup services, industrial cleaning services, waste transportation and disposal, NORM remediation, turnaround services, environmental consulting and training, or environmental product sales."[34] The former employees argued that the business description prevented them from working as garbage collectors, focusing on the language "waste transportation and disposal."[35] The court rejected the argument that the description was overbroad, noting that when read in totality "it is clear that this does not include any and all waste transportation disposal."[36] Fellegy's failure to read the Agreement in totality leads to a similar error. More important, as the former Vice President of Business Development for Deep South, Fellegy is well aware of the nature of Deep South's business such that he could not reasonably interpret the business description to include activities that are dissimilar. The court in *Fowler* noted the relevance of this fact, stating that both of the former employees had been employed by the plaintiff for a number of years and had knowledge of the work of the plaintiff, such that "the

---

have included "yogurt, ice cream, malts or any number of products not sold by" the employer); *Paradigm Health System, L.L.C. v. Faust,* 218 So.3d 1068, 1075 (La. App. 1 Cir. 2017) (an employer attempted to prohibit a former physician from engaging "in the practice of medicine" or rendering "any medical services to any business similar to those" of the employer, which were undefined); *Yorsch v. Morel,* 223 So.3d 1274, 1285 (La. App. 5 Cir. 2017) (agreement prohibited the limited liability company member being "associated with" or "render[ing] services" or "aid" to "any person or entity engaged in any business whose activities compete in any way with" the business at issue).
[33] 2020 WL 1173587 (La. App. 4 Cir. Mar. 11, 2020).
[34] *Id.* at *1.
[35] *Id.* at *7.
[36] *Id.*

7

definition of the business contained in the Agreements was not so broad and vague as to render the defendant employees from being able to discern what kind of business the Agreements considered competitive."[37] So, too, is the Agreement in this case and Fellegy's knowledge of Deep South's business.

### E. The Agreement's severability clause authorizes blue pencil reformation to address overbreadth, if warranted (which Deep South denies).

Fellegy's arguments neglect to account for the fact Louisiana courts rely on severability provisions for blue pencil reformation to excise any terms deemed overbroad terms and enforce the remainder of the agreement to the extent possible.[38] Section 7 of the Agreement provides:

> If any term or provision of this Agreement is held to be invalid or unenforceable in any respect, the parties agree that they intend for any court or tribunal so construing this Agreement to reform, modify, expand, or limit such term or provision temporally, geographically, or otherwise so as to render it valid and enforceable to the fullest extent allowed by law. Any such term or provision that is not susceptible of such reformation shall be disregarded or severed so as not to affect any other term or provision hereof, and the remainder of this Agreement shall not be affected thereby and each such remaining term and provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.[39]

Though Deep South disagrees with Fellegy's assertion that the Agreement is in any way overbroad, the fact remains that the severability clause would allow the excision of any parish or county or any portion of the business description that might be deemed overbroad. Thus, Fellegy's contention that the Agreement is unenforceable is misplaced and overlooks this provision and aspect of Louisiana law..

### F. Injunctive relief protecting Deep South's confidential information is warranted.

Fellegy contends that he returned all confidential information to Deep South and that he

---

[37] *Id.*
[38] *Gallagher,* 703 F.3d at 292; *SWAT 24 Shreveport Bossier, Inc. v. Bond,* 808 So.2d 294, 308-309 (La. 2001); *Causin v. Pace Safety Consultants, LLC,* 2019 WL 385206, at *8 (La. App. 4 Cir. 2019).
[39] Doc. 1-2, § 7.

8

does not want or need Deep South's confidential information, so there would be no harm in granting the relief Deep South requests. Because Fellegy is clearly working for a competitor, who is selling the same products as Deep South and competing for the same customers as Deep South, the relief sought is necessary to prevent irreparable harm to Deep South. Confidential information includes not only physical and electronic files, but sensitive non-public information about Deep South's business development and customers that Fellegy would not otherwise know but for his employment at Deep South. Fellegy had access to and received Deep South's confidential information, including existing and prospective customer information, strategies for conducting business, and other trade secrets.[40] Deep South takes reasonable steps to protect its confidential information.[41] Fellegy developed a business relationship with General Electric Co. ("GE") on Deep South's behalf.[42] GE expressed a desire to award certain Arkansas business to Deep South before Fellegy left the company.[43] After Fellegy's departure to work for E2E, a competitor, GE decided not to award the business to Deep South and kept the business with E2E.[44] Fellegy held a position of trust with Deep South, in which he received confidential business information, and based on the events that have unfolded Deep South believes he has used Deep South's information and his knowledge of Deep South's business to solicit Deep South's clients for himself and/or E2E and to cause Deep South to lose business.[45]

### G. Deep South has carried its burden of establishing entitlement to the relief sought.

Deep South has shown a substantial likelihood of success on the merits as explained above. Deep South need not show irreparable harm under Louisiana law, only that Fellegy failed to

---

[40] Doc. 1, ¶¶ 13-14.
[41] Doc. 1, ¶ 22.
[42] Doc. 1, ¶ 34.
[43] Doc. 1, ¶ 35.
[44] Doc. 1, ¶ 35.
[45] Doc. 1, ¶¶ 83, 97-98.

perform.[46] Regardless, irreparable harm has already occurred through the loss of the GE business opportunity to Fellegy's current employer, a Deep South competitor. There can be no harm to Fellegy, who professes that he does not want Deep South's confidential information and claims he is not violating the restrictive covenants and has no intention to do so. He is able to work competitively outside the defined geographic area and non-competitively anywhere. And any potential harm to Fellegy is outweighed by the injury to Deep South if the injunction is not granted. Deep South has made a *prima facie* showing that it is entitled to the relief sought, showing that the Agreement is enforceable, with or without reformation, and that Fellegy has breached the Agreement. Although Rule 65 authorizes entry of a TRO *ex parte,* Defendant here has had ample opportunity to present facts and argument to the Court, none of which are availing. For the reasons discussed above, the Court should enter the TRO as prayed for by Deep South and, after due proceedings, issue a preliminary injunction on the same terms.

---

[46] *Brock Servs., L.L.C.,* 936 F.3d at 296.

          BY ATTORNEYS:

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

*s/Jennifer L. Anderson*
Jennifer L. Anderson (La. Bar No. 23620)
450 Laurel Street, 21st Floor
Baton Rouge, Louisiana 70801
Telephone: (225) 381-7020
Facsimile: (225) 343-3612
Email: jlanderson@bakerdonelson.com

AND

Emily Olivier Kesler (La. Bar No. 37747)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5927
Facsimile: (504) 585-6925
Email: ekesler@bakerdonelson.com

*Counsel for Deep South Communications L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of October, 2022, service of a copy of the foregoing pleading or paper on the Defendant shall be made in the manner and time as may be required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

          */s/Jennifer L. Anderson*
          Jennifer L. Anderson

4883-1221-8169v4
2949676-000003 10/18/2022