IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEEP SOUTH COMMUNICATIONS L.L.C. | ) ) ) ) ) ) ) ) | CIVIL ACTION<br><br>NO. 22-00598-JWD-EWD |
| v. | | |
| PETER M. FELLEGY | | |

**PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S RULE 12(B)(2) MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

Plaintiff, Deep South Communications L.L.C. ("Deep South"), submits this supplemental opposition to the Rule 12(b)(2) Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction (Doc. 16) (the "Motion") filed by Defendant Peter M. Fellegy. Deep South filed its original opposition to the Motion on October 14, 2022 (Doc. 20).

**I.      Introduction and Procedural Background**

Unsolicited, Fellegy intentionally and purposefully reached out to Louisiana seeking employment as a business development Executive with a Louisiana company.[1] He indicated when he applied for a position with Deep South that the location he was "applying for" was Baton Rouge.[2] He signed agreement containing a provision by which he expressly agreed that Louisiana law would govern.[3] He worked for Deep South for five years and came to Louisiana at least 22 times – at least once prior to his employment to interview for his proposed position[4] and at least

---

[1] Pl. Ex. 97 at PLTF_004006, ¶ 9.
[2] Pl. Ex. 97 at PLTF_004010. He indicated a desire for remote work from Indiana as well.
[3] Joint Ex. 1 at PLTF_003994, § 12.
[4] Pl. Ex. 97 at PLTF_004006, ¶ 11.

1

twenty-two times during his five-year employment,[5] which included a pandemic during which the ability to travel was limited. During these trips to Louisiana, Fellegy would "catch up" with Deep South's team members in Baton Rouge and meet with customers and potential customers in Baton Rouge, New Orleans, and other locations in Louisiana. Even when not physically present in the state of Louisiana, Fellegy's work for Deep South included developing business opportunities with customers and potential customers in Louisiana. Thus, he actively directed his business efforts towards Louisiana work and Louisiana companies.

On October 18, 2022, this Court ordered the parties to submit exhibit lists and accompanying exhibits for the October 26 hearing of the Motion (and other previously filed motions) by October 24, 2022. Both parties complied with this order, identifying as exhibits documents that were not attached to the briefing they previously submitted to the Court. Thereafter, Defendant filed a motion to continue the hearing and the Court held a status conference on October 25 at which the Court agreed to continue the hearing to November 2 and ordered the parties to exchange their proposed exhibits. In addition, the Court granted the parties leave to submit supplemental briefing regarding the documents exchanged to the extent they add to the personal jurisdiction issue, ordering that the parties do so on or before October 28 at 5:00 p.m. The purpose of this supplemental opposition to address the additional evidence in the parties exhibits that further demonstrates that the Court has personal jurisdiction over Fellegy.

**II.    Fellegy proposes this Court apply an incorrect legal standard for determining where a defendant employee who entered and allegedly breached a restrictive covenant agreement with plaintiff employer can be sued.**

Fellegy claims there are only "two situations" that are relevant to the jurisdiction issue – "the signing of the Agreement and Fellegy's employment now with End 2 End." However, this

---

[5] *See infra* Part III.A.

improperly narrows the legal standard and limits the analysis of Fellegy's contacts with Louisiana to the ones he has picked and chosen to label as "relevant." Fellegy's overly narrow view of his contacts with the state is not what the law requires. Fellegy has not identified a single case in the context presented here narrowing the issues as Fellegy proposes.

The facts in this case are similar, if not stronger, than those presented earlier this year to another court in this Circuit, *Direct Biologics, LLC v. McQueen*.[6] In that case, the Western District of Texas found that a former employee alleged of breaching his employment contracts with his Texas-based employer (and thereby causing injury to his former employer in Texas) had purposefully availed himself of the benefits of the State of Texas and had sufficient contacts with Texas for the Court to exercise jurisdiction over him. The Court relied on the facts that the nonresident former employee had worked for a company based in Texas for several (four) years, "repeatedly traveled to the company's headquarters" in Texas, "and directed his employment activities and communications to [the company's] headquarters."[7] These facts are consistent with those in this case. Just as in *Direct Biologics*, the cause of action at issue is one for breach of an employment with a resident plaintiff company by a nonresident former employee. Although Deep South previously addressed *some* evidence regarding Fellegy's trips to Louisiana and his development of business in Louisiana, since filing of its opposition, Deep South has identified even more evidence conclusively showing that Fellegy meaningfully directed his employment-related and business activities to Louisiana throughout his employment with Deep South and development of business in Louisiana for Deep South. Therefore, there can be no doubt that personal jurisdiction exists over Fellegy in this case.

