**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| DEEP SOUTH COMMUNICATIONS L.L.C. | ) ) ) | CIVIL ACTION |
| | ) | NO. 22-00598-JWD-EWD |
| v. | ) ) | |
| PETER M. FELLEGY | ) | |

_____

**PLAINTIFF'S POST-HEARING REPLY BRIEF ON ISSUES OF JURISDICTION AND ISSUES RAISED BY THE MOTION FOR TEMPORARY RESTRAINING ORDER [DOC. 8] PURSUANT TO THE COURT'S MINUTE ENTRY [DOC. 45]**
_____

Plaintiff, Deep South Communications L.L.C. ("Deep South"), submits its post-hearing reply brief on issues of jurisdiction and issues raised by the Motion for Temporary Restraining Order (the "Motion for TRO") (Doc. 8) and Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction (the "Motion to Dismiss") (Doc. 16) pursuant to the Court's Minute Entry (Doc. 45) and in reply to Defendant's post-hearing brief (Doc. 51).

**I.    Introduction**

Fellegy proposes findings of fact and conclusions of law that veer into irrelevant territory and, otherwise, are contrary to the evidence or law, or an accurate representation thereof. He adopts an ostrich approach to the obligations under his valid Confidentiality and Restrictive Covenant Agreement ("Agreement"), pretending not to see an obvious conflict. Ignorance of the law is not a defense, however. Fellegy's arguments also suggest that this Court to impose upon Deep South a higher standard for enforcing the Agreement and proving breach than the law requires, reading into the governing law extra requirements that simply do not exist. For the following reasons, the

1

Court should reject Fellegy's proposed findings and conclusions, and adopt those proposed by Deep South.

**II.    Deep South need only make a *prima facie* showing that it will prevail on the merits and has done so, for which it is entitled to the requested TRO.**

"It is well established that an applicant seeking a preliminary injunction need only make a *prima facie* showing that he will prevail on the merits; thus, less proof is required than in an ordinary proceeding for a permanent injunction where the burden of proof is a preponderance of the evidence."[1] Under Louisiana's statute that governs the Agreement in this case, a court "shall order injunctive relief" "without the necessity of proving irreparable injury" upon a showing that the obligor has failed to perform, or that the employee has breached the agreement.[2]

Underlying many of Fellegy's arguments is an erroneous assumption that Deep South must marshal and present all of its evidence on every single possible fact at issue in order to obtain a TRO, which is of short duration and serves only to preserve the *status quo,* not to substitute for a trial on the merits. Fellegy insists that he does not intend to compete with or solicit the customers of or use the confidential information of Deep South, so the relief sought by Deep South will cause him no harm. Such relief can be and often is issued *ex parte* or based only on notice to the other side, without a hearing (evidentiary or otherwise). Here, Deep South has provided substantial evidence, consisting of thousands of pages of relevant documents, and extensive testimony of through declarations and a full-day hearing. The evidence establishes the existence of personal jurisdiction over Fellegy and a valid Agreement under Louisiana law prohibiting, among other things, post-employment competition in the defined territory and time; that Fellegy is working in a competitive position for a competing business in a territory nearly identical to that in his

---

[1] *Wechem, Inc. v. Evans*, 18-743 (La. App. 5 Cir. 5/30/19), 274 So. 3d 877, 890, *writ denied*, 2019-01176 (La. 10/15/19), 280 So. 3d 600.
[2] La. R.S. 23:921H.

Agreement with Deep South; and that Deep South carries on business in the restricted territory.

Under the applicable standard and law, Deep South has exceeded its burden at this early stage of

the litigation.

