**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| DEEP SOUTH COMMUNICATIONS L.L.C., | ) ) | Case No. 3:22-cv-00598-JWD-EWD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PETER M. FELLEGY, | ) | |
| | ) | |
| Defendant. | ) | |

---

**AMENDED AND SUPPLEMENTAL VERIFIED COMPLAINT
FOR INJUNCTIVE AND OTHER RELIEF**

---

Now into Court, through undersigned counsel, comes Plaintiff, Deep South Communications L.L.C. ("Plaintiff" or "Deep South"), and in this Verified Complaint for Injunctive and Other Relief ("Complaint") against Defendant, Peter M. Fellegy ("Defendant" or "Fellegy"), avers as follows:

**<u>PARTIES</u>**

1. Plaintiff, Deep South, is a Louisiana limited liability company with its principal place of business located at 20331 Highland Rd., Baton Rouge, Louisiana 70817. Rhett Westermann is a natural person who is the sole member of Deep South and he is domiciled in East Baton Rouge Parish, Louisiana, and is a citizen of the State of Louisiana. Deep South is a telecommunications contractor specializing in microwave communications design and construction, fiber optics communications, distributed antenna systems, intelligent transportations systems, communications tower build-outs and maintenance, cellular and microwave maintenance and build-outs.

2.      Defendant, Fellegy, is a natural person of the full age of majority who, upon information and belief, is domiciled in Indianapolis, Indiana.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.  This matter is a civil action brought by Plaintiff, Deep South, a citizen of the state of Louisiana, against Defendant Fellegy, a citizen of the state of Indiana.  The matter in controversy exceeds the sum or value of $75,000, exclusive of attorney fees and costs.

4.      The Court also has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, as Deep South presents claims arising under federal law, specifically the Defend Trade Secrets Act, 18 U.S.C. § 1836 (the "DTSA") and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* (the "CFAA"), as well as related state law claims that arise from the same transactions and occurrences as the claims arising under federal law. The Court has federal questions jurisdiction over Deep South's claims under federal law. 28 U.S.C. § 1331. The Court has supplemental jurisdiction over such state law claims. 28 U.S.C. § 1367.

5.      A claim for injunctive relief has its own independent value, separate and apart from a claim for damages, attorney fees, and costs. The value of a claim for injunctive relief is "the value of the right to be protected or the extent of the injury to be prevented." *Farkas v. GMAC Mortg., LLC*, 737 F.3d 338, 341 (5th Cir. 2013). Fellegy has breached and continues to breach his Confidentiality and Restrictive Covenant Agreement ("Agreement") with Deep South, which has caused Deep South significant revenue losses. The Agreement is attached hereto as **Exhibit 1**.

6.      The Court has personal jurisdiction over Fellegy, and venue is proper because Fellegy signed the Agreement in Baton Rouge, reported to and was based out of Baton Rouge during his employment with Deep South, and agreed that Louisiana law exclusively would govern

the Agreement. Further, Deep South has suffered and continues to suffer harm in Louisiana and within the district of this Court. *See* 28 U.S.C. § 1391(b).

**FACTS**

**A.    Fellegy's Relationship and Agreement with Deep South**

7.      Deep South is a wireless technologies services company that was founded and remains headquartered in Baton Rouge, Louisiana ("Westerman").

8.      Deep South operates throughout the state of Louisiana and throughout the United States.

9.      Deep South hired Fellegy on or about May 17, 2017, as its Vice President of Business Development.

10.    In October of 2020, Fellegy was demoted to Manager of Business Development, a role in which Fellegy served until his resignation on February 22, 2022.

11.    Although Fellegy was able to perform his duties and work remotely during his employment with Deep South, his position was based out of Deep South's headquarters in Baton Rouge, Louisiana, and he reported directly to the President of Deep South at all times.

12.    Fellegy regularly traveled to Louisiana during his employment with Deep South, approximately every one to two months, to attend in-person meetings with the President and others at Deep South's headquarters.

13.    In his roles as Vice President and Manager of Business Development, Fellegy was responsible for developing and maintaining relationships and sales for the benefit of Deep South. Fellegy also generated sales and business development leads, provided and compiled feedback regarding clients in addition to helping create overall business development strategies.

14.     Fellegy had access to and received from Deep South non-public, confidential information related to its business, including existing and prospective customer names, addresses, phone numbers, and other similar information.

15.     Fellegy also had access to and received from Deep South non-public, confidential information related to its wireless technology services business, including its business relationships, financial performance, strategies for conducting business, price lists, sales, promotional, and marketing strategies and information, and other trade secrets.

16.     Fellegy held a position of trust with Deep South.

17.     Early on during Fellegy's employment with Deep South, Fellegy brought and attempted to share with Westerman documents, such as customer quotes, that belonged to Fellegy's former employer, Pinpoint Wireless. Westerman advised that he did not want to see any documents from Fellegy's prior employer and advised Fellegy that Deep South would not use any such documents or information.

