### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DEEP SOUTH COMMUNICATIONS L.L.C,** | § § § | |
| *Plaintiff,* | § § | **Civil Action No. 3:22-cv-00598-JWD-EWD** |
| **v.** | § § | **Judge Judge John W. deGravelles** |
| **PETER M. FELLEGY,** | § § § | **Magistrate Judge Erin Wilder-Doomes** |
| *Defendant.* | § § | |
| ****************************** | § § | |
| **PETER M. FELLEGY,** | § § | |
| *Counterclaim Plaintiff,* | § § | |
| **v.** | § § | |
| **DEEP SOUTH COMMUNICATIONS L.L.C,** | § § § | |
| *Counterclaim Defendant.* | § § | |

### DEFENDANT'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT AND COUNTERCLAIM PLAINTIFF'S COUNTERCLAIM AGAINST DEEP SOUTH COMMUNICATIONS

NOW COMES Peter Fellegy ("Defendant" or "Counterclaim Plaintiff"), through undersigned counsel, hereby files this Answer to Plaintiff's Amended Complaint and Counterclaim Against Deep South Communications, stating as follows:

### I.    PARTIES

1.    Plaintiff, Deep South, is a Louisiana limited liability company with its principal place of business located at 20331 Highland Rd., Baton Rouge, Louisiana 70817. Rhett Westermann is a natural person who is the sole member of Deep South and he is domiciled in East Baton Rouge Parish, Louisiana, and is a citizen of the State of Louisiana. Deep South is a

telecommunications contractor specializing in microwave communications design and construction, fiber optics communications, distributed antenna systems, intelligent transportations systems, communications tower build-outs and maintenance, cellular and microwave maintenance and build-outs.

**Response:  Defendant denies that Deep South's characterization of its business. Defendant admits that Plaintiff is a Louisiana limited liability company with its principal place of business located at 20331 Highland Rd., Baton Rouge, Louisiana 70817. Defendant further admits that Rhett Westermann is a natural person. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 1, and therefore denies the same.**

2.    Defendant, Fellegy, is a natural person of the full age of majority who, upon information and belief, is domiciled in Indianapolis, Indiana.

**Response:  Defendant admits the allegations contained in Paragraph 2.**

## II.    JURISDICTION AND VENUE

3.    This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.  This matter is a civil action brought by Plaintiff, Deep South, a citizen of the state of Louisiana, against Defendant Fellegy, a citizen of the state of Indiana.  The matter in controversy exceeds the sum or value of $75,000, exclusive of attorney fees and costs.

**Response:  Defendant denies that the matter in controversy exceeds the sum of value of $75,000, exclusive of attorney fees and costs and therefore denies this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332. Defendant admits the remaining allegations contained in Paragraph 3.**

4.    The Court also has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, as Deep South presents claims arising under federal law, specifically the Defend Trade Secrets Act, 18 U.S.C. § 1836 (the "DTSA") and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* (the "CFAA"), as well as related state law claims that arise from the same transactions and occurrences as the claims arising under federal law. The Court has federal

questions jurisdiction over Deep South's claims under federal law. 28 U.S.C. § 1331. The Court

has supplemental jurisdiction over such state law claims. 28 U.S.C. § 1367.

**Response:   Defendant admits that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's asserted claims under the Defend Trade Secrets Act and the Computer Fraud and Abuse Act. Defendant denies that this Court should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's asserted state law claims. Defendant denies that all of Plaintiff's asserted state claims arise from the same transactions and occurrences as the asserted federal claims under the Defend Trade Secrets Act and the Computer Fraud and Abuse Act.**

5.      A claim for injunctive relief has its own independent value, separate and apart from

a claim for damages, attorney fees, and costs. The value of a claim for injunctive relief is "the

value of the right to be protected or the extent of the injury to be prevented." *Farkas v. GMAC*

*Mortg., LLC,* 737 F.3d 338, 341 (5th Cir. 2013). Fellegy has breached and continues to breach his

Confidentiality and Restrictive Covenant Agreement ("Agreement") with Deep South, which has

caused Deep South significant revenue losses. The Agreement is attached hereto as **Exhibit 1**.

**Response:  Defendant admits that *Farkas v. GMAC Mortgage, LLC,* 737 F.3d 338, 341 (5th Cir. 2013) states that the amount in controversy in an action for injunctive relief is the value of the right to be protected or the extent of the injury to be prevented. Defendant denies that he has breached or continues to breach any Confidentiality and Restrictive Covenant Agreement with Deep South. Defendant denies that Deep South has suffered any significant revenue losses as a result of Defendant's actions. Defendant further denies that the Agreement was attached to the Amended Complaint as Exhibit 1. Defendant denies any remaining allegations contained in Paragraph 5.**

6.      The Court has personal jurisdiction over Fellegy, and venue is proper because

Fellegy signed the Agreement in Baton Rouge, reported to and was based out of Baton Rouge

during his employment with Deep South, and agreed that Louisiana law exclusively would govern

the Agreement. Further, Deep South has suffered and continues to suffer harm in Louisiana and

within the district of this Court. *See* 28 U.S.C.§ 1391(b).

**Response:  Pursuant to this Court's Ruling and Order dated January 23, 2023 (Doc. 60), Defendant admits that this court has personal jurisdiction over Fellegy and venue is proper.  Defendant denies all remaining allegations contained in Paragraph 6.**

### III.    FACTS

7.    Deep South is a wireless technologies services company that was founded and remains headquartered in Baton Rouge, Louisiana ("Westerman").

**Response:  Defendant admits that Deep South remains headquartered in Baton Rouge, Louisiana. Defendant denies Deep South's characterization of its business. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 7, and therefore denies the same.**

8.    Deep South operates throughout the state of Louisiana and throughout the United States.

**Response:  Defendant admits that Deep South operates in the state of Louisiana. Defendant denies the remaining allegations contained in Paragraph 8.**

9.    Deep South hired Fellegy on or about May 17, 2017, as its Vice President of Business Development.

**Response:  Defendant admits the allegations contained in Paragraph 9.**

10.    In October of 2020, Fellegy was demoted to Manager of Business Development, a role in which Fellegy served until his resignation on February 22, 2022.

**Response:  Defendant admits the allegations contained in Paragraph 10.**

11.    Although Fellegy was able to perform his duties and work remotely during his employment with Deep South, his position was based out of Deep South's headquarters in Baton Rouge, Louisiana, and he reported directly to the President of Deep South at all times.

**Response:  Defendant admits that he reported directly to the President of Deep South and that he performed his duties and work remotely during his employment with Deep South. Defendant denies the remaining allegations contained in Paragraph 11.**

12.    Fellegy regularly traveled to Louisiana during his employment with Deep South, approximately every one to two months, to attend in-person meetings with the President and others at Deep South's headquarters.

**Response:  Defendant denies the allegations contained in Paragraph 12.**

4

13.     In his roles as Vice President and Manager of Business Development, Fellegy was responsible for developing and maintaining relationships and sales for the benefit of Deep South. Fellegy also generated sales and business development leads, provided and compiled feedback regarding clients in addition to helping create overall business development strategies.

**Response:  Defendant admits the allegations contained in Paragraph 13.**

14.     Fellegy had access to and received from Deep South non-public, confidential information related to its business, including existing and prospective customer names, addresses, phone numbers, and other similar information.

**Response:  Defendant denies the allegations contained in Paragraph 14.**

15.     Fellegy also had access to and received from Deep South non-public, confidential information related to its wireless technology services business, including its business relationships, financial performance, strategies for conducting business, price lists, sales, promotional, and marketing strategies and information, and other trade secrets.

**Response:  Defendant denies the allegations contained in Paragraph 15.**

16.     Fellegy held a position of trust with Deep South.

**Response:  Defendant denies the allegations contained in Paragraph 16.**

17.     Early on during Fellegy's employment with Deep South, Fellegy brought and attempted to share with Westerman documents, such as customer quotes, that belonged to Fellegy's former employer, Pinpoint Wireless. Westerman advised that he did not want to see any documents from Fellegy's prior employer and advised Fellegy that Deep South would not use any such documents or information.