---

[6]. 1:22-CV-381-SH, 2022 WL 1409984, (W.D. Tex. May 4, 2022).
[7] *Id.* at *7.

**III.    Applying the correct legal standard, the relevant evidence overwhelmingly confirms Fellegy has more than sufficient minimal contacts with Louisiana for this Court to exercise personal jurisdiction over him.**

Contrary to Fellegy's claims that he had minimal contact with Louisiana during his employment with Deep South, the evidence irrefutably demonstrates that Fellegy's contacts with Louisiana have been more than sufficient to establish personal jurisdiction. Additionally, his contacts with Louisiana are ongoing as a result of his continuing obligations under his agreement with Deep South and his breach of those obligations, causing harm to Deep South in Louisiana. Several of the statements in Fellegy's declaration, upon which he relied to argue that this Court lacks jurisdiction over him, are demonstrably false or misleading. Upon review of the relevant evidence, there can be no question that this Court has personal jurisdiction over Fellegy.

*A.    The irrefutable evidence demonstrates Fellegy traveled to Louisiana on more than 20 occasions, at a minimum, over the course of his five-year employment.*

Although Fellegy stated in his declaration that he only traveled to Louisiana "nine times" for a total of between eleven and twenty-five days during his employment with Deep South,[8] evidence from Fellegy's Deep South email account confirms that he made at least twenty-two trips, spending at least eighty days in Louisiana during those trips – more than double the number of trips and triple the number of days to which Fellegy has attested – as detailed in the table below.

| Year | Fellegy Declaration | Evidence from Fellegy's Email | Total |
|---|---|---|---|
| 2017 | No trips identified | 1. June 5, 2017 date to June 9, 2017 (5 days)[9]<br>2. *Unknown date* to June 26, 2017[10]<br>3. June 27, 2017 to *unknown date*[11] | Five trips (at least 15 days) |

---

[8] Doc. 16-2 at ¶ 25.
[9] *See* Pl. Ex. 12 at PLTF_002924- PLTF_002925; Pl. Ex. 103 at PLTF_003038 (return flight from New Orleans).
[10] Pl. Ex. 103 at PLTF_003039 (return flight from New Orleans).
[11] Pl. Ex. 103 at PLTF_003061 (flight to New Orleans).

4

|  |  | 4. August 29, 2017 to September 1, 2017 (4 days)[12] |  |
|---|---|---|---|
|  |  | 5. December 19, 2017 to December 22, 2017 (4 days)[13] |  |
| 2018 | One trip (3 days) | 1. March 27, 2018 to March 30, 2018 (4 days)[14] | At least four trips (at least 15 days) |
|  |  | 2. July 11, 2018 to July 13, 2018 (3 days)[15] |  |
|  |  | 3. *Mid-August date unknown*[16] |  |
|  |  | 4. September 25, 2018 to September 28, 2018 (4 days)[17] |  |
|  |  | 5. December 18, 2018 to December 21, 2018 (4 days)[18] |  |
| 2019 | Five trips (5-15 days) | 1. March 24, 2019 to March 28, 2019 (5 days)[19] | At least four trips (at least 19 days) |
|  |  | 2. July 21, 2019 to July 22, 2019 and July 24 to July 25, 2019 (4 days)[20] |  |
|  |  | 3. August 6, 2019 to August 9, 2019 (4 days)[21] |  |
|  |  | 4. November 3, 2019 to November 8, 2019 (6 days)[22] |  |

---

[12] Pl. Ex. 103 at PLTF_003042 (flight to Baton Rouge), PLTF_003047 (return flight from Baton Rouge), and PLTF_003072 (calendar appointment for hotel stay in Baton Rouge from 8/28/2017 to 9/1/2017).