**III.    This lawsuit arises out of Fellegy's contacts with Louisiana.**

As this Court noted at the hearing, the authority upon which Fellegy seeks to rely is not in

the employment-related noncompete context. Under the applicable case law, the conclusion that

this dispute "arises out of" Fellegy's contacts with the state of Louisiana is inescapable.[3] Fellegy

pursued employment in the forum,[4] a condition of which was execution of the Agreement he

signed,[5] and he pursued business in the forum as part of his employment. The nature of this case,

breach of contract, arises from the very fact that he pursued employment in and worked in

Louisiana for a Louisiana employer and signed an Agreement pursuant to which he would owe

continuing obligations to a Louisiana employer, obligations which he has breached and continues

to breach.[6]

**IV.    Deep South has submitted sufficient evidence to demonstrate that it is "carrying on"
business in the entirety of the restricted territory.**

Deep South has gone above and beyond the requirement of making a *prima facie* showing

that it is conducting business in the restricted territory. In at least one Louisiana Court of Appeal

decision, a court found that the fact that the employer "specifically set forth in the Agreement,

which was admitted into evidence, the nine Louisiana parishes and one county in Mississippi

wherein it was conducting business and to which the non-competition/non-solicitation provisions

would apply" was "sufficient evidence to establish a *prima facie* showing that [the employer] was

---

[3] *See* Doc. 52, at ¶¶ 65-68; Docs. 34 and 42.
[4] Tr. 7:1-13.
[5] Tr. 14:8-13, 16:20-17:11, and 145:14-23..
[6] *See, e.g.*, *Vizant Techs., LLC v. Whitchurch*, 97 F. Supp. 3d 618, 631 (E.D. Pa. 2015)

conducting business in those parishes for purposes of establishing a right to a preliminary

injunction in [that] matter."[7] More than just referring to Exhibit A of the Agreement, Deep South

has submitted actual evidence that it (1) has customers that are located in the restricted territory;

(2) has performed jobs located in the restricted territory; and/or (3) that it directed its marketing

and business development efforts towards each of the parishes and counties in the restricted

territory.[8] This is more than sufficient to satisfy Deep South's evidentiary burden.

Fellegy's suggestion that Deep South does not know where it conducts business within the

territory[9] is a clear misrepresentation of Westerman's testimony wherein he explained that

although he could not list specific business from memory, he could do so if he consulted Deep

South's business records.[10] Westerman repeatedly testified that Deep South is conducting business

in every parish and county listed in Exhibit A to the Agreement and specifically pointed to

Plaintiff's Exhibit 104 and the underlying documentation cited therein in support of that

conclusion, as well as his knowledge as the founder and President of Deep South as to where Deep

South operates its business, as also reflected in Plaintiff Exhibit 100.[11]

Fellegy's current position is particularly disingenuous given that the work that he was hired

to and actually did perform on Deep South's behalf involved directing his efforts and activities to

---

[7] *Wechem* 274 So. 3d at 891.

[8] *See* Pl. Ex. 104 and underlying business records.

[9] *See* Doc. 51 at ¶ 82.

[10] *See* Tr. 220:17-20. A corporate representative is not required to have total recall or a photographic memory of all business records. Courts have routinely rejected such arguments in the context of corporate representative testimony about matters captured in business records and as to which a representative could not testify without a "photographic memory" or some other superhuman ability. *U.S. ex rel Fago v. M&T Mort. Corp.,* 23 F.R.D. 11, 2006 WL 845847 (D.C. Mar. 29, 2006 (finding corporate representative's testimony proper where representative, "[w]ithout a photographic memory," would have had to refer to records to be able to testify about the details of sixty-three different loans); *QBE Ins. Corp. v. Jorda Enterprises, Inc.,* 277 F.R.D. 676, 689-691, 2012 WL 266431 (S.D.Fla. 2012) (noting that corporate representative testimony under Rule 30(b)(6) is "not designed to be a memory contest" and finding that a corporation complied with its obligation to produce responsive information even when the representative deponent could not answer every question from memory).