**B.     Fellegy's Agreement with Deep South.**

18.     In connection with his employment, Fellegy entered into the Confidentiality and Restrictive Covenant Agreement with Deep South.  A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

19.     On or about May 18, 2017, Fellegy met with Deep South's Office Manager, Christina Springer, who informed him that as a condition of his employment he was required to execute the Agreement.

20.     Fellegy signed the Agreement effective May 18, 2017.

21.     In the Agreement, Fellegy expressly acknowledged that he had access "to existing and new valuable information relating to the business and clients of [Deep South] that is nonpublic,

confidential, proprietary, and/or a trade secret and would be particularly valuable to [Deep South's] competitors." Exhibit 1, at ¶ 3.

22.    In the Agreement, Confidential Information is defined to include:

> [B]usiness plans and strategies; business processes; research and development; training and other operational methods and techniques; manuals, policies, and procedures; business records and files; business proposals; client lists; client information; client source lists; purchasing methods; pricing; sales plans and activities; customer service strategies or activities; marketing and other technical data and studies; employment and other personnel data; financial plans, reports, and strategies; profits and losses; budgets; projections; price lists; sales, promotional, and marketing strategies and information; proprietary computer software and data; and internal correspondence, notes, and memoranda relating to any of the foregoing….

*Id.*

23.    Deep South's Confidential Information has independent economic value because it is not generally known to the public or its competitors.

24.    Deep South takes reasonable steps to protect its Confidential Information. With respect to Fellegy, Deep South required that he enter into the Agreement, and reminded him of the obligations owed to Deep South under the Agreement after his resignation.

25.    In the Agreement, Fellegy specifically agreed that "during and after the end of [his] employment relationship with [Deep South], [he] will not communicate, divulge, or make available to any person or entity…any Confidential Information…." See Exhibit 1, at ¶ 4.

26.    Fellegy's agreement to safeguard and not misappropriate Confidential Information, as defined in the Agreement, is perpetual.

27.    In the Agreement, Fellegy agreed that, during his employment and for a period of two years thereafter, he would not directly or indirectly "engage in any business that directly or indirectly competes with or is similar to" Deep South's business within the defined territory. Exhibit 1 at ¶ 5(B).

28.     In the Agreement, Fellegy also agreed that, during his employment and for a period of two years thereafter, he would not directly or indirectly, within the defined territory, "solicit, request, seek, or obtain" the business of Deep South's clients for his benefit or any entity other than Deep South. *Id.* at ¶ 5(C).

29.     In the Agreement, Fellegy further agreed that, during his employment and for a period of two years thereafter, he would not directly or indirectly, within the defined territory, "solicit, request, influence, induce or otherwise encourage" any of Deep South's clients to restrict, cease or limit doing business with Deep South. *Id.* at ¶ 5(D).

30.     Fellegy performed business development duties on behalf of Deep South in the state of Louisiana and elsewhere the United States.

31.     In the Agreement, Fellegy agreed to abide by the restrictive covenants within the territory defined in the Agreement to include the "parishes, counties, and municipalities" specified in Exhibit A to the Agreement. *Id.* at ¶ 5(A).

## C.     Fellegy's Misappropriation of Deep South's Trade Secrets and Confidential Information

32.     Deep South uses protected computers connected to the internet for its commercial wireless technology services business, including, but not limited to laptops, cell phones, and servers.

33.     Deep South maintains a Google account which is password protected with login procedures that restrict access to certain employees by assigning member email accounts.

34.     During his employment with Deep South, Fellegy was assigned a member email account on Deep South's Google account, at the email address [peter@deepsouth.com](mailto:peter@deepsouth.com) ("Deep South Email").

35.     Information secured on Deep South's Google account includes financial records and data, compilations of customer data, lists, preferences, project proposals, project lists and sales leads or prospective customer lists, among other records.

36.     In light of Fellegy's prior misappropriation of Pinpoint's trade secrets and/or other confidential information, Deep South reasonably believes that prior to Fellegy's departure from Deep South, he transferred documents and information containing Deep South's trade secrets and/or Confidential Information from his Deep South Email to one or more personal email accounts or other personal devices without Deep South's authorization.

37.     Deep South also maintains a password protected server, on which similar information and documents are securely stored.

38.     Upon information and belief, Fellegy transferred documents and information containing Deep South's trade secrets and/or Confidential Information from Deep South's secure server to one or more personal devices without Deep South's authorization and/or removed such materials in electronic and/or physical format.