**Response:  Defendant denies the allegations contained in Paragraph 17.**

18.     In connection with his employment, Fellegy entered into the Confidentiality and Restrictive Covenant Agreement with Deep South.  A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

**Response:  Defendant admits that he entered into a Confidentiality and Restrictive Covenant Agreement with Deep South in connection with his employment. Defendant denies the remaining allegations contained in Paragraph 18.**

19.     On or about May 18, 2017, Fellegy met with Deep South's Office Manager, Christina Springer, who informed him that as a condition of his employment he was required to execute the Agreement.

**Response:  Defendant admits that he was told that the Agreement was a condition of his employment. Defendant denies the remaining allegations contained in Paragraph 19.**

20.     Fellegy signed the Agreement effective May 18, 2017.

**Response:  Defendant admits the allegations contained in Paragraph 20.**

21.     In the Agreement, Fellegy expressly acknowledged that he had access "to existing and new valuable information relating to the business and clients of [Deep South] that is nonpublic, confidential, proprietary, and/or a trade secret and would be particularly valuable to [Deep South's] competitors." Exhibit 1, at ¶ 3.

**Response:  Defendant admits that Paragraph 3 of the Agreement states that "during the course of Employee's employment relationship with Employer, Employee has had and/or will continue to have access to existing and new valuable information relating to the business and clients of Employer that is nonpublic, confidential, proprietary, and/or a trade secret and would be particularly valuable to the Employer's competitors." Defendant denies the remaining allegations contained in Paragraph 21.**

22.     In the Agreement, Confidential Information is defined to include:

[B]usiness plans and strategies; business processes; research and development; training and other operational methods and techniques; manuals, policies, and procedures; business records and files; business proposals; client lists; client information; client source lists; purchasing methods; pricing; sales plans and activities; customer service strategies or activities; marketing and other technical data and studies; employment and other personnel data; financial plans, reports, and strategies; profits and

losses; budgets; projections; price lists; sales, promotional, and marketing strategies and information; proprietary computer software and data; and internal correspondence, notes, and memoranda relating to any of the foregoing….

*Id.*

**Response:  Defendant admits the allegations contained in Paragraph 22.**

23.    Deep South's Confidential Information has independent economic value because it is not generally known to the public or its competitors.

**Response:  Defendant denies the allegations contained in Paragraph 23.**

24.    Deep South takes reasonable steps to protect its Confidential Information. With respect to Fellegy, Deep South required that he enter into the Agreement, and reminded him of the obligations owed to Deep South under the Agreement after his resignation.

**Response:  Defendant denies the allegations contained in Paragraph 24.**

25.    In the Agreement, Fellegy specifically agreed that "during and after the end of [his] employment relationship with [Deep South], [he] will not communicate, divulge, or make available to any person or entity…any Confidential Information…." See Exhibit 1, at ¶ 4.

**Response:  Defendant admits the allegations contained in Paragraph 25.**

26.    Fellegy's agreement to safeguard and not misappropriate Confidential Information, as defined in the Agreement, is perpetual.

**Response:  Defendant denies the allegations contained in Paragraph 26.**

27.    In the Agreement, Fellegy agreed that, during his employment and for a period of wo years thereafter, he would not directly or indirectly "engage in any business that directly or indirectly competes with or is similar to" Deep South's business within the defined territory. Exhibit 1 at ¶ 5(B).

**Response:      Defendant denies the allegations contained in Paragraph 27.**

28.    In the Agreement, Fellegy also agreed that, during his employment and for a period of two years thereafter, he would not directly or indirectly, within the defined territory, "solicit, request, seek, or obtain" the business of Deep South's clients for his benefit or any entity other than Deep South. *Id.* at ¶ 5(C).

**Response:  Defendant denies the allegations contained in Paragraph 28.**

29.    In the Agreement, Fellegy further agreed that, during his employment and for a period of two years thereafter, he would not directly or indirectly, within the defined territory, "solicit, request, influence, induce or otherwise encourage" any of Deep South's clients to restrict, cease or limit doing business with Deep South. *Id.* at ¶ 5(D).

**Response:  Defendant denies the allegations contained in Paragraph 29.**

30.    Fellegy performed business development duties on behalf of Deep South in the state of Louisiana and elsewhere the United States.

**Response:  Defendant denies the allegations contained in Paragraph 30.**

31.    In the Agreement, Fellegy agreed to abide by the restrictive covenants within the territory defined in the Agreement to include the "parishes, counties, and municipalities" specified in Exhibit A to the Agreement. *Id.* at ¶ 5(A).

**Response:      Defendant denies the allegations contained in Paragraph 31.**

32.    Deep South uses protected computers connected to the internet for its commercial wireless technology services business, including, but not limited to laptops, cell phones, and servers.

**Response:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 32, and therefore denies the same.**

33.    Deep South maintains a Google account which is password protected with login procedures that restrict access to certain employees by assigning member email accounts.

**Response:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 33, and therefore denies the same.**

34.     During his employment with Deep South, Fellegy was assigned a member email account on Deep South's Google account, at the email address peter@deepsouth.com ("Deep South Email").

**Response:  Defendant admits the allegations contained in Paragraph 34.**

35.     Information secured on Deep South's Google account includes financial records and data, compilations of customer data, lists, preferences, project proposals, project lists and sales leads or prospective customer lists, among other records.

**Response:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 35, and therefore denies the same.**

36.     In light of Fellegy's prior misappropriation of Pinpoint's trade secrets and/or other confidential information, Deep South reasonably believes that prior to Fellegy's departure from Deep South, he transferred documents and information containing Deep South's trade secrets and/or Confidential Information from his Deep South Email to one or more personal email accounts or other personal devices without Deep South's authorization.

**Response:    Defendant denies misappropriating any trade secrets and/or other confidential information from Pinpoint. Defendant further denies the remaining allegations contained in Paragraph 36.**

37.     Deep South also maintains a password protected server, on which similar information and documents are securely stored.

**Response:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 37, and therefore denies the same.**

38.     Upon information and belief, Fellegy transferred documents and information containing Deep South's trade secrets and/or Confidential Information from Deep South's secure

server to one or more personal devices without Deep South's authorization and/or removed such materials in electronic and/or physical format.

**Response:  Defendant denies the allegations contained in Paragraph 38.**

39.     Leading up to the separation of his employment, Fellegy signed a "Separation Checklist & Acknowledgment" by which he acknowledged that he returned certain documents, information, and physical hardware to Deep South and also that he deleted "any Deep South Communications documents, files, and/or information from [his] personal computer/laptop/phone" including "removing all software applications that were provided during the course of [his] employment and all documents either created by [him] or any staff of Deep South Communications." *See* Fellegy Separation Checklist & Acknowledgment, dated Feb. 14, 2022, attached hereto as Exhibit 2.

**Response:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 39, and therefore denies the same.**

40.     Although Deep South typically asks employees to use a company-provided cell phone for work purposes, Fellegy requested, and Deep South agreed, to allow Fellegy to use his personal cell phone for work purposes. Deep South conditioned this allowance on Fellegy's use of certain Google applications to segregate and safeguard work data stored on his cell phone separately from his personal applications. However, rather than use the Deep South Google Contacts application required by Deep South for storing business contacts, Fellegy improperly intermingled these business contacts with his personal contacts on his cell phone.

**Response:   Defendant admits that he requested and Deep South agreed to allow Defendant to use his personal cell phone for work purposes. Defendant denies the remaining allegations contained in Paragraph 40.**

41.     Pursuant to the acknowledgment Fellegy signed at the separation of his employment, Fellegy should have returned to Deep South all business contacts developed and/or

obtained as a result of his employment with Deep South, and then he should have deleted them from his cell phone.

**Response:  Defendant denies the allegations contained in Paragraph 41.**

42.    Westerman specifically demanded that Fellegy delete all business contacts Fellegy developed and/or was connected with through his employment with Deep South.