[13] Pl. Ex. 103 at PLTF_003045 (flight to Baton Rouge), PLTF_003037 (return flight from Baton Rouge), and PLTF_003074 (calendar appointment for accommodations in Baton Rouge).

[14] Pl. Ex. 21 (calendar appointment for "Meet/greet" at Deep South's headquarters on March 28, 2018); Pl. Ex. 103 at PLTF_003043 (flight to Baton Rouge) and PLTF_003049 (return flight from Baton Rouge).

[15] Pl. Ex. 103 at PLTF_003046 (flight to Baton Rouge) and PLTF_003052 (return flight from Baton Rouge).

[16] Pl. Ex. 28 (noting plan to drive to Baton Rouge in mid-August 2018 as his "next trip to BR" to include meeting with some "partners (like Cielo Networks) along the way").

[17] Pl. Ex. 28 at PLTF_003034 (reflects plan to fly to New Orleans on September 25, 2018); Pl. Ex. 103 at PLTF_003053 (return flight from Baton Rouge).

[18] Pl. Ex. 33 at PLTF_001111 (Fellegy coming to Louisiana for Deep South holiday luncheon); Pl. Ex. 35 at PLTF_002909-PLTF_002916 (receipts from Baton Rouge trip for "Biz Dev and Admin" from 12/18/2018 – 12/22/2018); Pl. Ex. 103 at PLTF_003044 (flight to Baton Rouge), PLTF_003050 (return flight from Baton Rouge), and PLTF_003073 (calendar appointment for accommodation in Baton Rouge from 12/17/2918 – 12/21/2018).

[19] Pl. Ex. 38 at PLTF_002872-PLTF_002880 (receipts from Baton Rouge trip from 3/24/2019 – 3/29/2019); Pl. Ex. 103 at PLTF_003059 (flight to New Orleans) and PLTF_003055 (return flight from New Orleans).

[20] Pl. Ex. 41 at PLTF_001080-PLTF_001093 (Baton Rouge receipts from 7/21/2019, 7/22/2019, 7/23/2019 with reference to "BR/Houston/Austin trip").

[21] Pl. Ex. 43 at PLTF_002965 (email dated 8/5/2019 indicated Fellegy would be in Baton Rouge "tomorrow afternoon").

[22] Pl. Ex. 103 at PLTF_003058 (flight to New Orleans) and PLTF_003048 (return flight from New Orleans).

| 2020 | Two trips (2-6 days) | 1. January 27, 2020 to January 30, 2020 (4 days)[23]<br>2. July 21, 2020 to July 23, 2020 (3 days)[24]<br>3. November 10, 2020 to November 13, 2020 (4 days)[25]<br>4. December 8, 2020 to December 11, 2020 (4 days)[26] | Four trips (at least 15 days) |
| --- | --- | --- | --- |
| 2021 | One trip (1 day) | 1. April 6, 2021 to April 9, 2021 (4 days)[27]<br>2. *Unknown date* to July 25, 2021[28]<br>3. July 26, 2021 to *unknown date*[29]<br>4. August 9, 2021 to August 13, 2021 (5 days)[30]<br>5. November 15, 2021 to November 20, 2021 (5 days)[31] | Five trips (at least 16 days) |
| **TOTAL** | Nine trips (11-25 days) | **Twenty-two trips (at least 80 days)** | |

Thus, Fellegy's attempts to downplay or minimize his physical contact with the state of Louisiana are directly refuted by his own emails.