[11] Tr. 161:21-24, 185:15-19, and 220:3-7. Notably, Plaintiff Exhibit 104 is simply a representative, not a comprehensive listing. *See* Tr. 184:11-185:19.

identifying customers and potential work opportunities in the restricted territory and beyond, marketing Deep South to such business opportunities, and actually soliciting work from and within the identified parishes and counties in the restricted territory; it was the whole purpose of his role with the company. And, it is this same role that he is currently filling with E2E as to the parishes and counties in all of the states in the restricted territory, with the possible exception of West Virginia.[12]

Fellegy's attempts to undermine Plaintiff Exhibit 104 are in vain. Establishing a likelihood of success on the merits does not require the mover to provide evidence of an actual sale in every single parish of a restrictive covenant. The Agreement directly tracks the language of the statute qualifying the restricted territory "so long as Employer carries on a like business therein." Therefore, the language should be interpreted in the same way that the courts in *Moore's* and *H2O* have interpreted that language from the statute to include marketing, advertising, and business development activities.[13] Fellegy suggests that this Court should ignore the parishes and counties identified in Plaintiff Exhibit 104 which are supported by Plaintiff Exhibits 37 and 77. However, both of these exhibits demonstrate efforts by Deep South to develop or pursue business in the parishes and counties identified therein. For instance, as to Plaintiff Exhibit 37, Fellegy admitted that the small cell construction Verizon opportunities were "opportunities that [he] tried to pursue for Deep South[,]"[14] thereby reflecting actual efforts to solicit business in those parishes and counties. Likewise, with respect to Plaintiff Exhibit 77, which identifies various parishes and counties who received stimulus money in 2021, email correspondence confirms that Deep South

---

[12] The evidence reflects, however, that E2E does business throughout the United States, such that it is engaged in business similar to that of Deep South in that territory as well, regardless of whether that particular state is within Fellegy's E2E territory.

[13] *Moores Pump & Supply, Inc. v. Laneaux*, 727 So.2d 695, 698 (La. App. 3 Cir. 1999); *H2O Hair, Inc. v. Marquette*, 960 So. 2d 250, 258-60 (La. App. 5 Cir. 5/15/07).

[14] Tr. 42:12-23.

employees, including Fellegy, were strategizing ways to target these parishes and counties and develop additional business.[15] This evidence demonstrates that Deep South is active in these territories.

Louisiana law recognizes that the determination of *where* an employer is "carrying on" "business" is dependent upon the *nature* of the business the employer conducts.[16] For instance, in *West Carroll Health System, L.L.C. v. Tilmon* cited by Fellegy, the Louisiana Second Circuit Court of Appeal acknowledged that, "[i]n view of the statutory history of [Louisiana Revised Statute § 23:921] and the nature of commercial business activity that generally does not abruptly end at the parish line of the principal location of a business, the lack of an actual business facility in [the parish at issue] in [that] case [was] not the only measure for the geographic test for the Statute."[17] In *Westlake*, the employer was a hospital located in Westlake Parish that serviced patients who came to it from neighboring parishes. The court affirmed the trial court's finding that the hospital carried on business in the parishes within the immediate service area of its facilities.[18] Here, given the nature of Deep South's business in the wireless telecommunications industry, the customers Deep South services go far beyond its neighboring parishes, as Deep South's business requires it to travel to those other parishes and counties to perform the work requested on its customers' behalf.

Fellegy argues that Deep South is not *currently* carrying on business in the parishes and counties in various states because the underlying documents submitted in support of Plaintiff Exhibit 104 are, in some cases, more than three years' old.[19] However, one of the cases cited by

---

[15] *See* Pl. Ex. 77 and 78.
[16] *Arthur J. Gallagher & Co. v. Babcock*, 339 F. App'x 384, 387 (5th Cir. 2009).
[17] No. 47,152 (La. App. 2 Cir. 5/16/12) 92 So.3d 1131, 1137-38.
[18] *Id.* at 1138.
[19] Doc. 51, at ¶ 79.