39.     Leading up to the separation of his employment, Fellegy signed a "Separation Checklist & Acknowledgment" by which he acknowledged that he returned certain documents, information, and physical hardware to Deep South and also that he deleted "any Deep South Communications documents, files, and/or information from [his] personal computer/laptop/phone" including "removing all software applications that were provided during the course of [his] employment and all documents either created by [him] or any staff of Deep South Communications." *See* Fellegy Separation Checklist & Acknowledgment, dated Feb. 14, 2022, attached hereto as Exhibit 2.

40.     Although Deep South typically asks employees to use a company-provided cell phone for work purposes, Fellegy requested, and Deep South agreed, to allow Fellegy to use his personal cell phone for work purposes. Deep South conditioned this allowance on Fellegy's use of certain Google applications to segregate and safeguard work data stored on his cell phone separately from his personal applications. However, rather than use the Deep South Google Contacts application required by Deep South for storing business contacts, Fellegy improperly intermingled these business contacts with his personal contacts on his cell phone.

41.     Pursuant to the acknowledgment Fellegy signed at the separation of his employment, Fellegy should have returned to Deep South all business contacts developed and/or obtained as a result of his employment with Deep South, and then he should have deleted them from his cell phone.

42.     Westerman specifically demanded that Fellegy delete all business contacts Fellegy developed and/or was connected with through his employment with Deep South.

43.     Fellegy did not delete the business contacts he developed during his employment from his cell phone, and upon information and belief, still has not done so.

44.     Fellegy has used Deep South's business contacts since his employment with Deep South ended.

45.     Upon information and belief, Fellegy has communicated, disclosed, or made available Deep South's trade secrets and/or Confidential Information without Deep South's authorization, including to Fellegy's current employer, End 2 End Technologies ("E2E"), E2E, other E2E employees, and/or customers or prospective customers of Deep South or E2E.

**D.      Fellegy's Conduct in Violation of the Agreement and Other Applicable Law**

46.      A few months after Fellegy's February 22, 2022, resignation from Deep South, Fellegy obtained employment with E2E in a position directly involved in business development on behalf of E2E.

47.      E2E holds itself out as a network infrastructure specialist engaged in the business of consulting, engineering, and executing comprehensive solutions for our clients throughout the United States.

48.      E2E competes directly with Deep South throughout the United States.

49.      Fellegy, as an employee of E2E, is competing with Deep South throughout the United States in breach of the Agreement.

50.      For instance, one of the customers with whom Fellegy developed a business relationship on behalf of Deep South over the course of his employment with Deep South is General Electric Co. ("GE").

51.      Prior to Fellegy's exit from Deep South, GE expressed a desire to make Deep South its account holder for its wireless product line for the State of Arkansas account.  However, after Fellegy's departure, Deep South discovered that E2E, Fellegy's new employer, would continue to be GE's account holder for its product line in Arkansas.

52.      Upon information and belief, Deep South has been deprived of or lost similar business opportunities because of Fellegy's competition with Deep South.

53.      Since his departure from Deep South, Fellegy has had direct contact with GE's representative, whom he knew only through and as a result of his position with Deep South. While working for and on behalf of E2E, Fellegy has also contacted at least one other business contact with whom he established a relationship through his position with Deep South and would not have otherwise known save for his employment with Deep South.

54.    Upon information and belief, Fellegy has contacted and solicited business from other similar business contacts, customers, and prospective customers of Deep South since his employment with Deep South ended. The losses caused by Fellegy's disregard for his non-compete are negatively impacting Deep South's revenues and will continue to do so.

**E.    Fellegy's Admission that His Conduct Violates the Agreement and Refusal to Cease and Desist**

55.    Deep South's President, Rhett Westerman, contacted Fellegy on or about June 6, 2022, upon learning of Fellegy's employment with E2E.

56.    Westerman reminded Fellegy of his Agreement and obligations to Deep South and informed him he was in violation of the Agreement.

57.    During the June 2022 conversation, Fellegy acknowledged that he was in violation of the Agreement and indicated that he would leave E2E if necessary.

58.    Fellegy remains employed by and working for E2E and, thus, continues to violate the Agreement.

59.    Deep South representatives have subsequently attempted to contact Fellegy to obtain his compliance with the Agreement to no avail.

60.    Fellegy's conduct in admitting his violation of the Agreement, stating that he will comply and cease working for E2E if necessary, then failing to do so and dodging Deep South's attempts to contact him make it clear that Fellegy has no intention of complying with his obligations under the Agreement.

61.    Fellegy continues to violate the Agreement.

**F.      Fellegy's Continued Improper Conduct Following the Filing of the Verified Complaint**

62.      On November 2, 2022, this Court held a hearing of certain preliminary motions filed in this matter, including Deep South's Motion for Temporary Restraining and Fellegy's Motions to Dismiss for Failure to State a Claim and for Lack of Personal Jurisdiction.