**Response:  Defendant denies the allegations contained in Paragraph 42.**

43.    Fellegy did not delete the business contacts he developed during his employment from his cell phone, and upon information and belief, still has not done so.

**Response:  Defendant admits the allegations contained in Paragraph 43.**

44.    Fellegy has used Deep South's business contacts since his employment with Deep South ended.

**Response:  Defendant denies the allegations contained in Paragraph 44.**

45.    Upon information and belief, Fellegy has communicated, disclosed, or made available Deep South's trade secrets and/or Confidential Information without Deep South's authorization, including to Fellegy's current employer, End 2 End Technologies ("E2E"), E2E, other E2E employees, and/or customers or prospective customers of Deep South or E2E.

**Response:  Defendant denies the allegations contained in Paragraph 45.**

46.    A few months after Fellegy's February 22, 2022, resignation from Deep South, Fellegy obtained employment with E2E in a position directly involved in business development on behalf of E2E.

**Response:  Defendant admits that he began working for End 2 End Technologies on or about June 27, 2022 as an Account Director. Defendant denies the remaining allegations contained in Paragraph 46.**

47.     E2E holds itself out as a network infrastructure specialist engaged in the business of consulting, engineering, and executing comprehensive solutions for our clients throughout the United States.

**Response:  Defendant denies the allegations contained in Paragraph 47.**

48.     E2E competes directly with Deep South throughout the United States.

**Response:  Defendant denies the allegations contained in Paragraph 48.**

49.     Fellegy, as an employee of E2E, is competing with Deep South throughout the United States in breach of the Agreement.

**Response:  Defendant denies the allegations contained in Paragraph 49.**

50.     For instance, one of the customers with whom Fellegy developed a business relationship on behalf of Deep South over the course of his employment with Deep South is General Electric Co. ("GE").

**Response:  Defendant admits the allegations contained in Paragraph 50.**

51.     Prior to Fellegy's exit from Deep South, GE expressed a desire to make Deep South its account holder for its wireless product line for the State of Arkansas account.  However, after Fellegy's departure, Deep South discovered that E2E, Fellegy's new employer, would continue to be GE's account holder for its product line in Arkansas.

**Response:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 51, and therefore denies the same.**

52.     Upon information and belief, Deep South has been deprived of or lost similar business opportunities because of Fellegy's competition with Deep South.

**Response:  Defendant denies the allegations contained in Paragraph 52.**

53.     Since his departure from Deep South, Fellegy has had direct contact with GE's representative, whom he knew only through and as a result of his position with Deep South. While

working for and on behalf of E2E, Fellegy has also contacted at least one other business contact with whom he established a relationship through his position with Deep South and would not have otherwise known save for his employment with Deep South.

**Response:  Defendant denies the allegations contained in Paragraph 53.**

54.     Upon information and belief, Fellegy has contacted and solicited business from other similar business contacts, customers, and prospective customers of Deep South since his employment with Deep South ended. The losses caused by Fellegy's disregard for his non-compete are negatively impacting Deep South's revenues and will continue to do so.

**Response:  Defendant denies the allegations contained in Paragraph 54.**

55.     Deep South's President, Rhett Westerman, contacted Fellegy on or about June 6, 2022, upon learning of Fellegy's employment with E2E.

**Response:  Defendant admits the allegations contained in Paragraph 55.**

56.     Westerman reminded Fellegy of his Agreement and obligations to Deep South and informed him he was in violation of the Agreement.

**Response:  Defendant denies the allegations contained in Paragraph 56.**

57.     During the June 2022 conversation, Fellegy acknowledged that he was in violation of the Agreement and indicated that he would leave E2E if necessary.

**Response:  Defendant denies the allegations contained in Paragraph 57.**

58.     Fellegy remains employed by and working for E2E and, thus, continues to violate the Agreement.

**Response:   Defendant admits that he is currently employed at End 2 End Technologies. Defendant denies the remaining allegations contained in Paragraph 58.**

59.     Deep South representatives have subsequently attempted to contact Fellegy to obtain his compliance with the Agreement to no avail.

**Response:  Defendant admits to receiving a cease and desist letter from Plaintiff's counsel in August 2022. Defendant denies the remaining allegations contained in Paragraph 59.**

60.    Fellegy's conduct in admitting his violation of the Agreement, stating that he will comply and cease working for E2E if necessary, then failing to do so and dodging Deep South's attempts to contact him make it clear that Fellegy has no intention of complying with his obligations under the Agreement.

**Response:  Defendant denies the allegations contained in Paragraph 60.**

61.    Fellegy continues to violate the Agreement.

**Response:  Defendant denies the allegations contained in Paragraph 61.**

62.    On November 2, 2022, this Court held a hearing of certain preliminary motions filed in this matter, including Deep South's Motion for Temporary Restraining and Fellegy's Motions to Dismiss for Failure to State a Claim and for Lack of Personal Jurisdiction.

**Response:  Defendant admits the allegations contained in Paragraph 62.**

63.    As of the November 2 hearing, Fellegy acknowledged that he still had not returned to Deep South or deleted from his cell phone the business contacts he developed and/or obtained as a result of his employment with Deep South.

**Response:  Defendant denies the allegations contained in Paragraph 63.**

64.    Following the November hearing, Westerman discovered that Fellegy had saved documents from his prior employers on his Deep South laptop, which he intermingled with Deep South documents. For example, Westerman discovered a professional services subcontract agreement between Fortune Wireless (one of Fellegy's former employers) and Black & Veach (a customer of both Fortune Wireless and Deep South) in a "Black & Veach" folder containing Deep South's documents related to this customer.

**Response:  Defendant denies the allegations contained in Paragraph 64.**

14

65.     On December 2, 2022, Westermann received an automated notification from Zycus Supplier Network ("Zycus") of an attempt to login and reset the password associated with a Deep South account that used Fellegy's former Deep South Email as the recovery email address.

**Response:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 65, and therefore denies the same.**

66.     Zycus is a third-party procurement platform that companies use to on-board vendors and conduct other business.  Businesses, such as Deep South, must be invited to create an account with Zycus and must complete various paperwork, including a confidentiality agreement, in order to participate on the platform. Deep South uses Zycus to bid on customer jobs. One of the bidding processes available on Zycus is in an auction format which allows participants to see the quotes of other companies in real time.

**Response:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 66, and therefore denies the same.**

67.     No current Deep South employee attempted to access Deep South's Zycus account using Fellegy's former credentials. In fact, no Deep South employee possesses Fellegy's former credentials in this regard.

**Response:  Defendant denies the allegations contained in Paragraph 64.**

68.     Upon information and belief, Fellegy attempted to access this account, which he did not have Deep South's authorization to do.

**Response:  Defendant denies the allegations contained in Paragraph 68.**

69.     The Agreement provides for injunctive relief in the event of Fellegy's violation, stating in pertinent part as follows

> *[Fellegy] acknowledges that a breach or threatened breach of any of [his] obligations would cause immediate and irreparable harm to [Deep South] for which an adequate monetary remedy does not exist. [Fellegy] agrees that, in the event of any such breach or threatened breach, [Deep South] shall be entitled to temporary, preliminary, and/or permanent injunctive*

*relief restraining [Fellegy] from such breach or threatened breach, and/or compelling or ordering [Fellegy's] compliance with this Agreement, without the necessity of proof of actual damage or the posting of any security or bond, except as required by any non-waivable, applicable law. Nothing herein, however, shall be construed as prohibiting [Deep South] from pursuing any other remedy at law or in equity to which [it] may be entitled in the event of a breach or threatened breach by [Fellegy], including without limitation the recovery of damages, penalties, attorneys' fees, lost profits, costs, and expenses incurred by [Deep South] as a result.*

*See* Exhibit 1 at ¶ 6.