    **B.**    ***Fellegy's travel to Louisiana was significant to his position with Deep South.***

---

[23] Pl. Ex. 50 (receipts from Baton Rouge trip 1/27/2020 – 1/30/2020).
[24] Pl. Ex. 103 at PLTF_003036 (calendar appointment for "Client/BR Road trip" from 7/19/2020 to 7/25/2020); Pl. Ex. 103 at PLTF_003068 (calendar appointment "In Baton Rouge").
[25] Pl. Ex. 59 at PLTF_003010 (flight information for trip to New Orleans); Pl. Ex. 103 at PLTF_003064 (flight to New Orleans) and PLTF_003040 (return flight from New Orleans).
[26] Pl. Ex. 64 at PLTF_002619 (flight information for trip to New Orleans); Pl. Ex. 103 at PLTF_003063 (flight to New Orleans) and PLTF_003054 (return flight from New Orleans).
[27] Pl. Ex. 73 at PLTF_002940 (flight information for trip to New Orleans); Pl. Ex. 76 (calendar appointment for "CCI/DSC Strategy session); Pl. Ex. 103 at PLTF_003066 (flight to New Orleans) and PLTF_003041 (return flight from New Orleans).
[28] Pl. Ex. 103 at PLTF_003057 (return flight from New Orleans).
[29] Pl. Ex. 103 at PLTF_003060 (flight to New Orleans).
[30] Pl. Ex. 80 at PLTF_002948 (flight information for trip to New Orleans); Pl. Ex. 103 at PLTF_003065 (flight to New Orleans) and PLTF_003056 (return flight from New Orleans).
[31] Pl. Ex. 89 at PLTF_002957 (flight information for trip to New Orleans); Pl. Ex. 92 at PLTF_002859-PLTF_002860, PLTF_002862-PLTF_002863, and PLTF_002866 (receipts from Louisiana trip); Pl. Ex. 103 at PLTF_003035 (calendar appointment for "Baton Rouge"), PLTF_003067 (calendar appointment for GRITS conference in Baton Rouge); PLTF_003062 (flight to New Orleans), and PLTF_003051 (return flight from New Orleans).

Fellegy frequently visited the office for purposes of "catching up" with Deep South personnel in Baton Rouge[32] and described the time he spent in Baton Rouge as "important and valuable for [him.]"[33] In fact, Fellegy, at times, extended his trips to Louisiana for additional "quality time" with Rhett Westerman, a Louisiana native, the company's founder, its President, and Fellegy's boss.[34] Recognizing the significance and benefits of regularly returning to Louisiana following a trip to Louisiana in July 2020, Fellegy indicated that he "would like to make this return more often for the remainder of the year (getting back to the communication frequency that we had in 2017/2018)."[35] It is clear that during his employment with Deep South understood the importance of having a regular presence in Louisiana.

### C. Fellegy traveled to Louisiana for purposes of developing business on Deep South's behalf, including meaningful Louisiana business.

In addition to meeting with Westerman and other Deep South employees during his visits to Louisiana, Fellegy also met with customers and potential customers for purposes of developing potential business opportunities for Deep South.[36] In fact, he characterized certain trips to Louisiana as "Biz Dev" trips.[37] Although Fellegy suggests in his declaration that he was simply

---

[32] Pl. Ex. 92 at PLTF_002859.
[33] Pl. Ex. 57 at PLTF_002935; *see also* Pl. Ex. 88 at PLTF_002959 (describing purpose of trip as "BR office catch-up").
[34] Pl. Ex. 91 at PLTF_002956.
[35] Pl. Ex. 57 at PLTF_002936.
[36] Pl. Ex. 44 at PLTF_001102 (characterizing trip to Baton Rouge/Tallahassee as "Biz dev trip to visit with HNTB and Atkins Global"); Pl. Ex. 48 (coordinating meeting with Cielone Networks during November 2019 visit to Baton Rouge); Pl. Ex. 55 (indicating he had four meetings confirmed and four meetings pending with customers and potential customers related to his Tallahassee/Baton Rouge/Houston/Dallas trip); Pl. Ex. 61 at PLTF_002881 (describing trip to Baton Rouge as "promotional for a number of clients and segments); Pl. Ex. 65 (Fellegy to meet with potential customer (Boh Brothers) in New Orleans); Pl. Ex. 67 (same); Pl. Ex. 76 (calendar appointment for meeting with Connected City Integrators); Pl. Ex. 80 at PLTF_002947 (indicating plans to meet with Lit Communities, CCI, and Boh Brothers while in New Orleans); Pl. Ex. 82 (Uber receipt from lunch meeting with Lit Communities and Boh Brothers); Pl. Ex. 102 (discussing plan to visit with customer/potential customer during trip to Baton Rouge); Pl. Ex. 97 at PLTF_004026 (discussing meeting with potential customer in New Orleans and proposing possible business opportunity involving Louisiana broadband projects).
[37] Pl. Ex. 35 at PLTF_002909-PLTF_002916 (characterizing Baton Rouge trip as one for "Biz Dev and Admin); Pl. Ex. 44 at PLTF_001102 (characterizing trip to Baton Rouge/Tallahassee as "Biz dev trip to visit with HNTB and Atkins Global").