Fellegy recognizes that business conducted with customers as old as four years prior to the dispute is sufficient to show that the employer was currently engaged in a like business.[20] Fellegy does not cite to any legal authority imposing a timing requirement, however, because neither the statute nor the courts interpreting it requires one for determining whether an employer is carrying on or engaging in business. This fact is consistent with the notion that the nature of businesses and their products and/or services are varied, such that evidence of what constitutes carrying on or engaging in business must be considered on a case-by-case basis in light of the specific facts of what they do.

The nature of Deep South's business is to sell and install products and services in the wireless telecommunications industry. For customers like Ericsson, for which Deep South *currently* has a Master Services Agreement and *currently* maintains its telecommunications towers, the very nature of this work does not require daily, weekly, or even yearly maintenance activity on every single tower in every single location, many of which are in remote or rural areas. Likewise, a customer in this industry may not necessarily purchase or require installation or maintenance of large or small cell towers, microwave radios, fiber optic lines, and related services daily, weekly, or even yearly in every single location. A provider such as Deep South is carrying on or engaging in business in locations where it has sold products or services to ongoing customers without having to meet some arbitrary frequency or interval in every parish and county in its market. Fellegy does not even attempt to suggest to this Court what sort of frequency or timing should be required—because not only is there no authority for such requirement but because imposing one would effectively preclude entire industries and categories of businesses from being

---

[20] *West Carroll Health System, L.L.C.,* 92 So.3d at 1139 (evidence of providing health care services to customers in the parish at issue "in the prior four years" was properly recognized by the trial court as conducting a "like business" therein).

able to use restrictive covenants, leading to absurd results. For example, a company that provides environmental remediation for contaminated sites may not provide remediation in every single customer's location frequently given the nature of the work as environmental contamination may not occur every day, week, month, *etc.* As another example, companies that provide branding and website design services may only service customers periodically, less frequently than a company that sells daily-use household items to consumers such as paper goods and food items. Because the nature of what these companies do is different, imposing an arbitrary timing requirement for actual sales of products and services would have the effect of depriving some businesses of the ability to take advantage of restrictive covenants to protect their businesses. Fellegy's arguments ignore this practical concern and he makes no attempt to explain how this would work under the statute, because it would not.

**V.      Fellegy's employment with a direct competitor and assignment to a nearly identical territory as the restricted territory supports a likelihood of success on the merits that he is breaching his obligations not to compete with Deep South.**

The relevant inquiry for non-competition purposes is E2E's business, not attempted hairsplitting of Fellecy's activities and territory at E2E as compared to what he did for Deep South. Regardless, Fellegy's claim that his work for E2E is occurring primarily in Indiana,[21] is contradicted by his other testimony that he has "focused" his sales targets on Wisconsin, Illinois, Indiana, Ohio, Michigan, Kentucky, Tennessee" and North Carolina,[22] as well as his testimony that his assigned territory includes 15 of the 16 states identified in the Agreement.[23]

Although Fellegy claims that he has been told not to solicit business in Louisiana, he indicated no reason was given as to why he should not solicit business in the territory to which he

---

[21] Doc. 51, at ¶ 63.
[22] Tr. 110:11-17
[23] Tr. 5:16-6:17 and 134:10-135:16.

has been assigned[24] and there is no evidence to suggest that this instruction was indefinite or that there is anything stopping E2E from changing this instruction at any time. This nonbinding representation does not adequately protect Deep South's interests or enforce the Agreement's terms. Moreover, this testimony conflicts with Fellegy's earlier testimony that he was "trying" to solicit business in Louisiana,[25] and therefore, his claim lacks credibility. Injunctive relief is warranted where, as here, breach of the Agreement is imminent. Even if it is true that Fellegy has been asked not to solicit business in Louisiana and the Gulf Coast, this request does not prevent Fellegy from engaging in competitive activities in the remaining dozen or more states identified in the Agreement, nor does it adequately prevent Fellegy from resuming competitive activities at any time. The evidence warrants issuance of a TRO to make sure that does not happen.