63.      As of the November 2 hearing, Fellegy acknowledged that he still had not returned to Deep South or deleted from his cell phone the business contacts he developed and/or obtained as a result of his employment with Deep South.

64.      Following the November hearing, Westerman discovered that Fellegy had saved documents from his prior employers on his Deep South laptop, which he intermingled with Deep South documents. For example, Westerman discovered a professional services subcontract agreement between Fortune Wireless (one of Fellegy's former employers) and Black & Veach (a customer of both Fortune Wireless and Deep South) in a "Black & Veach" folder containing Deep South's documents related to this customer.

65.      On December 2, 2022, Westermann received an automated notification from Zycus Supplier Network ("Zycus") of an attempt to login and reset the password associated with a Deep South account that used Fellegy's former Deep South Email as the recovery email address.

66.      Zycus is a third-party procurement platform that companies use to on-board vendors and conduct other business.  Businesses, such as Deep South, must be invited to create an account with Zycus and must complete various paperwork, including a confidentiality agreement, in order to participate on the platform. Deep South uses Zycus to bid on customer jobs. One of the bidding processes available on Zycus is in an auction format which allows participants to see the quotes of other companies in real time.

67.    No current Deep South employee attempted to access Deep South's Zycus account using Fellegy's former credentials. In fact, no Deep South employee possesses Fellegy's former credentials in this regard.

68.    Upon information and belief, Fellegy attempted to access this account, which he did not have Deep South's authorization to do.

**G.    Deep South's Right to Injunctive Relief and Damages**

69.    The Agreement provides for injunctive relief in the event of Fellegy's violation, stating in pertinent part as follows

> *[Fellegy] acknowledges that a breach or threatened breach of any of [his] obligations would cause immediate and irreparable harm to [Deep South] for which an adequate monetary remedy does not exist. [Fellegy] agrees that, in the event of any such breach or threatened breach, [Deep South] shall be entitled to temporary, preliminary, and/or permanent injunctive relief restraining [Fellegy] from such breach or threatened breach, and/or compelling or ordering [Fellegy's] compliance with this Agreement, without the necessity of proof of actual damage or the posting of any security or bond, except as required by any non-waivable, applicable law. Nothing herein, however, shall be construed as prohibiting [Deep South] from pursuing any other remedy at law or in equity to which [it] may be entitled in the event of a breach or threatened breach by [Fellegy], including without limitation the recovery of damages, penalties, attorneys' fees, lost profits, costs, and expenses incurred by [Deep South] as a result.*

*See* Exhibit 1 at ¶ 6.

70.    Fellegy's conduct, as described above, is in violation of the Agreement.

71.    Fellegy's violations have caused and will continue to cause Deep South injury and damages.

72.    Fellegy's violations have further caused and will continue to cause irreparable harm to Deep South for which no adequate monetary remedy exists.

## CAUSES OF ACTION AND CLAIMS FOR RELIEF

### COUNT 1: BREACH OF CONTRACT

**Fellegy Breached Paragraph 5(B) of the Agreement by
Engaging in Competitive Activities**

73.     Deep South reasserts and re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

74.     Fellegy entered into the Agreement.  *See* Exhibit 1.

75.     The Agreement specifically prohibits Fellegy from "engag[ing] in any business that directly or indirectly competes with or is similar to the business of" Deep South for a period of two years following the end of his employment with Deep South.  *See id.* at ¶ 5(B).

76.     The Louisiana statute governing non-competition agreements unambiguously directs that "every contract or agreement, or provision thereof, which meets the exceptions as provided in this section, *shall be enforceable*."  La. R.S. 23:921(A)(1) (emphasis added).

77.     Under Louisiana law, a non-competition agreement meets the exception in the statute and "shall be enforced" where the employee agrees "to refrain from carrying on or engaging in a business similar to that of the employer . . . within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment."  La. R.S. 23:921(A)(1) and (C).

78.     The Agreement contains a valid temporal limitation period of two years after Fellegy's employment terminated.

79.     Fellegy resigned his employment effective February 22, 2022, such that the duration of the non-competition obligation runs for two years thereafter, or on and through February 22, 2024.

80.     The Agreement contains a valid geographic restriction, which is specifically defined in Exhibit A to the Agreement to identify each applicable parish and county by name.

81.     Deep South markets its wireless technology services to, prospects for, services, and/or engages in wireless technology business with customers in every parish and county identified in Exhibit A to the Agreement.

82.     The Agreement is enforceable against Fellegy.

83.     Following his employment with Deep South, Fellegy obtained employment as an Account Director with E2E, a wireless technology services business, which directly competes with Deep South

84.     Fellegy is engaging in and has continued to engage in competitive activity for his and E2E's benefit since his resignation from Deep South in the restricted geographic territory.