**Response:  Defendant admits the allegations contained in Paragraph 69.**

70.    Fellegy's conduct, as described above, is in violation of the Agreement.

**Response:  Defendant denies the allegations contained in Paragraph 70.**

71.    Fellegy's violations have caused and will continue to cause Deep South injury and damages.

**Response:  Defendant denies the allegations contained in Paragraph 71.**

72.    Fellegy's violations have further caused and will continue to cause irreparable harm to Deep South for which no adequate monetary remedy exists.

**Response:    Defendant denies the allegations contained in Paragraph 72.**

## IV.    CAUSES OF ACTION AND CLAIMS FOR RELIEF

### COUNT I: BREACH OF CONTRACT

*A.    Non-Competition.*

73.    Deep South reasserts and re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

**Response:  Defendant reasserts and re-alleges all of his responses to the preceding paragraphs of this Complaint as if fully set forth herein.**

74.    Fellegy entered into the Agreement.  *See* Exhibit 1.

**Response:  Defendant admits that he entered into the Agreement. Defendant denies the remaining allegations of Paragraph 74.**

75.    The Agreement specifically prohibits Fellegy from "engag[ing] in any business that directly or indirectly competes with or is similar to the business of" Deep South for a period of two years following the end of his employment with Deep South.  *See id.* at ¶ 5(B).

**Response:  Defendant denies the allegations contained in Paragraph 75.**

76.    The Louisiana statute governing non-competition agreements unambiguously directs that "every contract or agreement, or provision thereof, which meets the exceptions as provided in this section, *shall be enforceable*."  La. R.S. 23:921(A)(1) (emphasis added).

**Response:  Paragraph 76 is a statement of law and does not require a response from Defendant. To the extent a response is required, Defendant denies the allegations contained in Paragraph 76 as an incomplete, and therefore inaccurate, statement of the law.**

77.    Under Louisiana law, a non-competition agreement meets the exception in the statute and "shall be enforced" where the employee agrees "to refrain from carrying on or engaging in a business similar to that of the employer . . . within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment."  La. R.S. 23:921(A)(1) and (C).

**Response:  Paragraph 77 is a statement of law and does not require a response from Defendant. To the extent a response is required, Defendant denies the allegations contained in Paragraph 76 as an incomplete, and therefore inaccurate, statement of the law. Defendant further denies Plaintiff's characterization of the law as inaccurate.**

78.    The Agreement contains a valid temporal limitation period of two years after Fellegy's employment terminated.

**Response:  Defendant admits the allegations contained in Paragraph 78.**

79.    Fellegy resigned his employment effective February 22, 2022, such that the duration of the non-competition obligation runs for two years thereafter, or on and through February 22, 2024.

**Response:  Defendant admits that he resigned his employment effective February 22, 2022. Defendant denies the remaining allegations contained in Paragraph 79 as incorrectly assuming that the Agreement is enforceable.**

80.    The Agreement contains a valid geographic restriction, which is specifically defined in Exhibit A to the Agreement to identify each applicable parish and county by name.

**Response:  Defendant denies the allegations contained in Paragraph 80.**

81.    Deep South markets its wireless technology services to, prospects for, services, and/or engages in wireless technology business with customers in every parish and county identified in Exhibit A to the Agreement.

**Response:  Defendant denies the allegations contained in Paragraph 81.**

82.    The Agreement is enforceable against Fellegy.

**Response:  Defendant denies the allegations contained in Paragraph 82.**

83.    Following his employment with Deep South, Fellegy obtained employment as an Account Director with E2E, a wireless technology services business, which directly competes with Deep South.

**Response:  Defendant admits that he obtained employment as an Account Director with End 2 End Technologies four months after his employment ended with Deep South. Defendant denies the remaining allegations contained in Paragraph 83.**

84.    Fellegy is engaging in and has continued to engage in competitive activity for his and E2E's benefit since his resignation from Deep South in the restricted geographic territory.

**Response:  Defendant denies the allegations contained in Paragraph 84.**

85.    Fellegy violated Paragraph 5(B) of the Agreement pertaining to restriction on competition.

**Response:  Defendant denies the allegations contained in Paragraph 85.**

86.    Fellegy's actions in violation of Paragraph 5(B) of the Agreement have caused Deep South substantial losses as described herein, which losses are ongoing.

18

**Response:  Defendant denies the allegations contained in Paragraph 86.**

87.      Paragraph 5(B) of the Agreement pertaining to non-competition is an obligation not

to do.

**Response:  Defendant denies the allegations contained in Paragraph 87 as incorrectly assuming that the Agreement is enforceable.**

88.      Under the Louisiana statute governing non-competition agreements, proof of

irreparable injury is not necessary to obtain injunctive relief, which "shall" be ordered upon proof

of the obligor's failure to perform.  La. R.S. 23:921(H).

**Response:  Paragraph 88 is a statement of law and does not require a response from Defendant. To the extent a response is required, Defendant denies the allegations contained in Paragraph 88 as an incomplete, and therefore inaccurate, statement of the law. Defendant further denies Plaintiff's characterization of the law as inaccurate.**

89.      Nonetheless, Fellegy's continued breach of Paragraph 5(B) of the Agreement has

caused and will continue to cause irreparable injury to Deep South for which there is no adequate

remedy at law.

**Response: Defendant denies the allegations contained in Paragraph 89.**

**B.      *Non-solicitation.***

90.      Deep South reasserts and re-alleges all preceding paragraphs of this Complaint as

if fully set forth herein.

**Response:  Defendant reasserts and re-alleges all of his responses to the preceding paragraphs of this Complaint as if fully set forth herein.**

91.      Fellegy entered into the Agreement.  *See* Exhibit 1.

**Response:  Defendant admits that he entered into the Agreement. Defendant denies the remaining allegations of Paragraph 91.**

92.      The Agreement specifically prohibits Fellegy from soliciting, requesting, seeking,

or obtaining the business of any person or entity that was Deep South's client during Fellegy's

employment with Deep South and/or is Deep South's client during the two years following his

employment with Deep South for a period of two years post-employment in specified parishes and counties in the United States. *See id.* at ¶ 5(C)

**Response:  Defendant denies the allegations contained in Paragraph 92.**

93.    The Agreement also specifically prohibits Fellegy from inducing such customers to leave and diverting such customers from doing business with Deep South, and it prohibits Fellegy from attempting to induce customers to leave and diverting them from doing business with Deep South during the specified time and geographic territory. *See id.*

**Response:  Defendant denies the allegations contained in Paragraph 93.**

94.    The Louisiana statute governing non-solicitation of customer agreements unambiguously directs that "every contract or agreement, or provision thereof, which meets the exceptions as provided in this section, *shall be enforceable*." La. R.S. 23:921(A)(1) (emphasis added).

**Response:  Paragraph 94 is a statement of law and does not require a response from Defendant. To the extent a response is required, Defendant denies the allegations contained in Paragraph 94 as an incomplete, and therefore inaccurate, statement of the law.**

95.    Under Louisiana law, a non-solicitation agreement meets the exception in the statute and "shall be enforced" where the employee agrees "to refrain from . . . soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment." La. R.S. 23:921(A)(1) and (C).

**Response:  Paragraph 95 is a statement of law and does not require a response from Defendant. To the extent a response is required, Defendant denies the allegations contained in Paragraph 95 as an incomplete, and therefore inaccurate, statement of the law.**

96.    The Agreement contains a valid temporal limitation period of two years after Fellegy's employment ends.

**Response:  Defendant admits the allegations contained in Paragraph 96.**

20

97.     Fellegy resigned his employment effective February 22, 2022, such that the duration of the non-solicitation obligation runs for two years thereafter, or on and through February 22, 2024.

**Response:  Defendant admits that he resigned his employment effective February 22, 2022. Defendant denies the remaining allegations contained in Paragraph 97 as incorrectly assuming that the Agreement is enforceable.**

98.     The Agreement contains a valid geographic restriction, which is specifically defined in Exhibit A to the Agreement to identify each applicable parish or county by name.

**Response:  Defendant denies the allegations contained in Paragraph 98.**

99.     Deep South markets its wireless technology services to, prospects for, services, and/or engages in wireless technology business with customers in every parish and county identified in Exhibit A to the Agreement.