working from his home in Indiana,[38] in reality, the nature of Fellegy's position involved significant travel – to Louisiana and elsewhere in the United States – to develop business for his Louisiana employer. In fact, during the height of the pandemic, Fellegy associated his failure to develop significant business on Deep South's behalf with his inability to travel.[39]

### D. Fellegy made efforts to develop business opportunities in Louisiana even while working remotely from Indiana.

In his declaration, Fellegy denied ever developing "any new business relationships on behalf of Deep South in Louisiana while employed by Deep South."[40] To the extent this statement suggests that Fellegy never made *any* efforts to develop business in Louisiana, this conclusion is belied by Fellegy's own emails. For instance, Fellegy received emails from "BidSync" providing information about new bid opportunities for Deep South in various states, including in Louisiana.[41] In order to receive bids for Louisiana from the BidSync service, Fellegy would have had to have identified Louisiana as a state for which he desired to receive bids. Additional email correspondence reflects that Fellegy was developing *new business* in Louisiana even if the business was with a current Deep South customer, as opposed to establishing an entirely "new business relationship."[42] Fellegy's email correspondence further reflects that he was soliciting additional

---

[38] *See* Doc. 16-2, at ¶ 11.
[39] Pl. Ex. 52 at PLTF_002501.
[40] *See* Doc. 16-2 at ¶ 15.
[41] *See* Pl. Ex. 9 at PLTF_000929 (invitation to bid on "WI-FI Project" for City of New Orleans) and PLTF_000931 (invitation to bid on "Service Entrance Cable" project for State of Louisiana); Pl. Ex. 10 at PLTF_000921 (invitation to bid on "KHV Marine Satellite Antenna Install" for USCG Integrated Support Command New Orleans); Pl. Ex. 11 at PLTF_000923 (invitation to bid on "36C25618Q9090 ASSY. COMPUTER TOWER INSIGHT C-ARM LICKING, KNOB" for New Orleans VAMC); Pl. Ex. 24 at PLTF_002846 (invitation to bid on Crawford project in New Orleans); Pl. Ex. 31 at PLTF_002847 (invitation to bid on InMotion tenant space at Louis Armstrong New Orleans International Airport); Pl. Ex. 36 at PLTF_003513 (invitation to bid on Verizon small cell construction project in Texas, Louisiana, Arkansas, and Oklahoma); Pl. Ex. 37 at PLTF_001748 (Fellegy forwarding Verizon invitation to bid to Westerman as potential business opportunity; Pl. Ex. 40 at PLTF_002848 (invitation to bid on Para Vino Volo in Kenner, LA); Pl. Ex. 46 at PLTF_000933 (invitation to bid on "Microwave Communication System Repair" for U.S. Army Engineer District, New Orleans).
[42] *See* Pl. Ex. 15 at PLTF_002858 (reflecting Fellegy's involvement in developing business with Ericsson related to T Mobile site in New Orleans); Pl. Ex. 26 at PLTF_002845 (same); Pl. Ex. 70 at PLTF_003888 (discussing developing GE business in Louisiana utilizing Louisiana connections and contacts); Pl. Ex. 78 at PLTF_002510 (suggesting developing business with current customer in Monroe, Louisiana).