**VI.    Deep South's efforts to obtain voluntary compliance after learning of Fellegy's breach and before filing suit does not equate to "delay" and Fellegy cannot complain about delay caused by his representations to Deep South that he would try to work something out with E2E, which he never did.**

Fellegy's claim that he never admitted he was in violation of the Agreement lacks credibility given his ongoing breach of the non-compete (by continuing to work for a competitor in an overlapping territory with DSC) and continued possession of confidential customer information.

Fellegy strung Westerman along representing that he would try to work out a deal between E2E and Deep South, but ultimately refused to do that and, as a result, counsel had to get involved. He was then sent a legal cease and desist letter, in response to which he conveyed that he did not intend on abiding by the terms of the Agreement. Thereafter, Deep South moved for a temporary restraining order. Fellegy caused the delay by misleading Deep South and insisting, contrary to the

---

[24] Tr. 137:18-138:2.
[25] Tr. 110:18-20.

facts, that there was no problem and that he was not violating the Agreement, which the evidence shows to be false.

Thus, Deep South has a reasonable basis for the time that elapsed between Deep South's first notice of Fellegy's employment with E2E and the date Deep South moved for injunctive relief. The cases Fellegy relies upon to argue that the alleged "delay" in Deep South's pursuit of injunctive relief undermines its claim that it has been suffering immediate and irreparable harm are inapposite. In *Wireless Agents, LLC v. T-Mobile USA, Inc.*, the plaintiff waited an entire year after discovering the overlap between its and defendant's patents before filing its patent infringement lawsuit and then waited another year after that before moving for injunctive relief.[26] In *SMH Enterprises, L.L.C., v. Krispy Krunchy Foods, L.L.C.*, there is no explanation provided for the plaintiff's delay of "over a month" prior to filing its TRO.[27] Here, after filing its Verified Complaint, Deep South sent a cease and desist letter to Fellegy and made attempts to secure Fellegy's compliance without need of court intervention. It was only after Fellegy failed to deliver on his suggestion that the matter could be resolved and then ignored Deep South's efforts to follow up with him that Deep South determined its efforts were in vain and moved forward with seeking injunctive relief. In no way does Deep South's conduct reflect a lack of diligence on its part.

## VII.    Conclusion

Holding Fellegy to the promises he made to Deep South in the Agreement will not prevent him from earning a livelihood. In fact, he can continue working in his current home office in Indiana for his current employer and can work in any of the thousands of counties throughout the 35 and vast majority of states that are outside the scope of his Agreement with Deep South. Without such relief, Fellegy will continue selling competing products and services to utilities in areas in

---

[26] No. 3:05-cv-94-D, 2006 WL 1540587, at *4-5 (N.D. Tex. June 6, 2006).
[27] 2022 WL 137051 *7 (E.D. La. Jan. 14, 2022).

which Deep South conducts business as specified in the Agreement, all to Deep South's detriment. To date, he has made no effort whatsoever to return Deep South's confidential customer contact information, which he continues to use in competition with Deep South. The Court should grant the TRO sought by Deep South accordingly and set a hearing on Deep South's request for a preliminary injunction pending trial on the merits.

BY ATTORNEYS:

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

*s/Jennifer L. Anderson*
Jennifer L. Anderson (La. Bar No. 23620)
450 Laurel Street, 21st Floor
Baton Rouge, Louisiana 70801
Telephone: (225) 381-7020
Facsimile: (225) 343-3612
Email: jlanderson@bakerdonelson.com

AND

Emily Olivier Kesler (La. Bar No. 37747)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5927
Facsimile: (504) 585-6925
Email: ekesler@bakerdonelson.com

***Counsel for Deep South Communications L.L.C.***

## CERTIFICATE OF SERVICE

I hereby certify that service of a copy of the foregoing pleading or paper on the Defendant shall be made in the manner and time as may be required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

*/s/Jennifer L. Anderson*

Jennifer L. Anderson

11