85.     Fellegy violated Paragraph 5(B) of the Agreement pertaining to restriction on competition.

86.     Fellegy's actions in violation of Paragraph 5(B) of the Agreement have caused Deep South substantial losses as described herein, which losses are ongoing.

87.     Paragraph 5(B) of the Agreement pertaining to non-competition is an obligation not to do.

88.     Under the Louisiana statute governing non-competition agreements, proof of irreparable injury is not necessary to obtain injunctive relief, which "shall" be ordered upon proof of the obligor's failure to perform.  La. R.S. 23:921(H).

89.     Nonetheless, Fellegy's continued breach of Paragraph 5(B) of the Agreement has caused and will continue to cause irreparable injury to Deep South for which there is no adequate remedy at law.

**Fellegy Breached Paragraph 5(C) of the Agreement by
Soliciting Deep South's Clients**

90.    Deep South reasserts and re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

91.    Fellegy entered into the Agreement.  *See* Exhibit 1.

92.    The Agreement specifically prohibits Fellegy from soliciting, requesting, seeking, or obtaining the business of any person or entity that was Deep South's client during Fellegy's employment with Deep South and/or is Deep South's client during the two years following his employment with Deep South for a period of two years post-employment in specified parishes and counties in the United States. *See id.* at ¶ 5(C)

93.    The Agreement also specifically prohibits Fellegy from inducing such customers to leave and diverting such customers from doing business with Deep South, and it prohibits Fellegy from attempting to induce customers to leave and diverting them from doing business with Deep South during the specified time and geographic territory. *See id.*

94.    The Louisiana statute governing non-solicitation of customer agreements unambiguously directs that "every contract or agreement, or provision thereof, which meets the exceptions as provided in this section, *shall be enforceable.*" La. R.S. 23:921(A)(1) (emphasis added).

95.    Under Louisiana law, a non-solicitation agreement meets the exception in the statute and "shall be enforced" where the employee agrees "to refrain from . . . soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment." La. R.S. 23:921(A)(1) and (C).

96.    The Agreement contains a valid temporal limitation period of two years after Fellegy's employment ends.

97.    Fellegy resigned his employment effective February 22, 2022, such that the duration of the non-solicitation obligation runs for two years thereafter, or on and through February 22, 2024.

98.    The Agreement contains a valid geographic restriction, which is specifically defined in Exhibit A to the Agreement to identify each applicable parish or county by name.

99.    Deep South markets its wireless technology services to, prospects for, services, and/or engages in wireless technology business with customers in every parish and county identified in Exhibit A to the Agreement.

100.    The Agreement is enforceable against Fellegy.

101.    Upon information and belief, Fellegy has solicited, induced, and diverted Deep South customers and their business for his and E2E's benefit since his resignation, including the business of GE.

102.    Upon information and belief, Fellegy used his knowledge of Deep South customer data, addresses, phone numbers, and other similar information to solicit their business for himself and/or E2E.

103.    Upon information and belief, Fellegy used his knowledge of Deep South's established business practices to solicit Deep South's clients' business for himself and/or E2E.

104.    Fellegy violated Paragraph 5(C) of the Agreement pertaining to the non-solicitation of customers.

105.    Upon information and belief, Fellegy's actions in violation of Section 5(C) of the Agreement have caused Deep South to lose business, including that of GE.

106.    Paragraph 5(C) of the Agreement pertaining to non-solicitation of customers is an obligation not to do.

107.    Under the Louisiana statute governing non-solicitation of customer agreements, proof of irreparable injury is not necessary to obtain injunctive relief, which "shall" be ordered upon proof of the obligor's failure to perform.

108.    Nonetheless, Fellegy's continued breach of Paragraph 5(C) of the Agreement has caused and will continue to cause irreparable injury to Deep South for which there is no adequate remedy at law.

**Fellegy Breached Paragraph 4 of the Agreement by Communicating, Divulging, or Making Available Deep South's Confidential Information without Deep South's Authorization**

109.    Deep South reasserts and re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

110.    Fellegy held a position of trust with Deep South.

111.    Fellegy had access to and received from Deep South non-public, confidential information related to its wireless technology services business, including existing and prospective client names, addresses, phone numbers, and other similar information.

112.    Fellegy agreed that he would not "communicate, divulge, or make available to any person or entity (other than Employer, its clients, or other persons or entities expressly authorized by Employer to receive such information) any Confidential Information…." *See* Exhibit 1 at ¶ 4.

113.    Fellegy acknowledged that Deep South's Confidential Information is its exclusive property that would be particularly valuable to Deep South's competitor's.

114.

115.    Upon information and belief, including Fellegy's prior history of disclosing a former employer's customer contracts to Deep South and his placement of his former employer's

17

documents on a Deep South laptop, Fellegy violated Section 4 of his Agreement with Deep South by communicating, disclosing or making available Deep South's Confidential Information to E2E, E2E's employees, customers and prospective customers of E2E or Deep South, or others.