**Response:  Defendant denies the allegations contained in Paragraph 99.**

100.    The Agreement is enforceable against Fellegy.

**Response:  Defendant denies the allegations contained in Paragraph 100.**

101.    Upon information and belief, Fellegy has solicited, induced, and diverted Deep South customers and their business for his and E2E's benefit since his resignation, including the business of GE.

**Response:       Defendant denies the allegations contained in Paragraph 101.**

102.    Upon information and belief, Fellegy used his knowledge of Deep South customer data, addresses, phone numbers, and other similar information to solicit their business for himself and/or E2E.

**Response:  Defendant denies the allegations contained in Paragraph 102.**

103.    Upon information and belief, Fellegy used his knowledge of Deep South's established business practices to solicit Deep South's clients' business for himself and/or E2E.

**Response: Defendant denies the allegations contained in Paragraph 103.**

104.    Fellegy violated Paragraph 5(C) of the Agreement pertaining to the non-solicitation of customers.

**Response: Defendant denies the allegations contained in Paragraph 104.**

105.    Upon information and belief, Fellegy's actions in violation of Section 5(C) of the Agreement have caused Deep South to lose business, including that of GE.

**Response:    Defendant denies the allegations contained in Paragraph 105.**

106.    Paragraph 5(C) of the Agreement pertaining to non-solicitation of customers is an obligation not to do.

**Response:    Defendant denies the allegations contained in Paragraph 106 as incorrectly assuming that the Agreement is enforceable.**

107.    Under the Louisiana statute governing non-solicitation of customer agreements, proof of irreparable injury is not necessary to obtain injunctive relief, which "shall" be ordered upon proof of the obligor's failure to perform.

**Response: Paragraph 107 is a statement of law and does not require a response from Defendant. To the extent a response is required, Defendant denies the allegations contained in Paragraph 107 as an incomplete, and therefore inaccurate, statement of the law.**

108.    Nonetheless, Fellegy's continued breach of Paragraph 5(C) of the Agreement has caused and will continue to cause irreparable injury to Deep South for which there is no adequate remedy at law.

**Response: Defendant denies the allegations contained in Paragraph 108.**

*C.*    *Confidential Information*

109.    Deep South reasserts and re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

**Response: Defendant reasserts and re-alleges all of his responses to the preceding paragraphs of this Complaint as if fully set forth herein.**

110.    Fellegy held a position of trust with Deep South.

**Response:  Defendant denies the allegations contained in Paragraph 110.**

111.    Fellegy had access to and received from Deep South non-public, confidential information related to its wireless technology services business, including existing and prospective client names, addresses, phone numbers, and other similar information.

**Response:   Defendant denies the allegations contained in Paragraph 111.**

112.    Fellegy agreed that he would not "communicate, divulge, or make available to any person or entity (other than Employer, its clients, or other persons or entities expressly authorized by Employer to receive such information) any Confidential Information…." *See* Exhibit 1 at ¶ 4.

**Response:  Defendant admits the allegations contained in Paragraph 112.**

113.    Fellegy acknowledged that Deep South's Confidential Information is its exclusive property that would be particularly valuable to Deep South's competitor's.

**Response:  Defendant denies the allegations contained in Paragraph 113.**

114.    [omitted]

115.    Upon information and belief, including Fellegy's prior history of disclosing a former employer's customer contracts to Deep South and his placement of his former employer's documents on a Deep South laptop, Fellegy violated Section 4 of his Agreement with Deep South by communicating, disclosing or making available Deep South's Confidential Information to E2E, E2E's employees, customers and prospective customers of E2E or Deep South, or others.

**Response:  Defendant denies the allegations contained in Paragraph 115.**

116.    Upon information and belief, Fellegy's use of Deep South's Confidential Information has caused or will cause Deep South to lose business.

**Response:      Defendant denies the allegations contained in Paragraph 116.**

117.    Deep South has suffered and will continue to suffer irreparable harm as a result of Fellegy's violations of Section 4 of the Agreement for which there is no adequate remedy at law.

**Response:  Defendant denies the allegations contained in Paragraph 117.**

## COUNT II: VIOLATION OF DEFEND TRADE SECRETS ACT

118.    Deep South reasserts and re-alleges all preceding paragraphs of this Amended and Supplemental Verified Complaint as if fully set forth herein.

**Response:  Defendant reasserts and re-alleges all of his responses to the preceding paragraphs of this Complaint as if fully set forth herein.**

119.    Deep South's client contact identities, its pricing information, its bid proposals, project progress reports and information, sales strategies, work orders, client lists, project plans and processes, and all of the other confidential business information described in this Complaint, constitute trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1839(3) (the "DTSA").

**Response:  Defendant denies the allegations contained in Paragraph 119.**

120.    In order to protect those trade secrets, Deep South requires its employees to agree to abide by the non-disclosure provisions of the Agreement, requires password protection for information stored in electronic format, and restricts access to that information to only those employees who have reason to access the information for business reasons, among other things.

**Response:  Defendant denies the allegations contained in Paragraph 120.**

121.    The trade secrets have actual and potential economic value by not being generally known, as having that information remain secret allows Deep South to competitively price its services, develop proposals specific to its customers, and to have direct contact with its customer – things that third parties who lack such information cannot accomplish.

**Response:  Defendant denies the allegations contained in Paragraph 121.**

122.    Because Deep South conducts business throughout the country, including over the phone, on the internet, and via mail service, these trade secrets were and are frequently used by Deep South in interstate commerce.

**Response:  Defendant denies the allegations contained in Paragraph 122.**

123.    Fellegy's disclosure or use of Deep South's trade secrets such as its client contacts, project proposals, and customer preferences would enable Fellegy or those to whom he made such disclosures to underbid Deep South for projects and to create competing project proposals without having to expend the time, effort, expense, or resources that Deep South expended in developing a customer-tailored approach to business with its customer base.

**Response:  Defendant denies the allegations contained in Paragraph 123.**

124.    Fellegy knowingly and willfully misappropriated Deep South's trade secrets within the meaning of 18 U.S.C. § 1839(5). Fellegy knew he had to a duty to maintain the secrecy of and return Deep South's trade secrets. Despite this knowledge, Fellegy converted Deep South's trade secrets, including retaining and using its business contacts following his separation from Deep South. Upon information and belief, Fellegy converted additional trade secrets from his laptop, Deep South Email, and/or Deep South's server for the purpose of using and disclosing those trade secrets for his own benefit and for the benefit of his new employer, E2E. Deep South did not consent to any of Fellegy's actions in this regard.

**Response:  Defendant denies the allegations contained in Paragraph 124.**

125.    Fellegy's conduct with respect to Deep South's trade secrets as alleged herein violates the DTSA.

**Response:  Defendant denies the allegations contained in Paragraph 125.**

126.    As a direct and proximate result of Fellegy's violations of the DTSA, Deep South has been damaged in an amount to be proven at trial. Deep South has further suffered and will continue to suffer irreparable harm for which there is no adequate monetary remedy.

**Response:  Defendant denies the allegations contained in Paragraph 126.**

127.    Deep South, as the owner of the trade secrets Fellegy misappropriated, is entitled to bring a private civil action against Fellegy for injunctive relief, for damages and/or unjust enrichment resulting from Fellegy's use of Deep South's trade secrets. *See* 18 U.S.C. § 1836. Furthermore, Fellegy continued his wrongful conduct in spite of the Agreement and notice from Deep South demanding he return and delete the misappropriated trade secrets. Thus, Fellegy's conduct as alleged herein is willful and malicious, entitling Deep South to an award of exemplary damages. *See* 18 U.S.C. § (b)(3)(C).