8

opportunities on Deep South's behalf in the "Gulf Coast region," which would include Louisiana,[43] and in New Orleans.[44] In a questionnaire Fellegy prepared, which Fellegy provided to another Deep South employee to demonstrate how to "pitch[]" Deep South's brand, Fellegy also identified Louisiana as one of several "markets" in which Deep South prefers to work, in which Deep South has "excess capacity" and which Deep South considers its "optimal bid market."[45] Moreover, Fellegy made representations in email correspondence that he would be directing his "full effort" towards certain potential business opportunities in several states, including Louisiana.[46]

In addition to these efforts to develop business opportunities in Louisiana, Fellegy's email correspondence also demonstrates that Fellegy was actively involved with Deep South projects located in Louisiana.[47]

## IV. Conclusion

The evidence is abundantly clear. Fellegy took active steps to direct his activities towards Louisiana, beginning with seeking out a Louisiana company for employment, through regularly traveling to the state, soliciting business opportunities in Louisiana, and developing business relationships with companies in Louisiana for purposes of obtaining additional work in Louisiana on Deep South's behalf. These facts, along with those previously briefed to this Court regarding the contents of Fellegy's agreement with Deep South, including its choice of law provision

---

[43] Pl. Ex. 20 at PLTF_001022 (soliciting additional business from Mobilitie in the Gulf Coast region and noting Deep South had been awarded 11 projects in New Orleans); Pl. Ex. 39 at PLTF_003128 (marketing Deep South as being "licensed and approved to work for a number of utilities (and some electric Co-ops) across the Gulf Coast"); Pl. Ex. 47 at (reflects Fellegy's business development activities prioritizing "regional utilties [sic] and electric coops on the Gulf Coast and Southeast US"); Pl. Ex. 71 at PLTF_003075 (marketing Deep South as "actively operating in the Gulf Coast and Southeast regions"); Pl. Ex. 87 at PLTF_000996 (same); Pl. Ex. 57 at PLTF_002935 (mentioning discussions with Boh Brothers regarding Deep South's "push in to [sic] DOT projects across the Gulf Coast"); Ex. 97 at PLTF_004047.
[44] Pl. Ex. 97 at PLTF_004018 and PLTF_004029; Jojnt Ex. 2 at PLTF_004027.
[45] Pl. Ex. 49 at PLTF_001024-PLTF_001028.
[46] Pl. Ex. 57 at PLTF_002936.
[47] Pl. Ex. 22 at PLTF_002637-PLTF_002638 (Mobilitie project in New Orleans); Pl. Ex. 23 at PLTF_002923 (same); Pl. Ex. 24 at PLTF_002622-PLTF_002632 (same); Pl. Ex. 27 at PLTF_003029-PLTF_003033 (same); Pl. Ex. 29 at PLTF_001079 (Fellegy seeking Louisiana vendor for current project in Louisiana).

indicating that Louisiana law would govern, further demonstrate that Fellegy should have expected to be subject to jurisdiction in Louisiana. This Court should deny Fellegy's motion to dismiss based on lack of personal jurisdiction and proceed with issuing a temporary restraining order to prevent Fellegy from further injuring Deep South's business.

BY ATTORNEYS:

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

*s/Jennifer L. Anderson*
Jennifer L. Anderson (La. Bar No. 23620)
450 Laurel Street, 21st Floor
Baton Rouge, Louisiana 70801
Telephone: (225) 381-7020
Facsimile: (225) 343-3612
Email: jlanderson@bakerdonelson.com

AND

Emily Olivier Kesler (La. Bar No. 37747)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5927
Facsimile: (504) 585-6925
Email: ekesler@bakerdonelson.com

***Counsel for Deep South Communications L.L.C.***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of October, 2022, service of a copy of the foregoing pleading or paper on the Defendant shall be made in the manner and time as may be required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

*/s/Jennifer L. Anderson*
Jennifer L. Anderson

!