116.    Upon information and belief, Fellegy's use of Deep South's Confidential Information has caused or will cause Deep South to lose business.

117.    Deep South has suffered and will continue to suffer irreparable harm as a result of Fellegy's violations of Section 4 of the Agreement for which there is no adequate remedy at law.

### COUNT II: VIOLATION OF DEFEND TRADE SECRETS ACT

118.    Deep South reasserts and re-alleges all preceding paragraphs of this Amended and Supplemental Verified Complaint as if fully set forth herein.

119.    Deep South's client contact identities, its pricing information, its bid proposals, project progress reports and information, sales strategies, work orders, client lists, project plans and processes, and all of the other confidential business information described in this Complaint, constitute trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1839(3) (the "DTSA").

120.    In order to protect those trade secrets, Deep South requires its employees to agree to abide by the non-disclosure provisions of the Agreement, requires password protection for information stored in electronic format, and restricts access to that information to only those employees who have reason to access the information for business reasons, among other things.

121.    The trade secrets have actual and potential economic value by not being generally known, as having that information remain secret allows Deep South to competitively price its services, develop proposals specific to its customers, and to have direct contact with its customer – things that third parties who lack such information cannot accomplish.

122.    Because Deep South conducts business throughout the country, including over the phone, on the internet, and via mail service, these trade secrets were and are frequently used by Deep South in interstate commerce.

123.    Fellegy's disclosure or use of Deep South's trade secrets such as its client contacts, project proposals, and customer preferences would enable Fellegy or those to whom he made such disclosures to underbid Deep South for projects and to create competing project proposals without having to expend the time, effort, expense, or resources that Deep South expended in developing a customer-tailored approach to business with its customer base.

124.    Fellegy knowingly and willfully misappropriated Deep South's trade secrets within the meaning of 18 U.S.C. § 1839(5). Fellegy knew he had to a duty to maintain the secrecy of and return Deep South's trade secrets. Despite this knowledge, Fellegy converted Deep South's trade secrets, including retaining and using its business contacts following his separation from Deep South. Upon information and belief, Fellegy converted additional trade secrets from his laptop, Deep South Email, and/or Deep South's server for the purpose of using and disclosing those trade secrets for his own benefit and for the benefit of his new employer, E2E. Deep South did not consent to any of Fellegy's actions in this regard.

125.    Fellegy's conduct with respect to Deep South's trade secrets as alleged herein violates the DTSA.

126.    As a direct and proximate result of Fellegy's violations of the DTSA, Deep South has been damaged in an amount to be proven at trial. Deep South has further suffered and will continue to suffer irreparable harm for which there is no adequate monetary remedy.

127.    Deep South, as the owner of the trade secrets Fellegy misappropriated, is entitled to bring a private civil action against Fellegy for injunctive relief, for damages and/or unjust enrichment resulting from Fellegy's use of Deep South's trade secrets.  *See* 18 U.S.C. § 1836. Furthermore, Fellegy continued his wrongful conduct in spite of the Agreement and notice from Deep South demanding he return and delete the misappropriated trade secrets. Thus, Fellegy's conduct as alleged herein is willful and malicious, entitling Deep South to an award of exemplary damages.  *See* 18 U.S.C. § 1836(b)(3)(C).

## COUNT III: VIOLATION OF LOUISIANA UNIFORM TRADE SECRETS ACT

128.    Deep South reasserts and re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

129.    The confidential and proprietary business information Fellegy obtained from Deep South and improperly used for his own benefit, and that, upon information and belief, Fellegy improperly disclosed for his own benefit or for the benefit of his new employer, E2E, discussed in detail in this Complaint, constitutes trade secrets under the Louisiana Uniform Trade Secrets Act, La. R.S. § 51:1431, et seq. (the "LUTSA").

130.    Fellegy, by virtue of his positions with Deep South as Vice President and Manager of Business Development, and by acknowledging and agreeing to comply with the confidentiality provisions in the Agreement, knew or had reason to know that he owed a duty to Deep South to maintain the secrecy of, and not misappropriate, such proprietary and confidential information of Deep South.

131.    Upon information and belief, Fellegy has disclosed and/or is using Deep South's trade secrets in his employment with E2E, for his own and E2E's benefit, thereby engaging in conduct which constitutes actionable misappropriation under the LUTSA. For instance, Fellegy has used the business contacts he developed during his employment with Deep South which he

improperly retained on his cell phone since his separation of employment. Upon information and belief, Fellegy has used or is using Deep South's trade secrets to solicit Deep South's customers, to induce such customers to reduce their business with Deep South, and to divert such customers and/or their business from Deep South for Fellegy's own benefit and/or for the benefit of E2E.