**Response:  Defendant denies the allegations contained in Paragraph 127.**

### COUNT III: VIOLATION OF LOUISIANA UNIFORM TRADE SECRETS ACT

128.    Deep South reasserts and re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

**Response:  Defendant reasserts and re-alleges all of his responses to the preceding paragraphs of this Complaint as if fully set forth herein.**

129.    The confidential and proprietary business information Fellegy obtained from Deep South and improperly used for his own benefit, and that, upon information and belief, Fellegy improperly disclosed for his own benefit or for the benefit of his new employer, E2E, discussed in detail in this Complaint, constitutes trade secrets under the Louisiana Uniform Trade Secrets Act, La. R.S. § 51:1431, et seq. (the "LUTSA").

**Response:  Defendant denies the allegations contained in Paragraph 129.**

130.    Fellegy, by virtue of his positions with Deep South as Vice President and Manager of Business Development, and by acknowledging and agreeing to comply with the confidentiality provisions in the Agreement, knew or had reason to know that he owed a duty to Deep South to maintain the secrecy of, and not misappropriate, such proprietary and confidential information of Deep South.

**Response:  Defendant denies the allegations contained in Paragraph 130.**

131.    Upon information and belief, Fellegy has disclosed and/or is using Deep South's trade secrets in his employment with E2E, for his own and E2E's benefit, thereby engaging in conduct which constitutes actionable misappropriation under the LUTSA. For instance, Fellegy has used the business contacts he developed during his employment with Deep South which he improperly retained on his cell phone since his separation of employment. Upon information and belief, Fellegy has used or is using Deep South's trade secrets to solicit Deep South's customers, to induce such customers to reduce their business with Deep South, and to divert such customers and/or their business from Deep South for Fellegy's own benefit and/or for the benefit of E2E.

**Response:  Defendant denies the allegations contained in Paragraph 131.**

132.    Given Fellegy's ongoing refusal to return Deep South's trade secrets (such as the business contacts stored on his cell phone), despite his obligation to do so, and his continued and willful use and/or disclosure of those trade secrets for his own benefit, it is clear that Fellegy has acted willfully and maliciously in misappropriating and using Deep South's trade secrets.

**Response:  Defendant denies the allegations contained in Paragraph 132.**

133.    Deep South has incurred damages as a direct and proximate result of Fellegy's misappropriation and use of its trade secrets and is therefore entitled to a judgment from this Court, in Deep South's favor, and against Fellegy, in the full amount of such damages, to be proven at trial, plus prejudgment interest on those amounts. *See* La. R.S. § 51:1433.

**Response:  Defendant denies the allegations contained in Paragraph 133.**

134.    In addition, because Fellegy has acted willfully and maliciously in misappropriating, using, and disclosing Deep South's trade secrets, Deep South is entitled to its reasonable attorney's fees pursuant to Louisiana Revised Statute § 51:1434.

**Response:  Defendant denies the allegations contained in Paragraph 134.**

135.    Furthermore, as a direct and proximate result of Fellegy's misappropriation of Deep South's trade secrets, Deep South has suffered and will continue to suffer irreparable injury for which it has no adequate monetary remedy.

**Response:  Defendant denies the allegations contained in Paragraph 135.**

136.    Deep South is further entitled to injunctive relief to ascertain the extent of the data theft and to prevent Fellegy and/or other third parties from gaining any further benefit from the unlawful possession or use of Deep South's trade secrets.

**Response:  Defendant denies the allegations contained in Paragraph 136.**

## COUNT IV: VIOLATION OF COMPUTER FRAUD AND ABUSE ACT

137.    Deep South reasserts and re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

**Response:  Defendant reasserts and re-alleges all of his responses to the preceding paragraphs of this Complaint as if fully set forth herein.**

138.    As Fellegy held a position of trust with Deep South, he was granted access to Deep South's secure computers, password-protected Google account and associated shared network, email system, software, and hardware, and other related secure accounts, which were connected to the internet and/or otherwise used in interstate commerce. The systems and devices discussed herein constitute "protected computers" within the meaning of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* (the "CFAA).

28

**Response:  Defendant denies the allegations contained in Paragraph 138.**

139.    Upon information and belief, Fellegy intentionally accessed one or more protected computers without authorization and/or in excess of his authorization and obtained information, including Deep South's trade secrets and other Confidential Information.

**Response:  Defendant denies the allegations contained in Paragraph 139.**

140.    Upon information and belief, Fellegy attempted to access and reset the password for Deep South's Zycus account months after the separation of his employment and the institution of this lawsuit.

**Response:  Defendant denies the allegations contained in Paragraph 140.**

141.    Fellegy's acts and conduct as described herein are in violation of the CFAA. *See* 18 U.S.C. § 1030(a)(2)(C).

**Response:  Defendant denies the allegations contained in Paragraph 141.**

142.    As a direct and proximate result of Fellegy's acts and conduct in violation of the CFAA, Deep South has suffered and/or will suffer damages, which meet or exceed $5,000 in value as required by § 1030(c)(4)(A)(i).  For example, Deep South has expended and will continue to expend time, resources, and money to discover and investigate the scope of Fellegy's unlawful conduct, which may necessitate the use of a forensic examiner to review Fellegy's and other computers, electronic devices, and data accounts.

**Response:  Defendant denies the allegations contained in Paragraph 142.**

143.    Deep South has further suffered and will continue to suffer irreparable harm for which there is no adequate monetary remedy as a result of Fellegy's violation of the CFAA.

**Response:  Defendant denies the allegations contained in Paragraph 143.**

## V.    COUNT V: INJUNCTIVE RELIEF

144.    Deep South reasserts and re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

**Response:  Defendant reasserts and re-alleges all of his responses to the preceding paragraphs of this Complaint as if fully set forth herein.**

145.    Fellegy breached his Agreement with Deep South by engaging in competition with Deep South.

**Response:  Defendant denies the allegations contained in Paragraph 145.**

146.    Fellegy breached his Agreement with Deep South by soliciting, inducing, diverting, or otherwise encouraging Deep South's clients to transfer their business to E2E, a competitor.

**Response:  Defendant denies the allegations contained in Paragraph 146.**

147.    Fellegy breached his Agreement with Deep South by using Deep South's Confidential Information regarding customers and its business for his own benefit and for the benefit of E2E, a competitor.

**Response:  Defendant denies the allegations contained in Paragraph 147.**

148.    Fellegy violated the LUTSA and the DTSA by misappropriating Deep South's trade secrets.

**Response:  Defendant denies the allegations contained in Paragraph 148.**

149.    Fellegy violated the CFAA by intentionally accessing Deep South's Electronic Systems without authorization and/or by exceeding his authorization and obtaining trade secrets and other Confidential Information therefrom.

**Response:  Defendant denies the allegations contained in Paragraph 149.**

150.    Fellegy's actions in violation of the Agreement, the DTSA, the LUTSA, and the CFAA have caused and are continuing to cause irreparable harm to Deep South for which there is no adequate remedy at law.

**Response:  Defendant denies the allegations contained in Paragraph 150.**

151.    Deep South is substantially likely to succeed on the merits of its claims against Fellegy.

**Response:  Defendant denies the allegations contained in Paragraph 151.**

152.    The irreparable injury that Deep South has suffered and will continue to suffer if injunctive relief is not granted outweighs any potential harm to Fellegy.