132.    Given Fellegy's ongoing refusal to return Deep South's trade secrets (such as the business contacts stored on his cell phone), despite his obligation to do so, and his continued and willful use and/or disclosure of those trade secrets for his own benefit, it is clear that Fellegy has acted willfully and maliciously in misappropriating and using Deep South's trade secrets.

133.    Deep South has incurred damages as a direct and proximate result of Fellegy's misappropriation and use of its trade secrets and is therefore entitled to a judgment from this Court, in Deep South's favor, and against Fellegy, in the full amount of such damages, to be proven at trial, plus prejudgment interest on those amounts. *See* La. R.S. § 51:1433.

134.    In addition, because Fellegy has acted willfully and maliciously in misappropriating, using, and disclosing Deep South's trade secrets, Deep South is entitled to its reasonable attorney's fees pursuant to Louisiana Revised Statute § 51:1434.

135.    Furthermore, as a direct and proximate result of Fellegy's misappropriation of Deep South's trade secrets, Deep South has suffered and will continue to suffer irreparable injury for which it has no adequate monetary remedy.

136.    Deep South is further entitled to injunctive relief to ascertain the extent of the data theft and to prevent Fellegy and/or other third parties from gaining any further benefit from the unlawful possession or use of Deep South's trade secrets.

**COUNT IV: VIOLATION OF COMPUTER FRAUD AND ABUSE ACT**

137.    Deep South reasserts and re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

21

138.    As Fellegy held a position of trust with Deep South, he was granted access to Deep South's secure computers, password-protected Google account and associated shared network, email system, software, and hardware, and other related secure accounts, which were connected to the internet and/or otherwise used in interstate commerce. The systems and devices discussed herein constitute "protected computers" within the meaning of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* (the "CFAA).

139.    Upon information and belief, Fellegy intentionally accessed one or more protected computers without authorization and/or in excess of his authorization and obtained information, including Deep South's trade secrets and other Confidential Information.

140.    Upon information and belief, Fellegy attempted to access and reset the password for Deep South's Zycus account months after the separation of his employment and the institution of this lawsuit.

141.    Fellegy's acts and conduct as described herein are in violation of the CFAA. *See* 18 U.S.C. § 1030(a)(2)(C).

142.    As a direct and proximate result of Fellegy's acts and conduct in violation of the CFAA, Deep South has suffered and/or will suffer damages, which meet or exceed $5,000 in value as required by § 1030(c)(4)(A)(i).  For example, Deep South has expended and will continue to expend time, resources, and money to discover and investigate the scope of Fellegy's unlawful conduct, which may necessitate the use of a forensic examiner to review Fellegy's and other computers, electronic devices, and data accounts.

143.    Deep South has further suffered and will continue to suffer irreparable harm for which there is no adequate monetary remedy as a result of Fellegy's violation of the CFAA.

## COUNT V: INJUNCTIVE RELIEF

144.    Deep South reasserts and re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

145.    Fellegy breached his Agreement with Deep South by engaging in competition with Deep South.

146.    Fellegy breached his Agreement with Deep South by soliciting, inducing, diverting, or otherwise encouraging Deep South's clients to transfer their business to E2E, a competitor.

147.    Fellegy breached his Agreement with Deep South by using Deep South's Confidential Information regarding customers and its business for his own benefit and for the benefit of E2E, a competitor.

148.    Fellegy violated the LUTSA and the DTSA by misappropriating Deep South's trade secrets.

149.    Fellegy violated the CFAA by intentionally accessing Deep South's Electronic Systems without authorization and/or by exceeding his authorization and obtaining trade secrets and other Confidential Information therefrom.

150.    Fellegy's actions in violation of the Agreement, the DTSA, the LUTSA, and the CFAA have caused and are continuing to cause irreparable harm to Deep South for which there is no adequate remedy at law.

151.    Deep South is substantially likely to succeed on the merits of its claims against Fellegy.

152.    The irreparable injury that Deep South has suffered and will continue to suffer if injunctive relief is not granted outweighs any potential harm to Fellegy.

153.    Granting injunctive relief to Deep South will not disserve the public interest.

## **PRAYER FOR RELIEF**

Plaintiff, Deep South Communications L.L.C., prays that after all due proceedings the Court find in favor of Deep South and against Defendant, Peter Fellegy, on all counts and grant the following temporary, preliminary, and permanent injunctive relief, and award all monetary damages and other legal and equitable relief appropriate under the law and circumstances, including an award of attorney fees and costs, against Defendant, Fellegy, more specifically as follows:

1.   The entry of a temporary restraining order, preliminary injunction, and permanent injunction stating as follows:

   a.   That Peter Fellegy and all persons or entities acting in concert with him are restrained, enjoined, and prohibited from violating his Confidentiality and Restrictive Covenant Agreement dated May 18, 2017, attached as Exhibit 1 (the "Agreement");

   b.   That Peter Fellegy and all persons or entities acting in concert with him are restrained, enjoined, and prohibited from, directly or indirectly, acting alone or with others, soliciting or attempting to solicit, inducing to leave or diverting or attempting to induce to leave or divert from doing business with Deep South Communications, L.L.C., or any of its subsidiaries or affiliated companies ("Deep South"), any customer with whom Peter Fellegy had professional contact, for whom he had responsibility or with respect to whom he was privy to any information during his employment with Deep South, which prohibition shall remain in effect through February 22, 2024, in the parishes and counties named on Exhibit A to the Agreement;

c.    That Peter Fellegy and all persons or entities acting in concert with him are restrained, enjoined, and prohibited from servicing any customer of Deep South for whom he had responsibility or with respect to whom he was privy to any information during his employment with Deep South, which prohibition shall remain in effect through February 22, 2024, in the parishes and counties named on Exhibit A to the Agreement;

d.    That Peter Fellegy and all persons or entities acting in concert with him are restrained, enjoined, and prohibited from communicating, divulging, or making available Deep South's confidential customer data, customer and prospect names and contact information, established business relationships, and other Confidential Information as defined in the Agreement;

e.    That Peter Fellegy and all persons or entities acting in concert with him are restrained, enjoined, and prohibited from continuing to possess any property, records, materials, or information belonging to Deep South, including Deep South's trade secrets or Confidential Information as defined in the Agreement;

f.    That Peter Fellegy and all persons or entities acting in concert with him are required to return any property, records, materials, or information belonging to Deep South, including Deep South's trade secrets or Confidential Information as defined in the Agreement and specifically including the following:

i.    Customer files, contracts, and other agreements;

ii.    Customer proposals and bids; and

iii.     Customer contact information.

g.     That Peter Fellegy be required to provide his personal and work electronic devices for forensic inspection by an IT specialist to ensure that he has not retained copies of Deep South's trade secrets or Confidential Information as defined by the Agreement, but not limited to, files maintained on any computer, drive, handheld device or email account.

2.     Damages, including lost profits;

3.     Treble damages and other exemplary or punitive damages allowed by law;

3.     Attorneys' fees, expenses, and costs;

4.     Any other legal or equitable relief that this Court deems fair and just after all due proceedings in this matter.

**WHEREFORE**, Deep South Communications L.L.C. respectfully requests that its Verified Complaint for Injunctive and Other Relief be deemed good and sufficient, and that this Court enter judgment in favor of Deep South Communications L.L.C. and against Peter Fellegy, finding that Peter Fellegy violated his Confidentiality and Restrictive Covenant Agreement, specifically the non-competition and non-solicitation provisions, violated the Louisiana Uniform Trade Secrets Act, violated the Defend Trade Secrets Act, and violated the Computer Fraud and Abuse Act, and restraining, enjoining, and prohibiting him from engaging in further violations, as specifically prayed for above, and awarding such other relief and damages to Deep South Communications L.L.C. as warranted in law and equity under the circumstances.

BY ATTORNEYS:

BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, PC

*s/Jennifer L. Anderson*
Jennifer L. Anderson (La. Bar No. 23620)
450 Laurel Street, 21st Floor
Baton Rouge, Louisiana 70801
Telephone: (225) 381-7020
Facsimile: (225) 343-3612
Email: jlanderson@bakerdonelson.com

AND

Emily Olivier Kesler (La. Bar No. 37747)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5927
Facsimile: (504) 585-6925
Email: ekesler@bakerdonelson.com

***Counsel for Deep South Communications L.L.C.***

27

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| DEEP SOUTH COMMUNICATIONS L.L.C., | ) ) ) | Case No. 3:22-cv-00598-JWD-EWD |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| PETER M. FELLEGY, | ) ) | |
| Defendant. | ) | |

_____

**VERIFICATION OF AMENDED AND SUPPLEMENTAL**
**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

_____

I, Rhett Westerman, declare as follows:

1.      I am person of the age of majority and am fully competent to testify to the matters stated herein.

2.      I am the President of Deep South Communications, L.L.C. ("Deep South")

3.      In my role at Deep South, I am familiar with the company's business, business records, customers, competitors, and employees, including its former Manager of Business Development, Peter M. Fellegy, the Defendant in this proceeding.

4.      I have read the Amended and Supplemental Complaint for Injunctive Relief and Other Relief (the "Complaint") and the Exhibit attached thereto, and I affirm that the factual statements therein are true and correct based on my personal knowledge of the facts and the company's business records.

1

5.      I declare under penalty of perjury in accordance with the laws of the United States that the foregoing statement is true and correct.

Dated:  February __17__, 2023.

_____
Rhett Westerman

4862-0432-8752