**Response:  Defendant denies the allegations contained in Paragraph 152.**

153.    Granting injunctive relief to Deep South will not disserve the public interest.

**Response:  Defendant denies the allegations contained in Paragraph 153.**

## PRAYER FOR RELIEF

Plaintiff, Deep South Communications L.L.C., prays that after all due proceedings the Court find in favor of Deep South and against Defendant, Peter Fellegy, on all counts and grant the following temporary, preliminary, and permanent injunctive relief, and award all monetary damages and other legal and equitable relief appropriate under the law and circumstances, including an award of attorney fees and costs, against Defendant, Fellegy, more specifically as follows:

1.    The entry of a temporary restraining order, preliminary injunction, and permanent injunction stating as follows:

    a.    That Peter Fellegy and all persons or entities acting in concert with him are restrained, enjoined, and prohibited from violating his Confidentiality and

Restrictive Covenant Agreement dated May 18, 2017, attached as Exhibit 1 (the "Agreement");

b.     That Peter Fellegy and all persons or entities acting in concert with him are restrained, enjoined, and prohibited from, directly or indirectly, acting alone or with others, soliciting or attempting to solicit, inducing to leave or diverting or attempting to induce to leave or divert from doing business with Deep South Communications, L.L.C., or any of its subsidiaries or affiliated companies ("Deep South"), any customer with whom Peter Fellegy had professional contact, for whom he had responsibility or with respect to whom he was privy to any information during his employment with Deep South, which prohibition shall remain in effect through February 22, 2024, in the parishes and counties named on Exhibit A to the Agreement;

c.     That Peter Fellegy and all persons or entities acting in concert with him are restrained, enjoined, and prohibited from servicing any customer of Deep South for whom he had responsibility or with respect to whom he was privy to any information during his employment with Deep South, which prohibition shall remain in effect through February 22, 2024, in the parishes and counties named on Exhibit A to the Agreement;

d.     That Peter Fellegy and all persons or entities acting in concert with him are restrained, enjoined, and prohibited from communicating, divulging, or making available Deep South's confidential customer data, customer and prospect names and contact information, established business relationships, and other Confidential Information as defined in the Agreement;

e.     That Peter Fellegy and all persons or entities acting in concert with him are restrained, enjoined, and prohibited from continuing to possess any property, records, materials, or information belonging to Deep South, including Deep South's trade secrets or Confidential Information as defined in the Agreement;

f.     That Peter Fellegy and all persons or entities acting in concert with him are required to return any property, records, materials, or information belonging to Deep South, including Deep South's trade secrets or Confidential Information as defined in the Agreement and specifically including the following:

   i.     Customer files, contracts, and other agreements;

   ii.    Customer proposals and bids; and

   iii.   Customer contact information.

g.     That Peter Fellegy be required to provide his personal and work electronic devices for forensic inspection by an IT specialist to ensure that he has not retained copies of Deep South's trade secrets or Confidential Information as defined by the Agreement, but not limited to, files maintained on any computer, drive, handheld device or email account.

   **Response:     Defendant denies that Plaintiff is entitled to the relief contained in Paragraphs 1(a) – 1(g) of Plaintiff's Prayer for Relief.**

2.     Damages, including lost profits;

   **Response:     Defendant denies that Plaintiff is entitled to the relief contained in Paragraph 2 of Plaintiff's Prayer for Relief.**

3.     Treble damages and other exemplary or punitive damages allowed by law;

**Response:    Defendant denies that Plaintiff is entitled to the relief contained in Paragraph 3 of Plaintiff's Prayer for Relief.**

3.    Attorneys' fees, expenses, and costs;

**Response:    Defendant denies that Plaintiff is entitled to the relief contained in Paragraph 3[sic] of Plaintiff's Prayer for Relief.**

4.    Any other legal or equitable relief that this Court deems fair and just after all due

proceedings in this matter.

**Response:    Defendant denies that Plaintiff is entitled to the relief contained in Paragraph 4 of Plaintiff's Prayer for Relief.**

WHEREFORE, Defendant Peter Fellegy, prays that Plaintiff take nothing by way of its

Amended Complaint, award Defendant his attorneys fees and costs for this action, and for all just

and proper relief.

## ADDITIONAL DEFENSES

Defendant, Peter Fellegy, hereby asserts these additional defenses:

1.    Plaintiff has failed to assert a claim upon which relief can be granted.

2.    The Confidentiality and Restrictive Covenant Agreement ("Agreement") is void and unenforceable.

3.    End 2 End Technologies is not a competitor of Plaintiff.

4.    What Defendant does for End 2 End Technologies does not compete with Plaintiff's business.

5.    The geographic restriction of the Agreement is overbroad, and, therefore, the Agreement is unenforceable.

6.    Defendant has not solicited, requested, sought, or obtained any business from any Deep South client after his employment with Deep South ended.

7.    Defendant has not induced any Deep South clients to leave Deep South or diverted any Deep South client from doing business with Deep South.

8.    Defendant has not used any confidential, non-public information he learned during his employment with Deep South to solicit business for himself or End 2 End Technologies.

34

9.     Defendant did not have access to and/or did not receive any confidential, non-public information related to Deep South's business.

10.    Defendant has not disclosed any confidential, non-public Deep South information with End 2 End Technologies.

11.    Plaintiff failed to take reasonable steps to protect what it has defined as confidential information.

12.    Plaintiff has not suffered any damages or harm as the result of Defendant's actions.

13.    The information relevant to this matter is not a trade secret.

14.    All information Plaintiff claims is a trade secret is in the public domain.

15.    Plaintiff has failed to take reasonable steps to protect what it has defined as a trade secret.

16.    Defendant developed all information relevant to this matter independently from his prior relationship with Deep South.

17.    Plaintiff cannot show Defendant acted willfully or maliciously sufficient to warrant exemplary or punitive damages.

18.    Plaintiff has not suffered irreparable harm sufficient to warrant injunctive relief.

19.    Plaintiff is not substantially likely to succeed on the merits of its claims, and therefore injunctive relief is unwarranted.

20.    The potential harm to Defendant if injunctive relief is granted outweighs the speculative harm Plaintiff alleges.

21.    Injunctive relief against Defendant will disserve the public interest.

22.    Plaintiff cannot succeed on the merits of its claims due to waiver, estoppel, fraud, laches, release, discharge, and/or unclean hands.

23.    Plaintiff's claims are barred in part by the law of the case.

24.    Plaintiff has an adequate remedy at law and its request for equitable remedies is, therefore, unsubstantiated.

25.    Plaintiff's claims should be denied due to the doctrine of unjust enrichment.

26.    Plaintiff's request for relief is against public policy.

27.    Plaintiff's request for attorney's fees is not permissible under the law.

28.     Plaintiff has failed to mitigate its damages.

WHEREFORE, Defendant Peter Fellegy, prays that Plaintiff take nothing by way of its Amended Complaint, award Defendant his attorneys fees and costs for this action, and for all just and proper relief.

## COUNTER-CLAIM

Now into Court, through the undersigned counsel, comes Counterclaim Plaintiff, Peter Fellegy ("Fellegy"), to assert these counterclaims against Counterclaim Defendant Deep South Communications, LLC ("Deep South"), and avers as follows:

## PARTIES

1.     Counterclaim Plaintiff, Peter Fellegy, is a natural person of the full age of majority who is a resident of the state of Indiana.

2.     Counterclaim Defendant, Deep South Communications, LLC, is a Louisiana limited liability company with its principal place of business located at 20331 Highland Rd., Baton Rouge, Louisiana 70817. Deep South is considered a resident of the state of Louisiana.

3.     This Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367(a) because the facts of the counterclaim form a part of the same case and controversy as Deep South's claims against Fellegy. The Court, thus, has supplemental jurisdiction over Fellegy's counterclaims against Deep South. 28 U.S.C. § 1367.

## FACTS

4.     Deep South and Fellegy entered into the Confidentiality and Restrictive Covenant Agreement ("Agreement") on May 18, 2017.

36

5.      The Agreement sought to prevent Fellegy from competing against or soliciting clients in every county and parish in a 16-state territory after leaving employment with Deep South. *See* Doc. 1-1, ¶ 5.

6.      Deep South defined the 16-state territory by listing every county and parish in the 16 states as an Exhibit A to the Agreement. *See* Doc. 1-1, ¶ 5 & Exhibit A.

7.      La. R.S. 23:921(C) requires the geographical restriction in a non-competition agreement be only that territory in which the employer "actually carries on a like business therein." *Waguespack v. Medtronic, Inc.*, 185 F.Supp.3d 916, 929 (M.D. La. 2016).

8.      At the time the parties entered into the Agreement, Deep South knew that it did not do and had not done business with any customers in every county and parish listed in Exhibit A of the Agreement.

9.      At the time the parties entered into the Agreement, Deep South knew that it had not solicited and was not soliciting business in every county and parish listed in Exhibit A of the Agreement.

10.     Upon information and belief, at the time the parties entered into the Agreement, Deep South sought to stifle competition and solicitation of any business by any former employee in all of the territory it wanted to do business in at some point in the future.

11.     Upon information and belief, Deep South continued to expand the territory listed in Exhibit A of the Agreement for subsequent employees to include all of the counties of additional states, despite the fact that it did not do business in every county of that state and did not have any solicitation for business in every county of that state.

12.     At the time the parties entered into the Agreement, Deep South knew that the non-competition and non-solicitation clauses of the Agreement were unenforceable against Fellegy for the entire territory listed in Exhibit A of the Agreement.

13.     Yet, on August 26, 2022, Deep South filed a lawsuit against Fellegy, seeking to prevent Fellegy from competing or soliciting in the entire territory listed in Exhibit A. *See* Doc. 1.

14.     On November 2, 2022, the Court held an evidentiary hearing on Deep South's Motion for Temporary Restraining Order and Preliminary Injunction, which sought to prevent Fellegy from competing or soliciting in the entire territory listed in Exhibit A. *See* Docs. 8, 36.

15.     Despite having control over all the documents and witnesses that could verify that Deep South carried on business, or at the very least solicited business, in all of the county and parishes listed in Exhibit A, Deep South did not present any such evidence.

16.     Instead, Deep South provided the Court only with evidence of work it had done over the past decade in a small fraction of the counties and parishes listed in Exhibit A.

17.     Despite alleging that it solicited business in the counties and parishes listed in Exhibit A, Deep South provided no evidence to support that allegation.

18.     Upon information and belief, having had over two months to prepare for the evidentiary hearing with documents and witnesses that Deep South has had control over well before the institution of this case, Deep South does not have any evidence and knows that it did not and does not do business in all of the counties and parishes listed in Exhibit A.

19.     Upon information and belief, having had over two months to prepare for the evidentiary hearing with documents and witnesses that Deep South has had control over well before the institution of this case, Deep South does not have any evidence and knows that it did not and does not solicit business in all of the counties and parishes listed in Exhibit A.

20.    On January 23, 2023, this Court entered its Ruling and Order, denying Deep South's Motion for Temporary Restraining Order and Preliminary Injunction. *See* Doc. 60.

21.    In that Order, the Court severed from Exhibit A all of the counties and parishes where Deep South did not show it conduct business or send "active, targeted, and specific" solicitations. *Id.,* pp. 43, 51-59.

22.    The Court's order severed out over two-thirds of the counties and parishes listed in Exhibit A. *Id.*

23.    As noted by the Court, "[n]ow that all of the offending areas . . . have been excised, the Agreement's geographic scope is substantially limited." *Id.* at n. 8.

24.    According to the Court, "only nineteen Louisiana parishes now remain in the Agreement's geographical limitation, which is less than half of the number originally listed. Only seven counties remain for Alabama. Only two counties remain for Missouri and North Carolina. Only three counties remain for Oklahoma." *Id.* at n. 9 (internal citations omitted).

25.    On March 17, 2023, Deep South amended its complaint. *See* Doc. 65.

26.    Despite the Court's January 23, 2023 severing over two-thirds of the territory listed in Exhibit A, Deep South re-asserted its claim against Fellegy for the prevention of competition and solicitation in the entire 16-state territory as listed in Exhibit A. *See id.* At ¶ 80, 82, 98, 100.

27.    Deep South continues to seek to enforce the unenforceable provisions of the Agreement against Fellegy to chill his activities and interfere with his ability to obtain business and a livelihood.

28.    Deep South does so despite the Court's explicit rejection of its right to enforce the Agreement in all the counties and parishes listed in Exhibit A.

29.     Deep South knows that it does not do business in all of the counties and parishes listed in Exhibit A, now or when the parties entered into the Agreement.

30.     Deep South knows that it does not send "active, targeted, and specific" solicitations to businesses in all of the counties and parishes listed in Exhibit A, now or when the parties entered into the Agreement.

## CAUSES OF ACTION AND CLAIMS FOR RELIEF

### COUNT I: UNFAIR TRADE PRACTICES

31.     Fellegy re-alleges and incorporates by references the previous allegations of this Counterclaim and Third-Party Claim as if fully set forth herein.

32.     Deep South has an obligation not to enforce illegal non-competition and non-solicitation agreements against former employees.

33.     Deep South maliciously and intentionally breached its obligation not to enforce the illegal non-competition and non-solicitation provisions in the Agreement, which directly interfered the Fellegy's right and ability to obtain business in the severed territory.

34.     Deep South knew that the non-competition and non-solicitation clauses were invalid and unenforceable under Louisiana law at the time the parties entered into the Agreement and since the Court's January 23, 2023 Ruling and Order.

35.     Deep South maliciously and intentionally engaged in, and continues to engaged in, unfair or deceptive trade practices or methods of competition by its continued attempt to enforce the invalid and illegal non-competition and non-solicitation provisions within the geographical bounds of the severed territory.

36.     Deep South's conduct, as described herein, constitutes a violation of the Louisiana Unfair Trade Practices Act. La. R.S. § 51:401, *et seq.*

37.     As a direct and proximate result of this violation, Fellegy has suffered continuing economic damages, including but not limited to, loss of income, loss of business opportunities, impairment of his ability to earn a living, loss of time and convenience, attorney's fees in defending against the illegal provisions, and emotional distress.

**COUNT II: INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS**

38.     Fellegy re-alleges and incorporates by references the previous allegations of this Counterclaim and Third-Party Claim as if fully set forth herein.

39.     Deep South improperly, intentionally, willfully, and with malice, interfered with Fellegy's business relations by attempting to enforce non-competition and non-solicitation clauses in the Agreement within the geographical scope of the severed territory that it knows to be invalid and unenforceable under Louisiana law.

40.     Deep South knows that the enforcement of those provisions beyond the scope of what is allowed under Louisiana law would prevent Fellegy from obtaining business in that area.

41.     Despite knowing that it did not do business or solicit business in the entire territory when the parties entered into the agreement and understanding that the Court's January 23, 2023 Ruling and Order stating that the non-competition and non-solicitation clauses of the Agreement are not enforceable in the vast majority of the Territory found in Exhibit A of the Agreement, Deep South continues to maintain a claim against Fellegy to prevent him from competing and soliciting in the entire territory.

42.     Deep South maliciously and intentionally breached its obligation not to enforce the illegal non-competition and non-solicitation provisions, which directly interfered with Fellegy's right and ability to enter into business relations within the severed territory.

43.     As a direct and proximate result of Deep South's tortious interference, Fellegy has suffered continuing economic damages, including but not limited to, loss of income, loss of business opportunities, impairment of his ability to earn a living, loss of time and convenience, and emotional distress.

WHEREFORE, Counterclaim Plaintiff Peter Fellegy, prays that the Court issue judgment in his favor against Counterclaim Defendant Deep South Communications, LLC, that Deep South take nothing by way of its Amended Complaint, award Fellegy all damages incurred, including his attorneys fees and costs for this action, assess exemplary and punitive damages as provided by law, and for all just and proper relief.

/s/ Andrew P. Burnside
Andrew P. Burnside, T.A., La. Bar No. 14116
Claire R. Pitre, La. Bar No. 36257
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
701 Poydras Street, Suite 3500
New Orleans, Louisiana 70139
Telephone: 504.648.3840
Facsimile: 504.648.3859
Email:  drew.burnside@ogletreedeakins.com
           claire.pitre@ogletreedeakins.com

—and—

Michelle Renee Maslowski, In. Bar No. 27238-49
Admitted *Pro Hac Vice*
Maslowski Law
5602 Elmwood Avenue, Suite 104
Indianapolis, Indiana 46203
Telephone: 317.854.3811
Email: michelle.maslowski@maslowskilaw.com

**Attorneys for Defendant and Counterclaim Plaintiff, Peter Fellegy**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed via the Court's Electronic Filing System, which provides for service on all parties.

This 31st day of March, 2023.

/s/ Andrew P. Burnside
Andrew P. Burnside